**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CHARLES BREWER, individually and on behalf of all other similarly situated current and former employees of Defendant,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**GENERAL NUTRITION CORPORATION,**<br><br>**Defendant.** | Case No.: 11-CV-03587 YGR<br><br>**ORDER GRANTING IN PART MOTION OF PLAINTIFF TO CONDITIONALLY CERTIFY AN FLSA OPT-IN CLASS** |

Plaintiff Charles Brewer brings this collective action against his former employer, Defendant General Nutrition Corporation ("GNC"), for alleged wage and hour violations. Plaintiff's Second Amended Complaint ("SAC") alleges eight claims: seven violations of California labor law and one claim for Failure to Pay Overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

Plaintiff has filed a Motion for Conditional Certification of an Opt-in Class pursuant to Section 216 of the FLSA.

Having carefully considered the papers submitted and the pleadings in this action, for the reasons set forth below, the Court hereby **GRANTS IN PART** the Motion to Conditionally Certify an FLSA Opt-in Class.

**I.  BACKGROUND**

GNC is the largest global specialty retailer of nutritional products, such as vitamins and herbal supplements. Defendant operates a chain of approximately 2,800 General Nutrition Center retail stores throughout the United States, and franchises nearly 4,200 others. (Deposition of Kenneth Wunschel ("Wunschel Dep."), Dkt. No. 63-2, at 75:24-76:7; Deposition of Ron Hallock ("Hallock Dep."), Dkt. No. 63-4 at 23:19-22; Declaration of Michael Hoffman ("Hoffman Dec."),

Dkt. No. 58-1, Ex. 1, Deposition of James Inlow ("Inlow Dep.") at 12:19-21.)  GNC currently employs approximately 8,000 Putative FLSA Class Members at its corporate, non-franchise, retail stores.  (Wunschel Dep. at 77:10-12.)

Plaintiff worked for GNC as a non-exempt hourly employee from February 22, 2010 to May 13, 2011.  Plaintiff worked as a Sales Associate and later as an Assistant Manager at GNC retail stores in Mountain View, Palo Alto and Hillsdale, California.  Plaintiff routinely worked the closing shift during his employment with GNC, in which he would clock out and then continue to perform an array of mandatory closing duties, including off-site bank deposits.  Plaintiff was not compensated for time spent performing bank deposits and other closing duties.  Plaintiff was typically scheduled to work 35-40 hours per week, but routinely worked over 40 hours per week without receiving overtime pay.[1]  (Hoffman Dec., Ex. 5, Declaration of Charles Brewer ("Brewer Dec.") ¶¶ 2-13.)

GNC employees record their time in a centralized computer system known as the "Point of Sales" ("POS") system, which is a computer that also serves as the cash register.  (Declaration of Thomas Scott, Dkt. No. 61, ¶ 7; Declaration of Jennifer Eck, Dkt. No. 62, ¶ 2.)  Employees must be clocked in if they are performing any duties that require the use of the POS system, such as sales.  At the beginning of each shift, employees clock in using the POS and at the end of their shift, employees clock out using the same POS.

GNC has a uniform written policy that requires employees working the closing shift to deposit cash collected during business hours with an off-site third-party bank on a nightly basis *after* clocking out for the day.  Despite the routine and essential nature of bank deposits, GNC does not have a documented system in place to compensate its employees for this time spent performing closing duties.   Plaintiff alleges that as a matter of corporate policy and practice, GNC does not compensate its employees for time spent making bank deposits and performing other "closing duties."

---

[1] Plaintiff's state law claims allege that he and putative class members are denied proper meal and rest periods by Defendant and Plaintiff and the putative class members are required to work off the clock without being paid for that time.

GNC has a written policy that requires its employees to record all time worked. According to GNC, it trains its employees that work the closing shift to clock out of the POS system and forecast their ending time to account for any remaining duties when they clock out. GNC also claims that the POS system prompts the employee to input the estimated time to perform these closing duties, allowing up to one-half of an hour to perform these closing duties. GNC argues that usually it takes far less than one-half of an hour to perform these closing duties, but if more than one-half hour is required to perform the closing duties, the employee can correct their time sheet. GNC does not offer any documentation of its policies and trainings regarding estimating time forward to perform closing duties or correcting timesheets when an employee underestimates the amount of time necessary to perform closing duties.

Plaintiff seeks to certify a collective action under the FLSA consisting of all current and former retail store employees of Defendant who worked the closing shift and/or worked shifts where that employee worked alone without help or support, as a Sales Associate, Assistant Manager, Store Manager, or Senior Store Manager, from July 21, 2008, and continuing through the date judgment is entered in this action.

## II.    LEGAL STANDARD

Section 216(b) of the FLSA provides a private right of action for violations of the FLSA, including a suit on behalf of other "similarly situated" employees for unpaid overtime wages. 29 U.S.C. § 216(b). Unlike class actions brought under Federal Rule of Procedure 23, in which each person falling within the certified class is bound by the judgment unless he or she opts out, each putative plaintiff must affirmatively opt-in to a collective action brought under the FLSA. 29 U.S.C. § 216(b); *McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007); 29 U.S.C. § 216(b). Because class members must opt-in, the standards for certifying a conditional FLSA class are considerably less stringent than those for Rule 23 classes. *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 862 (9th Cir. 1977) *abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989); *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010).

Neither the FLSA, nor the Ninth Circuit, has defined the term "similarly situated" for purposes of certifying a collective action. Certification of a collective action under the FLSA typically proceeds in two-stages. *See Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466-67 (N.D. Cal. 2004); *Wynn v. Natal Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002). At the initial "notice stage," the Court determines whether the plaintiffs are "similarly situated," deciding whether a collective action should be certified for the purpose of sending notice of the action to potential class members. *See Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

For plaintiffs to carry their burden to show that they are "similarly situated" at the initial notice stage, courts typically require nothing more than substantial allegations, supported by declarations or discovery, to establish that "the putative class members were together the victims of a single decision, policy, or plan." *Id.* (quoting *Vaszlavik v. Storage Technology Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997); *Misra v. Decision One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 995 (C.D. Cal. 2008) (burden is to make "substantial allegations" and a "modest factual showing" that plaintiff and the putative class are "victims of a common policy or plan that violated the law."). The Plaintiff bears the burden of showing this standard has been met. *Grayson v. K-Mart Corporation*, 79 F.3d 1086 (11th Cir. 1996). This determination is made based on a fairly lenient standard, and typically results in a conditional certification. *Wynn*, 234 F. Supp. 2d at 1082.

The second determination is made at the conclusion of discovery, usually upon a motion for decertification by the defendant. *Hill*, 690 F. Supp. 2d at 1009. At this second stage courts apply a stricter standard for similarly situated employees and review several factors, including whether individual plaintiffs' claims involve disparate factual or employment settings; the various defenses available to the defendant which appear to be individual to each plaintiff; as well as fairness and procedural considerations. *See Thiessen*, *supra*, 267 F.3d at 1103; *Hill*, *supra*, 690 F. Supp. 2d at 1009.

Once the class is conditionally certified during the initial notice stage, the Court can exercise its discretion to authorize and facilitate notice of a collective action to similarly situated potential plaintiffs. *Hoffman-La Roche*, *supra*, 493 U.S. 169-70. The Supreme Court has noted

4

that the benefits of the FLSA's protections are dependent upon "employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* at 170.

### III. DISCUSSION

The first issue is the appropriate standard of review. Defendant argues that the parties have conducted extensive discovery, which requires the Court apply an intermediate analysis. Where the parties have conducted discovery, courts generally will evaluate the evidence put before it when considering whether to conditionally certify a collective action. *See Mitchell v Acosta Sales, LLC*, 841 F. Supp. 2d 1105, 1116 (C.D. Cal. 2011). Accordingly, the Court will consider the evidence produced during discovery.

#### A. CONDITIONAL CERTIFICATION

Applying the more lenient first stage analysis, the Court finds that Plaintiff has satisfied his burden, at this first stage, to make "substantial allegations" and a "modest factual showing" that he and other GNC Sales Associates and Assistant Managers were subject to "a common policy or plan that violated the law." *Misra*, *supra*, 673 F. Supp. 2d at 995. In the SAC, Plaintiff alleges that GNC employs a policy requiring its Sales Associates and Assistant Managers to perform work after clocking out. Further, no documented process or training exists to show how employees are to be compensated for performing this off-the-clock work. Plaintiff supports his allegations with documents, declarations of former employees and excerpts from deposition transcripts of GNC's corporate representatives.

The Job Descriptions for Sales Associate and Assistant Manager positions share the following facts in common: The positions are non-exempt under the FLSA and the completion of "all daily register and store open/close functions and bank deposits" are identified as "Essential Duty and Responsibility" of the job positions. (Inlow Dep., Ex. 2.) All employees must record their time using the POS system. Furthermore, the uniform time recording procedure requires employees to clock out prior to making a bank deposit.

Plaintiff has provided his own Declaration and the Declarations of Putative FLSA Class Members Joan Daniels, David Scarpa, Michael Sinicropi and Ashley Young (*see* Hoffman Dec.,

Ex. 6). These declarations provide the following: the employee would be scheduled to work 40 hours per week, would spend uncompensated time performing closing duties that was in excess of the 40 hours paid, the employee was not trained on how to get compensated for this time. These declarations come from multiple employees that worked in multiple GNC retail stores in the states of California, North Carolina, South Carolina, and New Jersey.

Plaintiff has provided excerpts from the deposition transcripts of James Inlow, Division Sales Director; Kenneth Wunschel, former Vice President of Human Resources; Ron Hallock, Senior Vice President; Jeffrey Emrick, Director of Employee Relations; Paul Katz, Division Sales Director; and Shannen Stenerson, Regional Director of Loss Prevention. (*See* Hoffman Dec., Exs. 1-4, 7-8.) These deponents all confirm that GNC has *no* written policy setting forth the procedure for an employee to be paid for time spent performing post-closing duties; *no* written policy on estimating hours worked; and *no* written policy on adjusting hours to account for time spent performing post-closing duties if an employee exceeds the time estimate.

Based on the foregoing analysis, the Court concludes that Plaintiff has satisfied his burden to make "substantial allegations" and a "modest factual showing" that he and other GNC Sales Associates and Assistant Managers were "victims of a common policy or plan that violated the law." *Misra*, *supra*, 673 F. Supp. 2d at 995.

### 1. *Scope of Class Definition*

The next issue with respect to class certification is that the class Plaintiff seeks to certify is broader than the FLSA claim alleged in the SAC. The SAC brings claims on behalf of Sales Associates and Assistant Managers who worked as non-exempt hourly employees of GNC during the period starting from July 21, 2007 to the date the lawsuit was filed, July 21, 2011. Plaintiff seeks to certify an expanded nationwide class consisting of all current and former retail store employees of Defendant who worked the closing shift and/or worked shifts where that employee worked alone without help or support, as a Sales Associate, Assistant Manager, Store Manager, or Senior Store Manager, from July 21, 2008, and continuing through the date judgment is entered in this action. The Court is not inclined to expand the class, but neither does the request itself vitiate Plaintiff's motion in its entirety as GNC urges.

The Court will certify a class that conforms to the FLSA allegations in the SAC. At this notice stage, Plaintiff is required to make substantial allegations in the complaint supported by a modest factual showing. Plaintiff did not make any allegations in his FLSA claim with respect to Store Managers or Senior Store Managers, or missed meal and rest breaks for employees who worked shifts alone. Absent these allegations in the SAC, Plaintiff is unable to make the required showing to certify an FLSA class with respect to these job categories and these overtime claims.

### 2.  *GNC's Evidence and Arguments*

At this "notice stage," the declarations and evidence provided by GNC do not negate the showing Plaintiff has made for conditional certification. Nor do the cases GNC relies on defeat Plaintiff's evidence. *See Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 870-71 (S.D. Ohio 2005) (affidavits from 2 out of a potential 300 insufficient to permit conditional certification where Plaintiff could only speculate that managers would alter timecards to cover up labor law violations); *Smith v. T-Mobile USA, Inc.*, 2007 WL 2385131, at *8 (C.D. Cal. Aug. 15, 2007) (applying more rigorous second-tier analysis because discovery of class issues had concluded). Contrary to what GNC argues, Plaintiff does not base his claim of similarity on the mere allegations that GNC does not compensate employees for making off-the-clock bank deposits. (*See* Opp'n 3.) Instead, Plaintiff has supported his allegations with documents, as well as his own and other former employees' declarations.[2] GNC has submitted time and pay records in an attempt to disprove the statements made by these former GNC employees in their declarations. (*Id.* at 19-20.) At this stage, however, the Court is not inquiring into the merits of these claims or making factual findings. *See Mowdy v. Beneto Bulk Transp.*, C-06-05682 MHP, 2008 WL 901546, at *6 (N.D. Cal. Mar. 31, 2008). GNC may resubmit its declarations at the second, "decertification" stage, when the Court applies a more stringent standard. *See Hill*, *supra*, 690 F. Supp. 2d at 1010.

**B.  NOTICE TO POTENTIAL OPT-IN PLAINTIFFS**

In appropriate circumstances Courts may provide "accurate and timely" notice to potential plaintiffs so that they "can make informed decisions about whether to participate." *Mowdy v.*

---

[2] GNC objects to new evidence that Plaintiff submitted in support of his reply brief. Even without the new evidence Plaintiff has made the modest factual showing necessary for conditional certification. The Court disregards the evidence without reaching GNC's evidentiary objections.

7

*Beneto Bulk Transp.*, C 06-05682 MHP, 2008 WL 901546, at *8 (N.D. Cal. Mar. 31, 2008) (quoting *Hoffmann-La Roche*, *supra*, 493 U.S. at 170. Based on the determination that Plaintiff has satisfied the requirements for conditional certification, the Court will exercise its discretion to facilitate notice to the potential plaintiffs in this action.

Under the FLSA an employee must commence by no later than three years after a cause of action accrues. 29 U.S.C. § 255. A cause of action accrues each time an employer becomes liable for payment of the overtime wages. "A cause of action for an individual who is a member of an FLSA collective action commences on the date the individual files a written consent with the Court, and the maximum applicable statute of limitations is three years; notice should be consistent with this determination." *Deane v. Fastenal Co.*, C-11-00042 SI, 2011 WL 5520972 (N.D. Cal. Nov. 14, 2011) (quoting *In re RBC Dain Rauscher Overtime Litig.*, 703 F. Supp. 2d 910, 966 (D. Minn. 2010)). Therefore, contact information should be provided for all current and former Sales Associates and Assistant Managers that work or worked at GNC within three years of the date of this Order. The opt-in period shall be 90 days from the date the notice is sent.

The parties shall meet and confer to develop a proposed notice that reflects the Court's decision on this motion.

## IV. CONCLUSION

As set forth above, Plaintiff's motion for conditional certification of a collective action under the FLSA is **GRANTED IN PART**. The Court's certification of such class is conditional and is for purposes of notification only.

The parties are **ORDERED** to meet and confer to develop: (1) a proposed form of notice to be sent to potential class members that reflects the Court's decision; (2) procedures for the production of contact information; (3) and procedures for sending the notice.

The parties shall submit their *joint* recommendation by no later than **January 30, 2013**.

**IT IS SO ORDERED**.

Date: January 7, 2013

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**