1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CHARLES BREWER, *et al.*,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **GENERAL NUTRITION CORPORATION,** <br><br> **Defendant.** | **Case No.: 11-CV-3587 YGR** <br><br> **ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT** <br><br> **DKT. NOS. 236, 238** |

Plaintiffs Charles Brewer, Jessica Bruns, Michael Mitchell, Michael Murphy, and Wayne Neal ("Plaintiffs") bring the instant action against their former employer, Defendant General Nutrition Corporation ("GNC"). (Dkt. No. 85, Third Amended Complaint ["TAC"].) GNC sells nutritional products such as vitamins and herbal supplements in over 2,900 retail stores nationwide, with over 200 such stores in California. Plaintiffs are former Sales Associates and/or Assistant Managers at GNC retail stores.

On November 12, 2014, the Court issued its order (Dkt. No. 185) certifying certain of Plaintiffs' claims for class treatment, including:

> 1. Wage Statement Class: All non-exempt hourly employees of GNC who worked as Sales Associates and/or Assistant Managers in California from July 21, 2007, to [November 12, 2014].[1]
> 2. Meal Period Subclass: All members of the Wage Statement Class whose "punch data" reveals at least one untimely, truncated and/or missed meal period.
> 3. Rest Period Subclass: All members of the Wage Statement Class whose "punch data" reveals at least one untimely, truncated and/or missed rest period.
> 4. Reimbursement Subclass: All members of the Wage Statement Class who worked at least one closing shift and who used an automobile to make a bank deposit.
> 5. Final Pay Subclass: (a) All members of the Wage Statement Class whose employment was involuntarily terminated and who were not paid final

---

[1] Subsequent to the Court's class certification order, the parties agreed that the class period ended as of the date of the class certification order.

wages immediately; and (b) All members of the Wage Statement Class who quit, were paid by direct deposit, and were not paid final wages immediately or within 72 hours.

In the motions currently pending before the Court, each party seeks partial summary judgment against the other. Plaintiffs' motion (Dkt. No. 236) seeks partial summary judgment against GNC pursuant to Rule 56(b) of the Federal Rules of Civil Procedure on the following grounds:

(a) GNC's liability for noncompliant wage statements pursuant to Labor Code section 226;

(b) GNC's liability for failure to provide meal periods pursuant to Labor Code sections 226.7 and 512; and

(c) GNC's liability for waiting time penalties on account of its failure to pay final wages timely pursuant to Labor Code §§ 201-203.

GNC's cross-motion (Dkt. No. 238) seeks partial summary judgment on the following grounds:

(a) on Plaintiffs' wage statement claim under Labor Code section 226 on grounds of:

(1) no liability after September 19, 2014, on account of GNC's elimination of the alleged deficiencies;

(2) inability to establish actual injury for statements prior to January 1, 2013;

(3) no liability for statements prior to July 21, 2010, based upon the applicable statute of limitations; and

(4) no liability for derivative claims because meal and rest period violations cannot serve as a predicate for a wage statement violation.

(b) on Plaintiffs' waiting time penalties claim under Labor Code sections 201-203 as follows:

(1) no liability for final wages due before April 5, 2010, based on the applicable statute of limitations;

(2) no liability for penalties after April 5, 2013, based upon "commencement of this action" cutting off further accrual of penalties;

United States District Court
Northern District of California

1    (3) a suspension with a scheduled return date three days thereafter is not a

2    "discharge" for purposes of Labor Code section 201 as a matter of law;

3    (4) no liability due to lack of evidence that GNC willfully violated Labor Code

4    sections 201 and 202; and

5    (5) no liability for derivative claims because meal and rest period violations cannot

6    serve as a predicate for waiting time penalties.

7    Having carefully considered the papers submitted, the evidence, the oral arguments, and the

8    pleadings in this action, and for the reasons set forth below, the Court hereby: **GRANTS IN PART**

9    **AND DENIES IN PART** Plaintiffs' Partial Motion for Summary Judgment, and **GRANTS IN PART**

10   **AND DENIES IN PART** GNC's Partial Motion for Summary Judgment on the various grounds set

11   forth herein.

12                          **STANDARDS APPLICABLE TO THIS MOTION**

13   A party may move for summary judgment on a "claim or defense" or "part of...a claim or

14   defense." Fed.R.Civ.P. 56(a).  Summary judgment is appropriate when there is no genuine dispute

15   as to any material fact and the moving party is entitled to judgment as a matter of law.  Any party

16   seeking summary judgment bears the initial burden of identifying those portions of the pleadings

17   and discovery responses that demonstrate the absence of a genuine issue of material fact.  *Celotex*

18   *Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome

19   of the case.  *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material

20   fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the

21   nonmoving party.  *Id.*  When deciding a summary judgment motion, a court must view the evidence

22   in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

23   *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir.2011).

24   Where the moving party will have the burden of proof at trial, it must affirmatively

25   demonstrate that no reasonable trier of fact could find other than for the moving party.

26   *Soremekun v. Thrifty Payless Inc.,* 509 F.3d 978, 994 (9th Cir. 2007).  On an issue where the

27   nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by

28   pointing out to the district court that there is an absence of evidence to support the nonmoving

United States District Court
Northern District of California

party's case.  *Celotex*, 477 U.S. at 324-25.  If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  *Anderson*, 477 U.S. 242, 250; *see also* Fed. R. Civ. P. 56(c), (e).

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).  However, a district court may rule on summary judgment based upon facts that would be admissible in evidence at trial.  *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c).

## DISCUSSION

The facts here are well known to the parties and have been detailed in prior orders of the Court.  (*See* Order Granting In Part Motion to Dismiss, Dkt. No. 31; Order Granting In Part Motion of Plaintiff to Conditionally Certify An FLSA Opt-In Class, Dkt. No. 68.)  The Court therefore addresses facts as pertinent to the analysis herein.

## I.    MISSED MEAL BREAK CLAIMS

### A.    Applicable Law

Labor Code section 226.7(a) states that "[n]o employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."  Labor Code section 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes."[2]  Section 226.7 further provides that, "[i]f an employer fails to provide an employee a meal… period in accordance with a state law… the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday" that a meal period was not provided.  Cal. Lab. Code § 226.7.  An "employer's duty with

---

[2]  In addition, the applicable IWC Wage Order (No. 7-2001) at section 11 states, in pertinent part: "(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee."

United States District Court
Northern District of California

respect to meal breaks...is an obligation to provide a meal break to its employees.  The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30- minute break, and does not impede or discourage them from doing so." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1038 (2012).  The employer is not required "to ensure that employees do no work during meal periods." *Id.*  The employer "will not be liable" if it makes the meal period available, even if "work does continue" and even if the employer "knows or has reason to know that the employee is performing work during the meal period." *Id.* at 1039.

The Court certified a subclass of "All members of the Wage Statement Class whose 'punch data' reveals at least one untimely, truncated and/or missed meal period."  The Court certified the class based upon two theories raised by Plaintiffs: (1) GNC improperly obtained an on-duty meal period waiver from nearly every putative class member; and (2) GNC has a blanket policy which does not allow meal breaks "unless customer volume, scheduling and business needs permit," such that employees are pressured not to take breaks and are not compensated for missed breaks.

Plaintiffs now move for summary judgment on a new theory: that GNC was required to record meal breaks taken, and where GNC's records indicate that no meal break was taken, there is a rebuttable presumption that no break was provided.  *See Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1053 (2012) (J. Werdegar concurring) ("[i]f an employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided").  A number of district courts to consider the issue post-*Brinker* have agreed that such records create a rebuttable presumption, and shift the burden to the employer to show that meal breaks were provided.  *See Seckler v. Kindred Healthcare Operating Grp., Inc*., No. SACV 10-01188 DDP, 2013 WL 812656, at *8 (C.D. Cal. Mar. 5, 2013) ("This court has previously indicated its agreement with Justices Wedegar and Liu that if a meal period is not taken by the employee, the burden falls on the employer to rebut the presumption that meal periods were not adequately provided," citing *Brinker*); *Medlock v. Host Int'l, Inc.*, No. 1:12-CV-02024-JLT, 2013 WL 2278095, at *3 (E.D. Cal. May 22, 2013) (as in a federal off-the-clock claim, "if Plaintiff demonstrates through live witness testimony, data or

otherwise, that meals were not taken timely or were not taken at all, the burden will shift to Defendants to demonstrate [they] did not interfere with employees taking breaks or discourage them from doing so and that the breaks were waived"); *Escano v. Kindred Healthcare Operating Co.*, No. CV 09-04778 DDP CTX, 2013 WL 816146, at *8 (C.D. Cal. Mar. 5, 2013) (for an individual employee, records showing missed meal periods would shift the burden to her employer to rebut the presumption of failure to provide a meal break); *Alcantar v. Hobart Serv.*, No. ED CV 11-1600 PSG, 2013 WL 156530, at *2 (C.D. Cal. Jan. 15, 2013) (failure to record meal periods produces a rebuttable presumption that meal periods were not provided); *Ricaldai v. U.S. Investigations Svcs., LLC,* No. CV 10–07388 DDP (PLAx), 2012 WL 2930474, *5 (C.D.Cal. May 25, 2012) ("it is the employer's burden to rebut a presumption that meal periods were not adequately provided, where the employer fails to record any meal periods").

**B.     Summary of Evidence**

Plaintiffs offer undisputed evidence that class members were required to clock in and out for meal periods, that GNC's records show instances when meal breaks were not taken, and that GNC never paid anyone in the class an additional hour of pay for a missed meal break.  (Plaintiffs' Separate Statement In Support of Motion, Dkt. No. 236-1, Facts 23, 24, and 26 and evidence cited therein (hereinafter "Facts"); Defendants' Response to Plaintiffs Separate Statement, Dkt. No. 238-1.)  Plaintiffs take the position that GNC cannot offer evidence to rebut that presumption.  Although Plaintiffs contend that class members did not knowingly and voluntarily decide to forego meal periods, their evidence on the issue of whether class members voluntarily missed a meal break is less than exact.  Plaintiffs refer to this Court's prior Certification Order (which has no evidentiary value on this point) and generally cite to "Exhibit 7 [Class Member Declarations]," an exhibit of approximately 160 pages, comprised of some 45 class member declarations.

GNC contends that meal breaks were provided, but employees did not always take them, and that their failure to take those breaks was voluntary.  GNC submits the following: (1) GNC time records showing thousands of recorded meal breaks; and (2) class member declarations stating that, at times, they voluntarily elected to skip their breaks.  (Defendants' Response to Plaintiffs

United States District Court
Northern District of California

1   Separate Statement, Dkt. No. 238-1, Addt'l Fact Nos. 49-56 and evidence cited therein (hereinafter

2   "GNC Addt'l Fact").)

3          Plaintiffs contend that the declarations and testimony offered by GNC are immaterial,

4   because none of the class members states that they voluntarily waived the opportunity to have a

5   duty-free meal period.  Indeed, both Douglas and Abramson stated that they chose to forego *rest*

6   breaks, not *meal* breaks.  (GNC Addt'l Fact 51, Douglas Dec., at ¶ 6; GNC Addt'l Fact 56,

7   Abramson Testimony, at 32:5-9, 32:13-33:17.)  However, the declarations offered by GNC state,

8   nearly uniformly, that: the declarant employees were aware of GNC's meal and rest break policy;

9   they were reminded to take meal and rest breaks by their managers; they were permitted to take

10  meal and rest breaks; and they have not been forced to forego any meal or rest breaks.  (*See*

11  Pritchard Dec., Exhs. I-T [Huerzo Dec. ¶ 10; Kahsu Dec. ¶ 10; Douglas Dec. ¶ 6; Atueme Dec.¶ 8;

12  Barragan Dec. ¶ 10; Gonzales Dec. ¶5; Guererro Dec. ¶5; Hasan Dec. ¶ 8; Kernell Dec. ¶ 4; Leon

13  Dec. ¶ 9; Ortiz Dec. ¶ 8; Salcedo Dec. ¶ 8].)

14      **C.     Analysis**

15         First, the Court finds that Plaintiffs have not met their evidentiary burden to establish

16  GNC's liability for missed meal breaks on this theory.  Plaintiffs' general citation to the entirety of

17  the forty-five class member declarations they submitted is insufficient to meet their evidentiary

18  burden.  Neither GNC nor the Court is required to wade through the class member declarations in

19  search of the evidence to support Plaintiffs' motion.

20         Second, even assuming Plaintiffs' evidence had created a rebuttable presumption of a

21  section 226.7 violation whenever GNC's records showed a missed meal break, GNC has offered

22  evidence in rebuttal sufficient to create a triable issue of fact as to whether breaks were "provided."

23  *Cf. Escano v. Kindred Healthcare Operating Co.*, No. CV 09-04778 DDP CTX, 2013 WL 816146,

24  at *8 (C.D. Cal. Mar. 5, 2013) ("[a]lthough the burden falls on [the employer] to rebut the

25  presumption of inadequate meal periods for an individual employee, Plaintiffs have the ultimate

26  burden to prove that Defendants have a policy of inadequate meal provision").  Consequently,

27  Plaintiffs' motion for summary judgment of liability on their missed meal break claim is DENIED.

28

In addition, because the Court finds that summary judgment cannot be granted in favor of Plaintiffs on the missed meal break claim, summary judgment as to GNC's derivative liability for the wage statement and final pay claims based upon the missed meal period claim is likewise **DENIED**.

## II.   WAGE STATEMENT CLAIMS

Plaintiffs move for partial summary judgment as to liability of GNC for noncompliant wage statements pursuant to Labor Code § 226 from July 21, 2007 to September 18, 2014, on the grounds that: (1) GNC failed to include the overtime rate of pay and the inclusive dates of the pay period as required by Labor Code section 226(a), subsections 6 and 9; (2) injury is presumed for all such violations; and (3) GNC's conduct was knowing and intentional.

GNC opposes Plaintiffs' summary judgment motion on several grounds, including that:  (1) the operative complaint (the TAC) does not allege a wage statement claim based upon failure state the inclusive pay period dates or overtime rate (direct wage statement claim); (2) there are disputed issues of fact as to whether GNC's wage statements violated the statute since the pay period dates and overtime rates were readily ascertainable from the available information; (3) Plaintiffs cannot establish actual injury either under the standard applicable prior to amendment in January 1, 2013, or the under the amended standard; and (4) Plaintiffs have not offered evidence of a knowing and intentional violation.

In addition, GNC cross-moves for summary judgment on the grounds that it has no liability for: (1) wage statements issued after September 19, 2014, since the alleged violations on account of omission of the inclusive pay period and overtime rate were corrected; (2) wage statements prior to January 1, 2013, because Plaintiffs cannot establish actual injury on a class-wide basis without the aid of the presumption in the statute as amended; (3) all wage statements issued prior to July 21, 2010, on the grounds that the applicable statute of limitations is only one year, and therefore limited to one year before filing of the original complaint (July 21, 2011); (4) wage statements issued prior to January 13, 2011 (one year before the filing of the SAC) for the specific alleged wage statement deficiencies based upon unpaid meal breaks ("derivative wage statement claim") because Plaintiffs did not state a claim for such derivative violations until the SAC (filed on January 13, 2012); and

(5) any wage statement claims to the extent they are derivative of GNC's alleged failure to pay meal period premiums for missed meal breaks.

### A.  Applicable Law

California Labor Code section 226(a) provides, in pertinent part:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees…an accurate itemized statement in writing showing (1) gross wages earned...(5) net wages earned, (6) the inclusive dates of the period for which the employee is paid… and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee

Section 226(e) states:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period…and is entitled to an award of costs and reasonable attorney's fees.

Thus, to recover penalties under Section 226(e), an employee must demonstrate three elements: (1) a failure to include in the wage statement one or more of the required items from Section 226(a); (2) that failure was "knowing and intentional"; and (3) a resulting injury.

### B.  Summary of Evidence and Allegations

The wage statement claim alleged in the original complaint stated:

> 40. During the Class Period, Defendant failed to provide California Class Members, including Plaintiff, with timely and accurate wage and hour statements showing gross wages earned, total hours worked, all deductions made, net wages earned, the name and address of the legal entity employing that California Class Member, and all applicable hours rates in effect during each pay period and the corresponding number of hours worked at each hourly rate by the California Class Member.

(Complaint, Dkt. No. 1, at 11-12.)  The allegations remained the same in the FAC (¶ 43).  In the SAC the same allegation was made (¶ 44) and an additional paragraph was added:

> 45. Such wage statements were incorrect due to Defendant's knowing and intentional policies of: (1) refusing to pay Class Members for meal breaks in which they were forced to work, (2) forcing Class Members to work off the clock to perform closing duties by threatening reprimand if any overtime hours were logged, (3) forcing Class Members to work off the clock work in making bank

> deposits after their shift had ended. On information and belief, each of these policies represented an intentional failure to comply with the applicable labor codes and thus an intentional failure to comply with Labor Code § 226.

These same allegations are repeated in the TAC.  (TAC ¶¶ 50, 51.)

Until September 19, 2014, GNC's wage statements listed only a "Pay Ending" date, not a "Pay Starting" date or other statement of the inclusive dates of the pay period.  (Plaintiffs' Fact 3 and evidence cited therein.)  GNC's Director of Payroll and Employee Services admitted that the inclusive dates of the period for which the Class Member is paid cannot be ascertained from the wage statements themselves.  (Fact 3.)  GNC's Response to these facts, while nominally disputing them, only offers evidence that the situation was corrected in September 2014 and that class members could ascertain the pay period from other information available to them.  (GNC Response to Sep. Statement, Dkt. No. 238-1.)  Likewise, with respect to the applicable overtime rates, GNC does not offer evidence to dispute that the wage statements prior to September 19, 2014, did not set forth applicable overtime rates in effect during the pay period and the corresponding number of hours worked at the overtime rate by the employee.  (Fact 4.)

## C.    Analysis

### 1.    Terminal Date of Wage Statement Claims

The parties agree that end date of the wage statement class with respect to the direct wage statement claims should be determined to be September 19, 2014, since GNC changed its wage statements to state the inclusive pay period and overtime rate as required section 226(a) on that date.  To the extent GNC sought summary judgment to limit the time period for the direct wage statement claims to a class period ending September 19, 2014, that motion is **GRANTED**.

### 2.    Trigger for Claims Period for Direct Wage Statement Violation Claims

The wage statement claim has been part of the claims since the original complaint. However, no complaint, including the operative TAC, specifically identifies failure to state the inclusive pay period or the overtime rate as a theory for the wage statement claim.  Rather, the allegations roughly track the general language of the statute, omitting the pay period language.

Plaintiffs motion to certify a wage statement class specifically stated that it was based upon failure to state the inclusive pay period and overtime rates (direct violation), as well as on a

United States District Court
Northern District of California

1    derivative theory for failure to pay off-the-clock time and meal break premiums.  GNC never raised

2    the issue of Plaintiffs' failure to plead the direct violation in any of their class certification briefing

3    or in their motion for reconsideration.

4         The Court finds that the allegations of paragraph 40 of the original complaint are broad

5    enough to encompass, at least, the issue of failure to include the overtime rate.  Moreover, the Court

6    finds that the allegations sufficiently put GNC on notice of a claim based upon any violation of

7    section 226(a), including the failure to state the inclusive dates for the pay period, one of the only

8    provisions of section 226(a) that was not stated verbatim in Plaintiffs claim for violation of that

9    section.  To the extent GNC argues that no complaint sets forth a direct wage statement violation

10   for failure to state the inclusive pay period or overtime rate, the Court rejects this argument.

11         *3.        Relation Back of Derivative Wage Statement Violation Claims*

12        GNC argues that it is entitled to summary judgment on derivative wage statement violations

13   prior to January 13, 2011, one year prior to the filing of the SAC, since this was the first time such

14   a derivative theory of liability was pleaded.  The Court finds that the allegations of the original

15   complaint were broad enough to encompass the derivative violation which was later alleged more

16   specifically in the SAC and TAC.[3]  The claims "share a common core of operative facts" with the

17   originally alleged wage statement claims.  *Williams v. Boeing Co.,* 517 F.3d 1120, 1133 (9th Cir.

18   2008).  Therefore, the later-added derivative theory related back to the original filing date, and

19   GNC cannot limit the class claims in this manner.  To the extent GNC seeks summary judgment to

20   limit the time period of the derivative claim for that reason, the motion is **DENIED**.

21         *4.        Effect of UCL Limitations Period on Claims Period*

22        Plaintiffs sought certification of a class reaching back four years prior to the filing of the

23   original complaint based upon the longer statute of limitations for a UCL claim.  Plaintiffs rely on

24   ─────────────

25        [3] GNC never argued in opposition to class certification that a different claims period should apply to the derivative wage statement claims as compared to the direct claim.  To the contrary, the Court notes that, in opposition to the class certification motion, GNC argued for a one year limitations period extending back from the filing of the *original* complaint for both the direct and derivative wage statement claims.  (*See* GNC Class Cert. Oppo at 21, fn. 4. ["If the court certified the inaccurate wage statement claims, the proposed class would have to be limited to those employees who received inaccurate wage statements from July 21, 2010 to present, as opposed to Plaintiffs' claimed four year time period."].)

1    *Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1132-33 (N.D. Cal. 2014), where the district court

2    found that a claim for violation of section 226(a) could be a proper predicate for a claim under the

3    UCL's unlawful prong.  However, in *Willner*, the plaintiff class was seeking an injunctive remedy

4    to prevent the employer from further violating the Labor Code.  *Id.* at 1133.

5          Here, the complaint seeks "damages and penalties" for the violations of section 226(a),

6    which do not fall under the rubric of restitutionary relief provided by the UCL.  Further, the parties'

7    agreement that the basis for the direct wage statement claim has been discontinued by GNC which

8    precludes injunctive relief for that claim.  At least one other district court has found that "Section

9    226(e) on its face provides for penalties rather than restitution and therefore cannot be the predicate

10   violation on which to based plaintiff's UCL claim." *Ordonez v. Radio Shack*, No. CV 10-7060 CAS

11   MANX, 2011 WL 499279, at *6 (C.D. Cal. Feb. 7, 2011), *but see Bradley v. Networkers Int'l,*

12   *LLC*, 211 Cal.App.4th 1129, 1156 (2012), *as modified on denial of reh'g* (Jan. 8, 2013) (stating, *in*

13   *dicta,* that a UCL claim based upon missed meal breaks was viable for purposes of class

14   certification).

15         The Court finds that California's one-year statute of limitations for an action for penalties,

16   Cal. Code of Civil Procedure 340(a), applies to the claim here, such that the class period should

17   appropriately reach back one year prior to the filing of the original complaint for both the direct and

18   derivative wage statement claims.  In seeking penalties for the alleged wage statement violations of

19   section 226(a), the UCL does not operate to extend the claims period.  GNC's motion for summary

20   judgment on this issue is **GRANTED**.  Consequently, the claims period for both the direct and

21   derivative wage statement claims runs from **July 21, 2010 to September 19, 2014**.

22             *5.*    *Proof of Injury*

23         Section 226(e)(1) provides that only an employee "suffering injury" may recover penalties

24   for a violation of section 226(a).  Effective January 1, 2013, the Legislature amended section 226(e)

25   to provide that an employee is deemed to "suffer injury" if the wage statement fails to provide the

26   information required by section 226(a) "and the employee cannot promptly and easily determine

27   from the wage statement alone...information required to be provided on the itemized wage

28   statement pursuant to items...(6) and (9) of subdivision (a)."  Labor Code § 226(e)(2)(B).

Plaintiffs argue that the standard stated in the 2013 Amendment continues the same standard in place prior to the amendment, and thus is the same for the whole class period.  GNC counters that the 2013 Amendment changed the relevant standard and is not retroactively applicable.

Determining whether the 2013 Amendment applies here requires the Court to answer two questions: "(1) Did the amendment… change or merely clarify the law? [and] (2) if the amendment did change the law, does the change apply retroactively?"  *McClung v. Employment Development Dept.*, 34 Cal.4th 467, 472 (2004).   If an amendment to a statute "merely clarified existing law, no question of retroactivity is presented… [since the] 'true meaning of the statute remains the same.'"  *Id.* at 471-72 (quoting *Western Security Bank v. Superior Court* 15 Cal.4th 232, 243 (1997)).  However, if an amendment changes the legal consequences of events preceding it, or upsets expectations based on prior law, a court must determine then proceed to the question of whether the legislature intended for the change to apply retroactively.  *Carter v. Cal. Dep't of Veterans' Affairs*, 38 Cal.4th 914, 923 (2006).

A "statute may be applied retroactively only if it contains express language of retroactivity or if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application."  *Myers v. Philip Morris Companies, Inc.*, 28 Cal.4th 828, 844 (2002).  While a legislative declaration that an amendment "clarified" existing law is not conclusive, it is one factor for a court to consider in its determination.  *Carter*, 38 Cal.4th at 922; *see also Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112, 1142 (2012) (legislative statement that amendment was "declarative of existing law" was not sufficient to overcome conclusion that collective bargaining exemption to Labor Code section 226.7 did not exist prior to 2002 amendment).  By the same token, even substantial changes will not necessarily defeat a determination that an amendment was a "mere clarification" if the true meaning of the statute remained the same.  *Carter*, 38 Cal. 4th at 930 (Legislature's material amendment of FEHA statute was made promptly in response to confusion in the decisions of the courts of appeal, and was only intended to clarify ambiguities in the former statutory language, not change the law).

Here, with respect to the 2013 amendment to section 226(e), the California Supreme Court had not weighed-in on the meaning of the injury requirement prior to the amendment.  Two

United States District Court
Northern District of California

1  decisions of the California Courts of Appeal had reached opposing decisions on the showing

2  required to establish injury.  In *Price v. Starbucks*, the California Second District Court of Appeal

3  held that there was no injury because "the allegedly missing information from Price's wage

4  statement is not the type of mathematical injury that requires 'computations to analyze whether the

5  wages paid in fact compensated [him] for all hours worked.'"  *Price v. Starbucks Corp.*, 192

6  Cal.App.4th 1136, 1143 (2011).  In *Jaimez v. DAIOHS USA,* another division of Second District

7  California Court of Appeal held that "[w]hile there must be some injury in order to recover

8  damages, a very modest showing will suffice."  *Jaimez v. DAIOHS USA, Inc.*, 181 Cal.App.4th

9  1286, 1306 (2010) (affirming grant of class certification).  The court in *Jaimez* favorably cited

10  several federal district court cases which had found very minimal showings of injury—such as

11  "difficulty and expense… in attempting to reconstruct time and pay records" and the necessity of

12  "mathematical computations to analyze the very information that California law requires"—were

13  sufficient to defeat summary judgment on the issue of injury.  *Id.* at 1306-07 (citing *Wang v.*

14  *Chinese Daily News, Inc.* 435 F.Supp.2d 1042 (C.D.Cal.2006) and *Elliot v. Spherion Pacific Work,*

15  *LLC,* 572 F.Supp.2d 1169 (C.D.Cal.2008)).  Not long thereafter, on September 20, 2012, Senate

16  Bill 1255 was enacted to amend section 226(e), effective January 1, 2013, to add a provision

17  deeming an employee to have suffered an injury for purposes of the penalty "if the employer fails

18  to provide accurate and complete information, as specified, and the employee cannot promptly and

19  easily determine from the wage statement alone the amount of the gross or net wages paid to the

20  employee during the pay period or other specified information." 2012 Cal. Legis. Serv. Ch. 843

21  (S.B. 1255).

22       Several district court cases have found that this amendment was a clarification of existing

23  law, rather than a "substantive shift" in the requirement to show injury for purposes of section

24  226(e).  *See Novoa v. Charter Commc'ns, LLC*, No. 1:13-CV-1302-AWI-BAM, __ F.Supp.3d ___,

25  2015 WL 1879631, at *14-15 (E.D. Cal. Apr. 22, 2015) ("the 2013 Amendment is best understood

26  as clarifying that the Section 226 injury requirement hinges on whether an employee can "promptly

27  and easily determine" from the wage statement, standing alone, the information needed to know

28  whether he or she is being underpaid"); *Boyd v. Bank of Am. Corp.*, No. SA CV 13-0561-DOC,

1   2015 WL 3650207, at *33 (C.D. Cal. May 6, 2015) (the 2013 amendment "clarified" and "codified

2   the established law that an employee who 'cannot promptly and easily determine from the wage

3   statement alone' requirements under § 226(a) has suffered an injury");

4   *Fields v. W. Marine Products Inc.*, No. C 13-04916 WHA, 2014 WL 547502, at *8 (N.D. Cal. Feb.

5   7, 2014) (minimal injury requirement is "reinforced by the 2013 statutory amendment to Section

6   226 clarifying the injury requirement by providing a statutory definition."); *Torchia v. W.W.*

7   *Grainger, Inc.*, 304 F.R.D. 256, 274 (E.D. Cal. 2014) ("the amendment to which Class Counsel

8   refers clarified [the] prior version of the statute"); *Escano v. Kindred Healthcare Operating Co.*,

9   No. CV 09-04778 DDP CTX, 2013 WL 816146, at *11-12 (C.D. Cal. Mar. 5, 2013) (court's

10  interpretation of minimal injury requirement was "reinforced" by subsequent 2013 amendment and

11  accompanying Senate Bill Analysis indicating that purpose of the amendment was to resolve

12  "contradictory and inconsistent interpretations of what constitutes 'suffering injury'...in the various

13  court cases...it is necessary to provide further clarity on the issue...."). The Court joins these others

14  in finding that the 2013 amendment clarified existing law and did not substantially change the legal

15  consequences of past actions, or upset expectations based in prior law. Thus, no issue of retroactive

16  application arises.

17      Consequently, the same injury standard applies regardless of whether the wage statement

18  violation occurred prior to January 1, 2013, or not. To the extent GNC sought summary judgment

19  on the grounds that a different standard applied prior to the amendment, that motion is **DENIED**.

20              6.      *Promptly and Easily Determine the Required Information*

21      GNC seeks summary judgment on the grounds that Plaintiffs cannot establish a violation of

22  sections 226(a)(6) and 226(a)(9) because the pay period and overtime rate information required by

23  the statute is easily ascertainable from the information available to them. Labor Code section

24  226(a) provides that "[e]very employer shall… furnish each of his or her employees…an accurate

25  itemized statement in writing" showing, among other things, the inclusive pay period dates as well

26  as "all applicable hourly rates in effect during the pay period and the corresponding number of

27  hours worked at each hourly rate by the employee." Cal. Lab. Code § 226(a). As stated above,

28  Labor Code section 226(e) provides that an employee is "deemed to suffer injury…if the employer

15

United States District Court
Northern District of California

1  fails to provide accurate and complete information as required…and the employee cannot promptly

2  and easily determine from the wage statement alone" the information required.  Cal. Labor Code

3  §226(e)(2)(B)(i).

4       The statute further provides that: "'promptly and easily determine' means a reasonable

5  person would be able to readily ascertain the information without reference to other documents or

6  information."  Cal. Labor Code § 226(e)(2)(C); *see also McKenzie v. Fed. Exp. Corp.*, 765 F. Supp.

7  2d 1222, 1229-31 (C.D. Cal. 2011) (section 226(a) violation and injury stated where inclusive pay

8  period not listed in wage statement and employees would have to refer to outside sources to verify

9  days of work included).  Thus, there is injury to employees who cannot promptly and easily

10  determine the required information "from the[ir] wage statement[s] alone."[4]

11       GNC argues that employees could readily determine their overtime rate by simple division,

12  and that they could determine the inclusive pay period by reference to an online system that lists the

13  end date for the last pay period.  Neither of these arguments persuades the Court that employees

14  could "promptly and easily determine" the required information from the wage statements

15  themselves.  First, the statute is quite explicit in its requirements that the wage statement must

16  include "the inclusive dates of the period for which the employee is paid" and "all applicable

17  hourly rates in effect during the pay period and the corresponding number of hours worked at each

18  hourly rate by the employee."  Labor Code section 226(a).  Second, GNC concedes that the

19  overtime rate varied from week to week for each employee under their overtime rate methodology.

20  GNC's practice of listing on wage statements only the overtime hours but not the rate used, and, in

21  some exemplars, using multiple (but unstated) overtime rates within the same pay period, made

22  confirming the correctness of the total wages paid more difficult for its employees.  *See McKenzie*,

23  765 F. Supp. 2d at 1230-31 (wage statements did not comply with section 226(a) where they did

24  not include pay period start date and listed multiple overtime rate categories without accurate

25

26       _____

       [4] GNC also argues that there can be no liability in the absence of evidence that each class

27  member viewed the wage statement, citing *Holak v. K Mart Corp.*, No. 1:12-CV-00304-AWI-MJ,
   2015 WL 2384895, at *7 (E.D. Cal. May 19, 2015).  *Holak* is distinguishable on many grounds, but

28  most significantly that the court there, unlike this Court, found the 2013 Amendment to be a
   substantive change that was not entitled to retroactive application.  *Id.*

United States District Court
Northern District of California

overtime hours worked at those rates); *Lopez v. G.A.T. Airline Ground Support, Inc.*, No. 09-CV-2268-IEG, 2010 WL 2839417, at *5 (S.D. Cal. July 19, 2010) (plaintiff entitled to summary judgment on wages statement claim where evidence showed that the statements did not state inclusive pay period or hourly rates and hours at the respective rates); *cf. Morgan v. United Retail Inc.*, 186 Cal.App.4th 1136, 1148-49 (2010) (employee's claim that wage statements must include additional category showing the sum of all regular and overtime hours worked, and not just hourly rates and corresponding number of hours work at each rate, did not establish a violation of section 226); *Hernandez v. BCI Coca-Cola Bottling Co.*, 554 F. App'x 661, 662 (9th Cir. 2014) (finding compliance with section 226(a) where the wage statements included regular and total hours, as well as two component overtime rates).

The Court cannot conclude, as a matter of law, that employees could "promptly and easily determine" the required information here, as GNC contends.  GNC's motion for summary judgment on this issue is **DENIED**.

### 7.      *Knowing and Intentional Violation*

"A 'knowing and intentional' violation requires a showing that the defendant knew that facts existed that brought its actions or omissions within the provisions of section 226(a)."  *Willner*, 35 F.Supp.3d at1131.  Section 226(c)(3) provides that "a 'knowing and intentional failure' does not include an isolated and unintentional payroll error due to a clerical or inadvertent mistake." Cal. Lab. Code § 226(c)(3).

Here, GNC has admitted that its uniform wage statements omit the overtime rates and inclusive dates of the pay period. (Fact 7.)  GNC failed to correct its defective wage statements for at least five years after Plaintiffs filed this lawsuit (Facts 8 and 9).  There is no evidence suggesting that the wage statement omissions were accidental or unknown to GNC.

GNC contends that the only evidence Plaintiffs have offered that this was a "knowing and intentional" violation of the section 226(a) is that GNC has been sued for wage statement violations before.  GNC objects that none of those prior lawsuits involved the same kind of wage statement violation, omission of the inclusive pay period and overtime rate, as alleged here.  Even if prior lawsuits did not allege the precise violation of section 226(a) as alleged here, the evidence

1    nevertheless indicates that GNC was aware of its legal obligations under section 226(a).

2    Regardless, so long as the evidence shows the employer provided wage statements without all the

3    required information and knew that the statements lacked this information, it does not matter

4    whether the employer was ignorant of the statute making inaccurate statements unlawful.  *Perez v.*

5    *Safety-Kleen Sys., Inc.*, No. C05-5338PJH, 2007 WL 1848037, at *9 (N.D. Cal. June 27, 2007)

6    (failure to include total hours on wage statement in violation of section 226(a)) (citing *People v.*

7    *Snyder,* 32 Cal.3d 590, 592-593 (1982)); *see also Heritage Residential Care, Inc. v. Division of*

8    *Labor Standards Enforcement,* 192 Cal.App.4th 75, 81, 83 (2011) (good faith but mistaken

9    understanding of law no defense).  Plaintiffs rely primarily on evidence that GNC has known for

10   years its wage statements did not include this information, and yet only changed the statements

11   long after the instant litigation was filed (*i.e.* September 19, 2014).  Whether or not prior litigation

12   informed GNC that the conduct was unlawful is beside the point.  GNC's motion for summary

13   judgment on this issue is, therefore, **DENIED**.

14              *8.  Conclusion: GNC Liability for Direct Wage Statement Violations*

15        Turning to Plaintiffs' motion for summary judgment, the Court finds that, with the

16   narrowing of the statutory time period as stated above, summary judgment of liability in favor of

17   Plaintiffs on the direct wage statement claim is appropriate.  Again, to establish liability on this

18   claim, Plaintiffs must show (1) a failure to include in the wage statement one or more of the

19   required items from Section 226(a); (2) the failure was 'knowing and intentional'; and (3) plaintiffs

20   were injured as a result.  Section 226(e)(2)(A) provides that an employee is "deemed to suffer

21   injury… if the employer fails to provide accurate and complete information" and the employee

22   "cannot promptly and easily determine from the wage statement" the gross or net wages paid, or

23   enumerated pieces of information, including the inclusive pay period (section 226(a)(6)) or the

24   applicable all the hourly rates in effect (section 226(a)(9)).  The information is not promptly and

25   reasonable determined unless "a reasonable person would be able to readily ascertain the

26   information without reference to other documents or information."  Cal. Labor Code §

27   226(e)(2)(C).

28

Plaintiffs have offered evidence to meet their burden to show that class members were unable to determine, from the face of the statements, the time period covered by the paycheck or their overtime rate.  (*See* Lazar Dec. ¶ 10; Samayos Dec. ¶ 8; Maxwell Dec. ¶ 21; Jimenez Dec. ¶ 25; Cowan Dec. ¶¶ 24, 25; Castille Dec. ¶ 22; Patton ¶¶ 22, 23; Hayes Dec. ¶ 22; Dimayuga Dec. ¶¶ 21, 22; Contreras Dec. ¶ 23; Yamat Dec. ¶¶ 23, 24; Strauss Dec. ¶ 22; Reyes Dec. ¶¶ 25, 26; Becerra Dec. ¶ 25; Crisco Dec. ¶ 25; Sgro Dec. ¶ 20; Argenio Dec. ¶ 20; Molina Dec. ¶ 12.) Indeed, there is evidence that GNC would, at times, deliver paychecks late or add hours to later paychecks to correct mistakes, making the covered pay period and hours that should have been included confusing.  (Samayos Dec. ¶ 8.)

GNC's employee declarations offered in opposition do not create disputed issues of fact. Those declarations state, nearly uniformly:

> I am paid every two weeks and am not confused about how or when I will be paid.  I understand how to read my wage statements to verify the pay period and hours for which I was paid.  I verify each pay period that my paycheck is accurate and that I was paid for all hours worked.

(Leon Dec., ¶ 11.)  The statement does not address whether the pay period inclusive dates are readily understood from the wage statement itself, and makes no mention at all about the overtime rate.  The fact that GNC's employee-declarants say that they could verify they were "paid for all hours worked" and understand "how to read" the statements does not fairly meet the issues here, *i.e.*, the overtime rate and the inclusive pay period dates.  (*See* Atueme Dec. ¶ 9; Barragan Dec. ¶ 11; Gonzales Dec. ¶ 6; Guererro Dec. ¶ 8; Hasan Dec. ¶ 9; Huerzo Dec. ¶ 11; Leon Dec. ¶ 11; Ortiz Dec. ¶ 9; Salcedo Dec. ¶ 9; and Testa Dec. ¶ 10.)  Further, GNC's evidence that employees could refer to GNC's Retail Operations Manual and Employee Handbook to determine they were to be paid biweekly, and how to calculate their overtime rate, again does not meet the statute's requirement that the employee be able to "determine from the wage statement alone" the required information.  Cal. Labor Code § 226(e)(2)(B).

Consequently, the Court finds that Plaintiffs have met their burden to establish the elements of the direct wage statement claim and GNC has not created a disputed issue of fact on that liability.  Plaintiffs' motion for summary judgment for liability on the direct wage statement claims

United States District Court
Northern District of California

1   of all non-exempt hourly employees of GNC who worked as Sales Associates and/or Assistant

2   Managers from July 21, 2010, to September 19, 2014, is therefore **GRANTED**.

3                  *9.    Derivative Wage Statement Claim*

4        GNC also moves for summary judgment on the grounds that any wage statement claims

5   derivative of GNC's alleged failure to pay meal period premiums for missed meal breaks are

6   untenable as a matter of law.[5]  Because the parties agree that the applicable authorities on this issue

7   are identical to those raised in connection with GNC's motion for summary judgment on the

8   derivative waiting time penalties claim, the Court addresses both arguments below in Section

9   III(D).

10   **III.    FINAL PAY/WAITING TIME PENALTIES CLAIMS**

11        Labor Code § 201 requires that "[i]f an employer discharges an employee, the wages earned

12   and unpaid at the time of discharge are due and payable immediately."  Labor Code § 202 states

13   "[i]f an employee…quits his or her employment, his or her wages shall become due and payable

14   not later than 72 hours thereafter…."  Labor Code § 203(a) provides that, if an employer willfully

15   fails to pay wages due under sections 201 or 202, "the wages of the employee shall continue as a

16   penalty from the due date thereof at the same rate until paid or until an action therefor is

17   commenced; but the wages shall not continue for more than 30 days."  Section 203(b) provides that

18   "[s]uit may be filed for these penalties at any time before the expiration of the statute of limitations

19   on an action for the wages from which the penalties arise."

20        Plaintiffs seek summary judgment of GNC's liability for failure to pay final wages timely as

21   required by Labor Code sections 201-203.  Plaintiffs seek summary judgment of entitlement to

22   waiting time penalties for those class members who were discharged or quit and were not paid

23   within the time limits set by sections 201 and 202.  They also seek summary judgment on their

24   derivative claim for waiting time penalties based upon failure to pay missed meal period premiums

25   under section 226.7.

26

27              ——————————————
            [5]  GNC raises the derivative nature of the wage statement claim as a basis for summary

28   judgment only in the final footnote of its brief.  (Def. Brief, Dkt. No. 238, at p. 25, fn. 20.)  This
   issue, too, was not raised in the context of class certification.

United States District Court
Northern District of California

For its part, GNC seeks partial summary judgment on the waiting time penalties claims on the grounds that: (a) it cannot be liable to any class member whose final wages were due and payable before April 5, 2010, because the claim is subject to a three-year statute of limitations, and the waiting time penalties claim was not pleaded until the TAC filed April 5, 2013; (b) it cannot be liable for any waiting time penalties claimed after April 3, 2013, since penalties cease accruing when an action is "commenced" per Labor Code section 203; (c) no penalties arise on any claim because there is no evidence that it "willfully" violated Labor Code sections 201 or 202.  The Court addresses each in turn.

**A.    Claims Period**

*1.    Applicable Statute of Limitations*

GNC argues that it is entitled to summary judgment for any waiting time penalties claim for any class member whose final wages were due and payable before April 5, 2010.  GNC argues that the correct statute of limitations is three years.  *See* Section 203(b) (statute of limitations for penalties claim is same as for unpaid wages); Cal. Code Civ. Proc. § 338 (three-year statute of limitations for action based upon liability created by statute).  Here, the TAC, filed on April 5, 2013, was the first time Plaintiffs alleged a waiting time penalties claim. (TAC, Dkt. 85, at ¶¶ 86-89).  Consequently, GNC contends, the relevant period did not begin until April 5, 2010.  GNC further argues that the waiting time penalties claim does not relate back to the filing of the original complaint because it asserts a new legal theory based on a different set of facts, *i.e.*, GNC's alleged practice of paying class members their final wages after the due date.  *See Williams*, 517 F.3d at 1133.

Plaintiffs respond that the applicable claims period extends back four years from the filing of the complaint since the waiting time claim is a predicate for their UCL claim, which has a four-year statute of limitations.

The California Supreme Court has held that a claim for section 203 penalties, the recovery of which would not be in the nature of restitutionary relief, cannot be the predicate for a UCL claim.  *Pineda v. Bank of Am., N.A.*, 50 Cal.4th 1389, 1401-02 (2010).  Hence the statute of limitations applicable here is three years.  *Id.* at 1398 ("section 203(b) contains a single, three-year

United States District Court
Northern District of California

1    limitations period governing all actions for section 203 penalties irrespective of whether an

2    employee's claim for penalties is accompanied by a claim for unpaid final wages."  The class

3    period for the Final Pay subclass therefore starts three years prior to the operative complaint in

4    which the claim was made.

5        Which raises the next question: does the final pay claim relate back to the filing of the

6    original complaint?  GNC argues that it does not.  Plaintiffs contend, in a footnote, that it does

7    "because it is based on the same set of operative facts, such as Defendants' failure to ever pay meal

8    period premiums." (Plaintiffs' Reply, Dkt. No.239 at 13, n.30.)[6]  The Court agrees with GNC that

9    the claim was not alleged until the Third Amended Complaint and does not relate back to the filing

10   of the prior complaints because it states a new legal theory of liability based on a different set of

11   facts than was previously pleaded.  *See Williams*, 517 F.3d at 1133.  Therefore, the Section 203

12   claim only reaches back three years before the filing of the TAC, *i.e.,* **April 5, 2010**.

13       GNC's motion for summary judgment on these grounds is **GRANTED**.

14           2.    *Commencement of the Litigation as the Cutoff for Accrual of Penalties*

15       GNC argues that it is entitled to summary judgment as to any section 203 penalties incurred

16   after the filing date of the TAC April 5, 2013 (the first iteration of the complaint to include a claim

17   for waiting time penalties).  GNC contends that accrual of waiting time penalties under Labor Code

18   section 203 is cut off for all putative class members when a named plaintiff commences an action

19   on their behalf.  Under Labor Code section 203(a), where an employer fails to pay an employee

20   "immediately" upon involuntary termination (section 201) or no later than 72 hours after voluntary

21   termination (section 202), the employee's wages "shall continue as a penalty from the due

22   date...until paid or until an action...is commenced [but not longer] than 30 days."  GNC tethers its

23   argument to language in the U.S. Supreme Court's decision in *American Pipe,* which held that the

24   filing of a class action complaint "commences the action for all members of the class as

25   subsequently determined."  *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 550 (1974).

26

27           [6]  Plaintiffs' Reply did not conform to Local Rule 3-4(c)(2) because the footnotes were not
     in 12-point font.  While the Court has considered the information therein for purposes of these

28   motions, Plaintiffs are cautioned that further non-compliant filings may be disregarded.

The Court notes that the word "commenced" is used differently in the limitations context in *American Pipe* than it is in the context of section 203's accrual cutoff. However, the Court need not reach the merits of GNC's argument, since the TAC only alleged the waiting time penalties on behalf of the "California Sub-Class" (TAC ¶ 87 *et seq.*), defined as "All members of the California Class whose employment with GNC has terminated." (TAC ¶ 21.) The "California Class" was, in turn, defined as "All non-exempt hourly employees of GNC who worked as Sales Associates and/or Assistant Managers in California from July 21, 2007, to the present." The Court reads the TAC to mean that the California Sub-Class is limited to persons whose employment had terminated at the time of filing the TAC.

GNC's motion for summary judgment on these grounds is **DENIED**, but the Court clarifies the Class Certification Order to state that the Final Pay Subclass includes those employees whose termination date was between **April 5, 2010, and April 5, 2013**, and who were: (1) involuntarily discharged and not paid final wages immediately; or (2) enrolled in direct deposit, voluntarily terminated/quit, and not paid final wages immediately or within 72 hours of termination.

### B.     Evidence of Untimely Payment

Plaintiffs submit a "Final Pay Spreadsheet" generated by GNC which shows the "Last Pay Date" and "Term[ination] Date" for employees in the plaintiff class. The records showing that GNC terminated employees who did not receive their final pay on the last date of employment, and that employees who were voluntarily terminated did not receive their final pay from GNC within three days of their last date of employment. (Facts 12 and 13.)

GNC argues that the "Final Pay Spreadsheet" relied upon by Plaintiffs does not necessarily mean what Plaintiffs think it does. GNC contends that "Last Pay Date" is not necessarily payment of "wages" and "Term[ination] Date" was not necessarily the actual date of discharge or termination. However, GNC produced this information in response to Plaintiffs' Special Interrogatories, Nos. 36 and 37, and averred that the information represented "the last date of employment" for the employees listed, and the **"**date that Defendant made the payment of final wages to" those employees. (Hoffman Dec., Exh. 10.) GNC cannot now be heard to argue that its own discovery responses did not mean what it represented them to mean.

1   In addition to the spreadsheet evidence, Plaintiffs also submit class member declarations

2   stating that they did not receive their final paychecks as required, either immediately upon

3   involuntary termination, or within three days of their final day of employment if terminated

4   voluntarily.  (Fact 14.)  GNC does not offer any material dispute of these facts.  Likewise, it is

5   undisputed that GNC has not paid waiting time penalties to any class member.  (Fact 22.)

6   **C.**   **Willful Violation**

7   GNC also seeks summary judgment on the grounds that Plaintiffs cannot establish the

8   willfulness element of their claim for waiting time penalties under Labor Code sections 201, 202

9   and 203.  "The settled meaning of 'willful,' as used in section 203, is that an employer has

10   intentionally failed or refused to perform an act which was required to be done."  *Amaral v. Cintas*

11   *Corp. No. 2*, 163 Cal.App.4th 1157, 1201 (2008) (citing *Barnhill v. Robert Saunders & Co.* 125

12   Cal.App.3d 1, 7–8 (1981)).  "So long as no other evidence suggests the employer acted in bad faith,

13   presentation of a good faith defense, based in law or fact, will negate a finding of willfulness."  *Id.*

14   at 1203-1204.  In *Barnhill*, the employer believed it was legally entitled to set off from the

15   employee's final wages of amounts the employee owed to it.  *Barnhill,* 125 Cal.App.3d at 8-9.

16   Although the court ultimately determined the setoff was illegal, it found that the employer was not

17   liable for late payment penalties because the "state of the law was not clear" at the time of the

18   violation.  *Barnhill,* 125 Cal.App.3d at 8-9.  California Code of Regulations, title 8, section 13520,

19   codified the meaning of "willful" for purposes of untimely payment of final wages as follows:

20
21      A willful failure to pay wages within the meaning of Labor Code Section 203
       occurs when an employer intentionally fails to pay wages to an employee when
       those wages are due.  However, a good faith dispute that any wages are due will
22      preclude imposition of waiting time penalties under Section 203.
       (a) Good Faith Dispute. A 'good faith dispute' that any wages are due occurs
23      when an employer presents a defense, based in law or fact which, if successful,
       would preclude any recover[y] on the part of the employee.  The fact that a
24      defense is ultimately unsuccessful will not preclude a finding that a good faith
       dispute did exist.  Defenses presented which, under all the circumstances, are
25      unsupported by any evidence, are unreasonable, or are presented in bad faith, will
       preclude a finding of a 'good faith dispute.' "
26
27   8 Cal. Code Regs. § 13520.

28

United States District Court
Northern District of California

Plaintiffs argue that the evidence shows GNC was aware of California law, but had no policy to require timely payment consistent with California law, and indeed had formulated a policy to circumvent Labor Code sections 201, 202, and 203 by falsely characterizing a termination as a suspension in order to avoid paying waiting time penalties.  In support of the willfulness element of their claim, Plaintiffs offer the following evidence which they contend demonstrates that GNC acted willfully in violating Labor Code sections 201 and 202:

1.  GNC's interrogatory response identifying nine "actions in California against GNC in the last 10 years related to [its] failure to timely pay final wages" (Hoffman Dec., Exh. 4, Interrogatory No. 48.);[7]

2.  the declaration of Paul Katz, Division Sales Director for GNC, submitted in connection with GNC's opposition to class certification, stating that "GNC does not maintain a uniform policy regarding how or when to issue final paycheck [*sic*] to employees who are involuntarily terminated" and that it may pay on the date of termination, after a period of suspension, or at the next regular paydate, depending on the circumstances (Hoffman Dec., Exh. 13 [Katz Dec.].); and

3. an email from GNC's employee relations manager, Kenneth Wunschel, to sales directors and store managers regarding "Paying Terminated Employees," which acknowledges California law's limitations and directs managers who are involuntarily terminating employees to suspend them first and then schedule them to return to work to pick up their final pay check, generally on the fourth day after the suspension date (Hoffman Dec., Exh. 14).

GNC argues that there is no evidence that the suspension policy was enforced, but even assuming that it was, there is "clear authority" that a suspension of this kind would not be

---

[7]  At the hearing on these motions, GNC seemed to argue it had never been sued for section 203 waiting time penalty violations.  However, the evidence to which GNC cites concerned only prior lawsuits alleging *wage statement* violations for failure to include the pay period and overtime rate, a different and narrower issue.  (*See* GNC Addt'l Facts 31 and 32, citing GNC RJN Exh. A-N, and Exh E. [Abramson verdict form].)  As stated above, *infra*, willfulness is not an element of a wage statement violation, only a showing of "knowing and intentional" violation.

United States District Court
Northern District of California

1    considered a discharge.[8]  GNC also submits a declaration from Lona Toffolo, GNC's Director of

2    payroll and employee services, in which she declares that, upon termination, "GNC makes every

3    effort to pay the employee his or her final wages in a timely manner," and that GNC regularly

4    prepares final paychecks manually for those employees who are being discharged so they can be

5    delivered to the employee at the time of discharge. (Toffolo Dec. ¶¶ 3, 18.)  Moreover, GNC

6    contends that, even if delaying final payment by imposing a suspension were ultimately found

7    unlawful, it had a good faith belief that it was following California law.

8           GNC does not submit evidence concerning its understanding of the law at the time, but only

9    now seeks judicial notice of a section of the California Department of Labor Standards

10   Enforcement ("DLSE") Policies and Interpretations Manual, as well as two DLSE Opinion Letters.

11   As proffered, neither persuade.  The DLSE Manual section, 3.2.2, is addressed to wages payable

12   upon layoff, and says that "[i]f an employee is laid off without a specific return date within the

13   normal pay period, the wages earned up to and including the lay off [sic] date are due and payable

14   in accordance with section 201 [of the Labor Code]."  (Dkt. No. 238-11, GNC RJN, Exh. T.)  The

15   referenced Opinion Letters likewise address the question of layoffs or temporary shutdowns of a

16   facility.  DLSE Opinion Letter 1993.05.04 sets forth the DLSE's position regarding temporary

17   shutdowns versus layoffs, stating that "so long as a shutdown does not exceed ten days <u>and</u> there is

18   a definite date given for return to work, the employee is not considered terminated."  (GNC RJN,

19   Exh. Q, emphasis in original.)  DLSE Opinion Letter 1996.05.30 mirrors the language in the DLSE

20   Manual that, in the case of temporary layoffs, "[i]f there is a return to work date within the pay

21   period, and the employee returns to work, all of the wages may be paid at the next regular pay day,"

22   but section 201 otherwise requires immediate payment of wages at layoff.  None of these

23   statements from the DLSE bears on the situation presented here: a temporary suspension with a

24

25

26          [8] GNC also seeks summary judgment on the issue of whether a suspension with a scheduled
     return date three days thereafter is a "discharge" for purposes of Labor Code section 201.  Because
27   GNC has not offered clear legal authority supporting this position, and the issue does not appear, by
     itself, to be a basis for liability asserted by Plaintiffs, the Court **DENIES** the motion on these
28   grounds.

return to work only for the purposes of providing the final wages.  Further, GNC has provided no evidence that anyone at the company read, much less relied, on the Opinion Letters until now.

Based on the foregoing, the Court finds that there are disputed issues of fact as to GNC's willfulness in failing to pay wages upon termination.  GNC disavows a policy or practice of suspending employees prior to paying their final wages, but there are factual disputes on this point.  Contrary to GNC's argument, there is not "clear authority" that such a policy or practice would be lawful.  On the present record, the Court cannot find, as a matter of law, that GNC had a good faith dispute as to whether any wages were due earlier than they were paid.  Nor can the Court find, as a matter of law, "under all the circumstances, [GNC's defenses] are unsupported by any evidence, are unreasonable, or are presented in bad faith."  Consequently, on the waiting time penalties claim, summary judgment in favor of either party is precluded.

### D.     Derivative Claims

In addition to their direct claims for penalties based upon inaccurate wage statements and failure to pay final wages timely, Plaintiffs also seek such penalties based upon GNC's failure to pay a premium for missed meal periods.  As stated above, the Court does not find the underlying missed meal period claim to be proper for summary judgment in Plaintiffs' favor because there are disputed issues of material fact.  GNC also seeks summary judgment of these derivative claims on the grounds that any unpaid premiums for missed meal periods would never be considered "wages" for purposes of either claim.  For the reasons below, the Court disagrees.

The statute concerning missed meal periods provides that, if the employer fails to provide an employee the meal period, the employer "shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday" that a meal period was not provided.  Cal. Lab. Code § 226.7.  It does not characterize the payment as a penalty or as wages.  Section 226(a) requires an accurate statement of "wages earned."  Sections 201-203 provide for penalties when the employer willfully fails to pay the "wages earned and unpaid" within the required time frames.  Thus, entitlement to these penalties turns on whether the payments for missed meal periods may be characterized properly as "wages earned"—that must be listed on a wage statement and/or paid timely upon termination—or not.

United States District Court
Northern District of California

The California Supreme Court, in its 2007 decision in *Murphy v. Kenneth Cole Productions*, held that the payments for missed meal periods should be considered wages, rather than a penalty, in the context of determining the applicable statute of limitations.  *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1110 (2007) ("payment for missed meal and rest periods [was] enacted as a premium wage to compensate employees").  The court in *Murphy* determined that the language of section 226.7 suggests that the payment is a wage, but acknowledged that it was also susceptible to an interpretation that it was a penalty.  *Id.* at 1104-05.  The *Murphy* court turned to extrinsic evidence of the proper meaning of the language, including legislative history, from which it gleaned that the legislative amendments adding the payments were meant to create an affirmative obligation to pay, and an employees' immediate entitlement to, the additional hour of pay upon being forced to miss a meal period, making the payment akin to overtime wages.  *Id.* at 1108.  The *Murphy* court further noted that the Legislature initially provided for a penalty to be assessed by the Labor Commissioner, in addition to the payment to the employee, but ultimately decided on just the payment language, suggesting that the payment was not a penalty.  *Id.* at 1108-09.  *Murphy* further found that "statements made by IWC commissioners during hearings discussing the 'hour of pay' remedy for meal and rest period violations leave no doubt that the remedy was being adopted as a 'penalty' in the same way that overtime pay is a 'penalty,' although it is clear that overtime pay is considered a wage."  *Id.* at 1109.  Thus, the *Murphy* court determined that the payments under section 226.7 were a "wage" because "whatever incidental behavior-shaping purpose section 226.7 serves, the Legislature intended section 226.7 first and foremost to compensate employees for their injuries[, a] conclusion [that] is consistent with our prior holdings that statutes regulating conditions of employment are to be liberally construed with an eye to protecting employees."  *Id.*at 1110-11.  Based on that analysis, the California Supreme Court in *Murphy* determined that the three-year statute of limitations for "an action upon a liability created by statute, other than a penalty" applied to an action to recover payments under Labor Code section 226.7.  *Id.* at 1099.

Five years later, in *Kirby v. Immoos Fire Protection*, the California Supreme Court was presented with the related question of whether an action to recover payments for missed meal breaks should be considered one "brought for the nonpayment of wages" under Labor Code section

218.5's fee-shifting provisions.  *Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244 (2012).  In *Kirby*, an employer sought to recover attorneys' fees from employees who had unsuccessfully litigated a claim for missed meal period payments under section 226.7, under the attorney fee shifting provisions in section 218.5.  Section 218.5 awards attorneys' fees to a prevailing party in "any action brought for the nonpayment of wages…."[9]  The California Supreme Court held that "a section 226.7 claim is not an action brought for nonpayment of wages; it is an action brought for non-provision of meal or rest breaks."  *Id.* at 1257.  The *Kirby* court affirmed *Murphy*'s holding that a missed meal period payment was a "wage" for purposes of the statute of limitations.  *Id.* at 1256.  It held only that an action to recover payments under section 226.7 not one "brought for," *i.e.* brought "*on account of*" nonpayment of wages.  *Id.*

*Kirby* did not abrogate *Murphy*.  The payment required by section 226.7 remained a wage for all the reasons stated in *Murphy*.  As the *Murphy* court noted, the Labor Code defines "wages" to include "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Cal. Lab. Code § 200(a); *Murphy,* 40 Cal.4th at 1103.  The definition of "wages" is construed broadly in favor of employees.  *Id.*[10]  The distinction made in *Kirby* was narrowly limited the relief at issue there, in the two-way fee shifting statute.  *Kirby,* 53 Cal.4th at 1256.  In the statutes at issue here, sections 203 and 226, relief is available when an employee is not paid "wages earned" upon termination, or the wage statement does not include all "wages earned."  The "wages

_____

[9] The Court notes that, since the California Supreme Court's decision in *Kirby*, section 218.5 has been amended to limit attorneys' fees such that, if the party seeking attorneys' fees is *not* an employee, fees will only be awarded if the court finds the employee brought the action in bad faith.  *See* Labor Code § 218.5(a); 2013 Cal. Legis. Serv. Ch. 142 (S.B. 462) (Legislative Counsel's Digest of SB 462, amending Section 218.5).

[10] By analogy, failure to pay overtime premiums, accrued bonuses, and accrued vacation time upon termination all trigger section 203 penalties for failure to pay final wages timely. *See Cortez v. Purolator Air Filtration Products Co.,* 23 Cal.4th 163, 170 (2000) (section 203 penalties for willful failure to pay overtime wages); *Hoover v. Am. Income Life Ins. Co.*, 206 Cal.App.4th 1193, 1208 (2012) (section 203 penalties based on failure to pay accrued bonuses); *Drumm v. Morningstar, Inc.,* 695 F.Supp.2d 1014, 1019 (N.D.Cal. 2010) (section 203 penalties for failure to pay out unused vacation time).

United States District Court
Northern District of California

earned" language aligns with the language at issue in *Murphy,* and is not subject to the limitation and distinction made in the *Kirby* decision.

The Court acknowledges that, post-*Kirby,* there is a split in the federal district courts on this issue.[11]  A number of district courts agree that *Murphy* held that meal break payments under section 226.7 are "wages," and that *Kirby* does not require otherwise.  *See Finder v. Leprino Foods Co.*, No. 1:13-CV-2059 AWI-BAM, 2015 WL 1137151, at *5 (E.D. Cal. Mar. 12, 2015) ("Section 226.7 premiums should qualify as wages that are governed by the requirements of Section 226. *Murphy* directly examined the nature of the premium and termed it a 'wage' rather than a 'penalty.' *Kirby* was concerned with characterizing the Section 226.7 claim itself rather than the recompense."); *Abad v. Gen. Nutrition Centers, Inc.*, No. SACV 09-00190-JVS, 2013 WL 4038617, at *3-4 (C.D. Cal. Mar. 7, 2013) (distinguishing *Kirby*, and finding payments owed under section 226.7 were wages); *Avilez v. Pinkerton Gov't Servs.,* 286 F.R.D. 450, 465 (C.D.Cal.2012) (finding *Kirby* did not abrogate *Murphy* and ordering that an employer who fails to provide appropriate meal breaks also fails to record the premium in violation of Section 226(a)'s wage statement requirements.).[12]  Other district courts have found that section 226.7 payments are not wages for these purposes.  *See Singletary v. Teavana Corp.*, No. 5:13-CV-01163-PSG, 2014 WL 1760884, at *4 (N.D. Cal. Apr. 2, 2014) ("*Kirby* clarified that the wrong at issue in Section 226.7 is the non-provision of rest breaks, not a denial of wages," such that section 203 penalties for willful

---

[11] Following from *Kirby*, the California Court of Appeal held Labor Code 229's provision excepting "[a]ctions… for the collection of due and unpaid wages" from any private agreement to arbitrate would not include an action for unpaid meal period premiums under section 226.7.  *Lane v. Francis Capital Mgmt. LLC*, 224 Cal.App.4th 676, 684, 686 (2014).  That holding does not conflict with the Court's determination that the payments themselves are wages, since both Labor Code sections 229 and 218.5 are narrowly focused on the *form* of the action, not the nature of the relief.

[12]  At least one California Court of Appeal has affirmed, without analysis, the viability of a claim for wage statement and waiting time penalties based upon missed meal period premiums. *Bradley*, 211 Cal.App.4th at 1156 ("plaintiffs aleyso brought claims for: (1) failure to furnish accurate wage statements; (2) failure to keep accurate payroll records; (3) waiting time penalties; and (4) unfair business practices. To the extent these claims were based on plaintiffs' overtime and/or meal-and-rest-break claims, the court should have granted class certification on these claims").

failure "to pay any wages of an employee" were not meant to include the payments under section 226.7); *Jones v. Spherion Staffing LLC*, No. LA CV11-06462 JAK, 2012 WL 3264081, at *9 (C.D. Cal. Aug. 7, 2012) ("where the issue is not whether the ultimate remedy is a wage, but whether the employer had an obligation to include that premium pay remedy on employees' wage statements and pay it upon termination, the facts and reasoning in *Kirby* apply.").

Having undertaken its own careful reading of the controlling California Supreme Court authorities, including the analysis of the legislative history and the strong California public policy to construe the Labor Code in favor of employees stated therein, the Court finds that the premium payments due under section 226.7 are to be considered "wages" for purposes of sections 203 and 226.[13]  Accordingly, GNC's motion for summary judgment on these grounds is **DENIED**.

**IV.   CONCLUSION**

   **A.   Plaintiffs' Motion**

   1.   Plaintiffs' motion for partial summary judgment on GNC's liability for failure to provide meal periods pursuant to Labor Code sections 226.7 and 512 is **DENIED** for failure to meet its evidentiary burden and because, even if Plaintiffs had met their initial burden, GNC has sufficiently rebutted their showing to create a triable issue of fact.

   2.   Consequently, Plaintiffs' motion for partial summary judgment of liability on their *derivative* wage statement (Section 226(a)) and waiting time penalty claims (Section 201-203) is also **DENIED.**

   3.   Plaintiffs' motion for partial summary judgment of liability on their *direct* wage statement claim, for failure to set forth the inclusive pay period and overtime rate, is **GRANTED** against GNC and in favor of all non-exempt hourly employees of GNC who worked as Sales Associates and/or Assistant Managers from July 21, 2010, to September 19, 2014.

---

[13]   The Court further notes a recent Internal Revenue Chief Counsel Advisory letter stating that, because payments made under section 226.7 "are essentially additional compensation for the employee performing additional services during the period when the meal and rest periods should have been provided, it appears those payments would be wages for federal employment tax purposes."  IRS CCA 201522004, 2015 WL 3429413 (May 29, 2015).

United States District Court
Northern District of California

United States District Court
Northern District of California

4.      Plaintiffs' motion for partial summary judgment of liability on their direct waiting period penalties claim is **DENIED**.

**B.      GNC's Motion for Summary Judgment**

*1.      Wage Statement*

(1) GNC's motion for partial summary judgment of no liability after September 19, 2014 on account of GNC's elimination of the alleged deficiencies is **GRANTED**;

(2) GNC's motion for partial summary judgment of no liability due to Plaintiffs' inability to establish actual injury for statements prior to the January 1, 2013 Amendment to section 226(e), is **DENIED**;

(3) GNC's motion for partial summary judgment of no liability for statements prior to July 21, 2010, based upon the applicable statute of limitations, not being extended by the UCL statutory period, is **GRANTED**.

(4) GNC's motion for partial summary judgment of no liability for derivative claims because meal and rest period violations cannot serve as a predicate for a wage statement violation is **DENIED**.

(5)      GNC's motion for partial summary judgment of no liability for statements prior to January 13, 2011, for any derivative claim because Plaintiffs did not state a claim for such violations until the SAC the motion is **DENIED**.

*2.      Waiting Time Penalties*

(1) GNC's motion for partial summary judgment of no liability for final wages due before April 5, 2010, based on the applicable statute of limitations is **GRANTED**.

(2) GNC's motion for partial summary judgment of no liability for penalties after April 5, 2013, based upon "commencement of this action" cutting off further accrual of penalties is **DENIED**.

(3) GNC's motion for partial summary judgment of on the legal question of whether a suspension with a scheduled return date three days thereafter is a "discharge" for purposes of Labor Code section 201 is **DENIED**.

1    (4) GNC's motion for partial summary judgment of no liability due to lack of evidence that

2 GNC willfully violated Labor Code sections 201 and 202 is **DENIED**.

3    (5) GNC's motion for partial summary judgment of no liability for derivative claims

4 because meal and rest period violations cannot serve as a predicate for waiting time penalties is

5 **DENIED**.

6    This terminates Docket Nos. 236 and 238.

7    **IT IS SO ORDERED**.

8 Date: August 27, 2015                    _____

9                                          **YVONNE GONZALEZ ROGERS**
                                           **UNITED STATES DISTRICT COURT JUDGE**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California