UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHARLES BREWER,** individually and on behalf of all other similarly situated current and former employees of Defendant,<br><br>Plaintiffs,<br><br>v.<br><br>**GENERAL NUTRITION CORPORATION,**<br><br>Defendant. | Case No.  11-cv-3587 YGR<br><br>**ORDER (1) DENYING IN PART AND DENYING CONDITIONALLY IN PART GNC'S MOTION TO DECERTIFY CLASS; AND**<br>**(2) GRANTING IN PART AND DENYING IN PART MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. JEFFREY S. KANE AND SURVEY EVIDENCE**<br><br>Dkt. Nos. 256 and 257 |

Defendant General Nutrition Corporation ("GNC") brings two motions: (1) for Decertification of the class action; and (2) to exclude the testimony of Plaintiffs' expert, Dr. Jeffrey S. Kane, as well as any evidence of the survey discussed in his report. (Dkt. Nos. 256 and 257.)  The Court, having carefully considered the parties' papers in support of and in opposition to the motions, their arguments, and the record of the proceedings herein, and for the reasons set forth below, **ORDERS** as follows:

(1) the motion to decertify the class is **DENIED CONDITIONALLY** with respect to the final pay voluntary termination group, where an adequate representative needs to be located and added to the litigation in order for Plaintiffs to proceed.  Plaintiffs shall submit a notification identifying an adequate class representative for this subgroup and offering the person(s) so identified for deposition no later than **two weeks prior to the current trial date** (February 8, 2016), otherwise

the motion to decertify will be granted as to this subclass. The motion to decertify is otherwise **DENIED**. The arguments, evidence, and authorities offered by GNC do not change the Court's evaluation that the class and subclasses, as certified and as modified by this Court's order on the cross-motions for summary judgment, is properly certified under the requirements of Rule 23.

(2) the motion to exclude Dr. Kane's testimony and evidence of the survey conducted by Plaintiffs is **GRANTED IN PART** as to the survey evidence, which is not relevant to the liability issues on the meal and rest break claims as certified; and **DENIED IN PART** as to all other objections to Dr. Kane's Report and calculations.

**I.     MOTION TO DECERTIFY**

   **A.     Meal and Rest Breaks**

The Court finds that nothing in Plaintiffs' trial plan or in GNC's motion warrants decertification of the meal and rest break subclasses. GNC's arguments, focusing on lack of damages for certain individuals, are inconsistent with the California authorities following from *Brinker*, which hold that proof of class-wide liability for meal and rest breaks depends upon evidence of a common policy to comply with an employer's duty to provide meal and rest breaks. "An employer's duty with respect to meal breaks . . . is an obligation to provide a meal break to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30- minute break, and does not impede or discourage them from doing so." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012). GNC "may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." *Id.*

Plaintiffs have represented that they will establish liability on a class-wide basis primarily by offering evidence of: (a) GNC's meal and rest break policies; (b) GNC's requirement that all employees sign an on-duty break waiver; (c) evidence that class members' time records show that they did not clock out for breaks despite GNC policy that requiring them to clock out and in for meal and rest breaks (and state regulations requiring employers to record all meal breaks); and (d) evidence that GNC never made a premium payment for a missed meal or rest break to any class

member. Plaintiffs contend that GNC policy only authorizes breaks when "customer flow," "scheduling," and "business needs" permit, and that the on-duty break waivers were obtained because GNC knows that its policies will prevent them from taking breaks.

GNC offers testimony of class members and its own managers which it believes shows that employees could take breaks and that its managers enforced a policy that employees take their breaks. Plaintiffs counter that some of these same GNC managers testified employees could not always take their breaks because of coverage shortages. Conflicts in the evidence about what GNC's policy and practice actually was will have to be resolved by the jury.

In deciding whether a class is properly certified, it would be error for the Court to focus on whether some individuals were able to take breaks or chose to forego breaks. Whether some individuals were able to take breaks, or voluntarily chose not to take a break that was offered, are matters of individual damages. *Bradley v. Superior Court*, 211 Cal.App.4th 1129, 1150-51 (lack of a uniform policy and failure to authorize breaks are matters of common proof; the fact that an employee actually took a break or declined to take a break is immaterial to propriety of class treatment). "[T]he employer's liability arises by adopting a uniform policy that violates the wage and hour laws." *Faulkinbury v. Boyd & Associates, Inc.*, 216 Cal. App. 4th 220, 235 (2013), *review denied* (July 24, 2013) (citing *Jaimez v. DAIOHS, USA, Inc.,* 181 Cal.App.4th 1286, 1301 (2010)). "Whether or not the employee was able to take the required break goes to damages, and '[t]he fact that individual [employees] may have different *damages* does not require denial of the class certification motion.'" *Id.* (quoting *Jaimez*, 181 Cal.App.4th at 1301). Individual damage questions "will rarely if ever stand as a bar to certification." *Brinker*, 53 Cal.4th at 1054-55. California courts following after *Brinker* have held that the question for the trial court in deciding whether class certification should be granted is whether "the theory of recovery is amenable to class treatment," not "individual issues concerning the right to recover damages." *Jones v. Farmers Ins. Exch.*, 221 Cal. App. 4th 986, 997 (2013), *as modified on denial of reh'g* (Nov. 26, 2013), *review denied* (Mar. 12, 2014) (citing *Jaimez, supra,* 181 Cal.App.4th at p. 1299 ["The trial court misapplied the criteria, focusing on the potential conflicting issues of fact or law on an individual basis, rather than evaluating 'whether the *theory of recovery* advanced by the plaintiff is

3

likely to prove amenable to class treatment.'"]; *Bluford v. Safeway, Inc.* 216 Cal.App.4th 864, 871 (2013) [theory of recovery based on uniform policies and procedures denying rest periods; trial court was incorrect to deny class certification].) The need to make individualized determinations of damages does not defeat class certification. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013) ("the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)") (citing *Brinker,* 53 Cal.4th 1004); *see also Yokoyama,* 594 F.3d at 1089 ("The potential existence of individualized damage assessments...does not detract from the action's suitability for class certification.").

As to the issue of whether Plaintiffs who continue to maintain individual off-the-clock claims can be adequate representatives for these subclasses, GNC has not offered a substantial basis for contesting this issue. The named plaintiffs' off-the-clock claims for uncompensated time are mainly based on the premise that they were required to work to complete their duties *after* they had to log out of the POS system. This theory does not put them at odds with subclasses that rely on the accuracy of the rest and meal break clocking data *during* their shifts to show they missed meal and rest periods. GNC has not demonstrated a material inconsistency between the class representatives' positions on these distinct claims. The class representatives remain adequate representatives of these subclasses. To the extent the individual off-the-clock claims also allege that Plaintiffs worked during their lunch breaks even though they *did* clock out, this claim does not undermine a class claim relying on the accuracy of time clock data showing that employees *did not* clock out for a meal or rest break.

For the foregoing reasons, GNC's motion to decertify the meal and rest period subclasses is **DENIED**.

B.      **Reimbursement Subclass**

The Court certified a subclass of all Sales Associates and Assistant Managers "who worked at least one closing shift and who used an automobile to make a bank deposit." (Dkt. No. 185 at 30). The Court found that common questions predominated because there were common GNC policies that: (1) closing duties included taking the deposit to the bank; and (2) reimbursement for driving to the bank was only required if the bank was not on the employee's

4

route home, in addition to evidence that very few people in the class were ever reimbursed by GNC for automobile expenses incurred in making a bank deposit.

GNC's arguments focus mainly on concerns about how Plaintiffs will present evidence of who is in the class or the appropriate method of estimating the expenses. Neither of these arguments warrants decertification.

The evidence offered by GNC does not indicate that the class is not ascertainable. GNC's argument that the Plaintiffs' trial plan does not explain how they will present evidence to allow a *jury* to ascertain who is in the class misunderstands what Plaintiffs must prove at trial. To establish liability, Plaintiffs must prove that the employees in the subclass were not reimbursed for expenses they necessarily incurred. The need for proof of membership in the class would only arise after a finding of liability, at a claims proceeding stage. GNC is free to argue that the automobile expenses incurred were not "necessary" in all instances because some employees who used an automobile could have elected to take the deposit to the bank in some other manner. However, that argument does not compel decertification of the subclass. Likewise, the fact that other persons outside the class definition might have taken the deposits to the bank at times, and thereby incurred expenses themselves, does not diminish any of GNC's liability for reimbursement of expenses incurred by those within the class.

The motion to decertify the reimbursement subclass is **DENIED**.

### C.     Final Pay/Waiting Time Penalties Subclass

The Court certified two subclasses with respect to the final pay/waiting time penalties claim: (1) Sales Associates and Assistant Managers whose employment was *involuntarily* terminated and who were not paid final wages immediately; and (b) Sales Associates and Assistant Managers who quit (*i.e.*, *voluntarily* terminated), were paid by direct deposit, and were not paid final wages immediately or within 72 hours.

GNC reprises its prior summary judgment arguments in the motion, contending that the "Final Pay Spreadsheet" does not reflect the dates employees were terminated or received a final payment of wages. As the Court found previously, GNC is bound by its representations in discovery and cannot reverse course now. Though GNC contends that other evidence produced

should have told Plaintiffs that the Final Pay Spreadsheet did not provide the correct termination date or date of payment of final wages, GNC is estopped from denying that the information in the spreadsheet accurately represents those dates. This evidence provides a basis for common proof of liability as to this subclass. Plaintiffs also offer a plan for proof on a class-wide basis that GNC willfully failed to pay.

As to the voluntary termination group, GNC raises an additional argument: that none of the five named Plaintiffs are members of the voluntary termination subclass, as defined by the Court, in that none of them testified to being voluntarily terminated *and* paid by direct deposit. As the Court's certification order stated, Plaintiffs demonstrated that the voluntary termination group could establish class-wide liability based upon GNC's own evidence that employees electing to receive their final pay by direct deposit had to wait until their next regular pay date instead of being paid immediately or within 72 hours. Thus, for those paid by direct deposit, individual questions of payment delay based upon GNC's need to wait for an election of payment method by the employee would not affect those paid by direct deposit.

However, to the extent there is no class representative who was voluntarily terminated and paid by direct deposit, the subclass is without an adequate representative. Plaintiffs do not dispute that their current named representatives do not meet this criteria.

Thus, the motion to decertify this second Final Pay subclass is **DENIED CONDITIONALLY**. Plaintiffs have represented, and the Court accepts the representation, that they can amend to add an adequate representative for this subclass. However, if Plaintiffs fail to offer an adequate class representative for the subclass, and to make such representative available immediately for deposition no later than **two weeks prior to the first day of trial**, the motion to decertify shall be granted upon administrative motion from GNC.

## II. MOTION TO EXCLUDE DR. KANE AND SURVEY EVIDENCE

GNC seeks an order excluding the testimony of Plaintiffs' expert Dr. Jeffrey S. Kane and the results of a survey discussed in Dr. Kane's report. Plaintiffs' trial plan indicates that they will offer Dr. Kane's testimony regarding his analysis of GNC's corporate records, including class-wide data produced by GNC, as well as survey responses collected from "nearly 600 Class

1  Members." (Trial Plan, Dkt. No. 255, at 7:23.)

2  Looking first to the survey, the Court finds that the survey evidence Plaintiffs' main
3  contention in support of their meal and rest break claims is that GNC's policies are unlawful and
4  that liability can be established by looking to those unlawful policies, evidence of missed breaks,
5  and GNC's concession that it has never paid any class member a premium for a missed break.
6  GNC has argued strenuously throughout this litigation that, for every missed meal or rest break,
7  Plaintiffs must prove why each class member missed that break, and that such an inquiry
8  precludes class treatment. The Court has rejected this argument, as stated above in connection
9  with the motion to decertify.

10 Plaintiffs offer the survey evidence as a back-up plan, contending that "even if GNC's
11 break policies are ultimately found to be lawful, Plaintiffs will introduce evidence that
12 convincingly answers the 'why' question on a class-wide basis." (Trial Plan at 11:2-4.) However,
13 individualized evidence about why class members missed breaks is not relevant to the liability
14 question on which the meal and rest break subclasses were certified: whether GNC maintains
15 unlawful policies that result in missed breaks. As stated above, "the employer's liability arises by
16 adopting a uniform policy that violates the wage and hour laws." *Faulkinbury*, 216 Cal. App. 4th
17 at 235 (quoting *Jaimez*, 181 Cal.App.4th at 1301). The relevant evidence under these
18 circumstances is the policy and the records of missed breaks. Whether the individuals surveyed
19 reported that they missed breaks voluntarily or not does not figure into the calculus. Leaving aside
20 issues of whether the survey was properly designed or administered, the survey would not aid the
21 jury to determine a fact in issue.

22 As to GNC's other objections to Dr. Kane's report, the Court finds that they go to the
23 weight to be accorded to the evidence and not its admissibility. To the extent Dr. Kane's
24 calculations relied on incorrect legal or factual assumptions, those points can be raised during
25 cross-examination. A number of GNC's arguments appear to be disputes about the correct
26 statement of the law. Dr. Kane cannot opine on the law, but he is permitted to rely on counsel's
27 explication of the law in making his calculations of damages. If those calculations relied on a
28 statement of the law different from that stated in the instructions ultimately given to the jury, GNC

7

is free to point out such inconsistencies in its argument.

### III. CONCLUSION

(1) the motion to decertify the class is **DENIED CONDITIONALLY**. Should Plaintiffs fail to meet the conditions of this order regarding an adequate class representative for this subgroup, Defendants may seek entry of an order granting decertification of the subclass by administrative motion.

(2) the motion to decertify is otherwise **DENIED**.

(3) the motion to exclude the survey evidence is **GRANTED**;

(4) the motion to exclude testimony with respect to other opinions and calculations in Dr. Kane's report is **DENIED**.

The parties should be prepared to discuss the possibility of bifurcating trial on damages at the next pretrial conference.

This terminates Docket Nos. 256 and 257.

**IT IS SO ORDERED.**

Dated: December 28, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**