1    HOFFMAN EMPLOYMENT LAWYERS
     MICHAEL HOFFMAN, SBN 154481
2    mhoffman@employment-lawyers.com
     LEONARD EMMA, SBN 224483
3    lemma@employment-lawyers.com
     STEPHEN NOEL ILG, SBN 275599
4    silg@employment-lawyers.com
     580 California Street, Suite 1600
5    San Francisco, CA 94104
     Tele:  415-362-1111
6    Fax:   415-362-1112

7    Attorneys for Plaintiff
     CHARLES BREWER
8
     *(Additional Counsel Listed on Following Page)*
9

10               UNITED STATES DISTRICT COURT

11           NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 12   CHARLES BREWER, individually and on behalf of all other similarly situated current and former employees of Defendants, | Case No.  11-CV-3587 YGR |
| 13 | **NOTICE OF JOINT MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** |
| 14 | |
| 15       Plaintiff, | |
| 16   vs. | |
| 17   GENERAL NUTRITION CORPORATION, a Pennsylvania corporation, | Date:  April 19, 2016 |
| 18 | Time: 2:00 p.m. |
| 19       Defendant. | Judge: Hon. Yvonne Gonzalez Rogers<br>Court: 1 - 4th Floor |

20

21

22

23

24

25

26

27

28

1   ROBERT W. PRITCHARD, Bar No. 76979 (*pro hac vice*)
    rpritchard@littler.com
2   ALLISON R. BROWN, Bar No. 309669 (*pro hac vice*)
    arbrown@littler.com
3   LITTLER MENDELSON, P.C.
    625 Liberty Avenue, 26th Floor
4   Pittsburgh, PA 15222
    Telephone:     412.201.7600
5   Fax No.:        412.456.2377

6   ALAN S. LEVINS, Bar No. 57612
    alevins@littler.com
7   KARIN M. COGBILL, Bar No. 244606
    kcogbill@littler.com
8   SOPHIA BEHNIA, Bar No. 289318
    sbehnia@littler.com
9   LITTLER MENDELSON, P.C.
    650 California Street, 20th Floor
10  San Francisco, CA  94108.2693
    Telephone:     415.433.1940
11  Fax No.:        415.399.8490

12  Attorneys for Defendant
    GENERAL NUTRITION CORP.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

PAGE

3   I.   INTRODUCTION ........................................................................................................ 2

4        A.   The Parties ..................................................................................................... 2

5        B.   The Lawsuit .................................................................................................... 3

6   II.  DESCRIPTION OF THE SETTLEMENT ................................................................. 3

7        A.   The Class ........................................................................................................ 3

8        B.   Consideration ................................................................................................. 4

9        C.   Mechanics of Settlement ................................................................................ 4

10       D.   PAGA Allocation ........................................................................................... 6

11       E.   Service Enhancement Award and Attorneys' Fees and Costs ...................... 7

12       F.   Release of Claims ........................................................................................... 7

13       G.   Proposed Notice to the Class ......................................................................... 8

14       H.   Final Settlement Approval ............................................................................. 9

15       I.   CAFA Notice .................................................................................................. 9

16  III.  NATURE OF THE CASE ........................................................................................... 9

17       A.   Factual Background ........................................................................................ 9

18       B.   Investigation and Discovery ........................................................................ 10

19       C.   Settlement Negotiations ............................................................................... 11

20       D.   Risk and Uncertainty of Further Litigation................................................. 12

21            1.   Failure to Provide Meal and Rest Breaks ....................................... 12

22            2.   Wage Statement Claims................................................................... 13

23            3.   Final Pay Claims ............................................................................. 14

24            4.   Reimbursement Claims.................................................................... 15

25            5.   Derivative Claims ............................................................................ 16

26            6.   Off-the-Clock Claims ...................................................................... 16

27            7.   Summary of Potential Value vs. Settlement Value........................ 16

28  IV.   THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT
          TO GRANT PRELIMINARY APPROVAL ............................................................. 16

          A.   The Court's Role In Preliminary Approval Of A Class Action Settlement............... 17

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

B. All Factors Support Preliminary Approval ................................................. 17

   1. The Settlement is the Product of Informed, Non-collusive Negotiations ...... 17

   2. The Settlement Has No "Obvious Deficiencies" and Falls Well Within
      the Range for Approval.................................................................. 18

   3. The Settlement Does Not Improperly Grant Preferential Treatment To
      Class Representatives or Segments Of The Class........................................ 19

   4. The Stage Of The Proceedings Are Sufficiently Advanced To Permit
      Preliminary Approval Of The Settlement ....................................... 20

V. THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE ........................... 20

VI. THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES ................. 20

A. Numerosity ............................................................................. 21

B. Commonality............................................................................ 21

C. Typicality ............................................................................... 22

D. Adequacy ................................................................................ 22

E. The Additional Requirements of Rule 23(b)(3)......................................... 23

   1. Predominance ...................................................................... 23

   2. Superiority........................................................................... 24

VII. CONCLUSION................................................................................. 24

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

# TABLE OF AUTHORITIES

2

**PAGE(S)**

3

**CASES**

4

*Balasanyan v. Nordstrom*,

5

   2013 U.S. Dist. LEXIS 113630 (S.D.Cal. Aug. 12, 2013) .......................................23

6

*Buchholtz v. Swift & Co.*,

   62 F.R.D. 581 (D.Minn. 1973)...........................................................................23

7

*Gautreaux v. Pierce*,

8

   690 F.2d 616 (7th Cir. 1982) ...........................................................................17

9

*Ghazaryan v. Diva Limousine, Ltd.*,

10

   169 Cal. App. 4th 1524 (2008) ........................................................................23

11

*Glass v. UBS Fin. Servs.*,

   2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007)...........................18, 19

12

*Glass v. UBS Fin. Servs.*,

13

   2007 WL 221862 (N.D.Cal. Jan. 27 2007) .....................................................19

14

*Hanlon v. Chrysler Corp.*,

   150 F.3d 1011 (9th Cir. 1998) ...................................................................18, 22

15

*In re Wash. Public Power Supply System Sec. Litig.*,

16

   720 F. Supp. 1379 (D. Ariz. 1989) ..................................................................18

17

*Kirkorian v. Borelli*,

18

   695 F. Supp. 446 (N.D. Cal. 1988) ..................................................................17

19

*Louie v. Kaiser Found. Health Plan, Inc.*,

   2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008) ...........................................16, 17

20

*Louie v. Kaiser Foundation Health Plan, Inc.*,

21

   2008 WL 4473183 (S.D.Cal. Oct. 06, 2008) ....................................................19

22

*Munoz v. Guimarra Vineyards Corporation*,

23

   Case No. 09-0703, 2013 U.S. Dist. LEXIS 77839 (E.D. Cal. June 3, 2013).........21

24

*White v. Local*,

   688 F.2d 85 (9th Cir. 1982) ......................................................................22, 23

25

**STATUTES**

26

California Labor Code § 226 ..............................................................................13

27

California Labor Code § 2699(i).........................................................................6

28

iii.

1

**TABLE OF AUTHORITIES**
(CONTINUED)

2

PAGE(S)

3

Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ..................................................9

4

**OTHER AUTHORITIES**

5

Fed. R. Civ. P. Rule 23 ..............................................................................................22

6

Fed. R. Civ. P. Rule 23(a)...................................................................................21, 22

7

Fed. R. Civ. P. Rule 23(b)(3) .....................................................................21, 23, 24

8

Fed. R. Civ. P. Rule 23(e)(1)(A)................................................................................16

9

Manual for Complex Litigation, Second §30.44 ........................................................17

10

Manual for Complex Litigation, Second §41.43 ........................................................20

11

Moore's Federal Practice §§23.80 .............................................................................17

12

Newberg on Class Actions (3d ed. 1992) §4.25 .........................................................23

13

Newberg on Class Actions (3d ed. 1992) §8.39 .........................................................20

14

Newberg on Class Actions (3d ed. 1992) §11.41 ...............................................16, 17

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    **TO THE COURT, ALL INTERESTED PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2         **YOU ARE HEREBY NOTIFIED THAT** on April 19, 2016 at 2:00 p.m., in Courtroom 1 on

3    the fourth floor of this Court, located at 1301 Clay Street, Oakland, CA 94612, Plaintiffs Charles

4    Brewer, Charles Brewer, Jessica Bruns, Michael Mitchell, Michael Murphy, Wayne Neal and Andrew

5    Merino, individually, and on behalf of all others similarly situated, and Defendant General Nutrition

6    Corporation will jointly move the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure,

7    for an order (1) preliminarily approving the parties' proposed Class Action Settlement Agreement, (2)

8    conditionally certifying the class for settlement purposes only; (3) approving the proposed notice to

9    class members and directing its dissemination; and (4) setting a final approval hearing.

10        This motion will be based upon this notice, the attached memorandum of points and authorities,

11   the attached declarations (and exhibits thereto), the records and files in this action, and any oral or

12   documentary evidence that may be presented prior to or at the hearing.

13                                    Respectfully Submitted,

14

15   Dated: April 8, 2016                  */s/ Sophia Behnia*
                                           SOPHIA BEHNIA
16                                         LITTLER MENDELSON, P.C.
                                           Attorneys for Defendant
17                                         GENERAL NUTRITION CORP.

18

19

20   Dated: April 8, 2016                  */s/ Leonard Emma*
                                           LEONARD EMMA
21                                         HOFFMAN EMPLOYMENT LAWYERS
                                           Attorneys for Plaintiff
22                                         CHARLES BREWER

23

24   ///

25   ///

26   ///

27   ///

28   ///

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs Charles Brewer, Jessica Bruns, Michael Mitchell, Michael Murphy, Wayne Neal and Andrew Merino ("Plaintiffs") and Defendant General Nutrition Corporation ("GNC") (collectively, the "Parties") respectfully submit this memorandum in support of the Joint for Preliminary Approval of the Class Action Settlement.  The Parties request entry of an order: (1) preliminarily approving the proposed Class Action Settlement Agreement, (2) conditionally certifying the class for settlement purposes only, (3) approving the form and method for providing class-wide notice, (4) directing that notice of the proposed settlement be given to the class, and (5) scheduling a final approval hearing to consider the joint request for final approval of the proposed settlement and for entry of judgment as well as Plaintiffs' request for attorneys' fees and expenses.

### A.    The Parties

GNC is a specialty retailer of nutritional supplements and health and wellness products. GNC operates retail store locations in California.  Some GNC stores also have an Assistant Manager.  All stores have Sales Associates.  GNC stores are organized into regions consisting of about two dozen stores.  Regional Sales Directors (known as RSDs) oversee the stores within their region.  (Emma Decl., ¶ 2)

Plaintiffs are six former GNC employees who held positions as Sales Associates and/or Assistant Managers at GNC retail stores in California.  Charles Brewer worked as a Sales Associate from approximately February 2010 to April 2011, when he was promoted to Assistant Manager.  He worked as an Assistant Manager until May 2011.  Jessica Bruns worked as a Sales Associate from approximately October 2010 to March 2011, when she was promoted to Assistant Manager.  She worked as an Assistant Manager from approximately March 2011 until August 2012.  Michael Mitchell worked as a Sales Associate from approximately May 2010 to March 2011, when he was promoted to Manager Trainee and then Store Manager.  He worked as a Store Manager until September 2011. Michael Murphy worked as a Sales Associate from approximately March 2012 until September 2012.  Wayne Neal worked as a Sales Associate from approximately March 2011 until November 2012.  Andrew Merino worked as a Sales Associate from approximately November 2006

2.

1    until March 2009, when he was promoted to Manager Trainee and then Store Manager.  In May 2011

2    he became an Assistant Manager and in February 2012 he became a Sales Associate.  He worked as a

3    Sales Associate until June 2012.  (Emma Decl., ¶ 3)

4         **B.    The Lawsuit**

5         Plaintiffs and Class Members bring this class action on behalf of all all non-exempt hourly

6    employees of GNC who worked as Sales Associates and/or Assistant Managers in California from

7    July 21, 2007 to November 12, 2014 (excluding those individuals who submitted a timely request to

8    opt out as identified in Exhibit A of the Settlement Agreement)  for alleged violations of California's

9    wage and hour laws and regulations, including failure to authorize and permit meal and rest periods

10   (including failure to pay premium penalties for missed meal and rest periods), failure to provide

11   accurate and itemized wage statements, failure to pay final wages on time, failure to reimburse

12   necessary business expenses, and alleged unfair business practices.  The Plaintiffs additionally bring

13   individual claims for the alleged failure to pay for all hours worked, including statutory overtime for

14   hours worked over 40 per week in violation of the FLSA, and for hours worked over 8 in a day and/or

15   40 per week in violation of the California Labor Code.  (Emma Decl., ¶ 4)

16        On November 12, 2014, the Court issued an Order Granting in Part and Denying in Part

17   Plaintiffs' Motion to Certify California Class and Granting Defendant's Motion to Decertify FLSA

18   Collective Action (Dkt. 185), certifying the aforementioned claims but not certifying Plaintiffs' claim

19   for failure to pay for all hours worked; as a result, the failure to pay for all hours worked claim is

20   asserted on behalf of the Plaintiffs individually.  (Emma Decl., ¶ 5)

21   **II.    DESCRIPTION OF THE SETTLEMENT**

22        The Parties have reached a full and final settlement of the above-captioned action, which is

23   embodied in the proposed Class Action Settlement ("Stipulation" and/or "Settlement"), a copy of

24   which is attached as Exhibit 1 to the Declaration of Leonard Emma ("Emma Decl."), served and filed

25   herewith.  (Emma Decl., ¶ 6)

26        **A.    The Class**

27        The Class is defined as all non-exempt hourly employees of GNC who worked as Sales

28   Associates and/or Assistant Managers in California during the Class Period excluding those who opted

3.

1   out of the Class.[1]  The Class Period is the time period from July 21, 2007 to November 12, 2014.[2]

2   There are approximately 8,000 putative class members.  (Emma Decl., ¶ 7)

3   **B.   Consideration**

4   As consideration for this Settlement, Defendant has agreed to pay a Maximum Gross

5   Settlement Amount of $9,000,000 and also to pay up to $20,000 in Administration Costs.  This

6   payment will settle all issues pending in the litigation, including Class Counsel's Attorneys' Fees,

7   Expenses (including Administration Costs to the extent they exceed $20,000), the PAGA Penalty

8   Payment, all Individual Settlement Allocations to Class Members (include any employer and

9   employee payroll taxes), the Enhancement Payments to the Class Representatives, and the Reserve

10  Amount.  The Settlement is "all-in," with no reversion to Defendant.  (Stipulation ¶ 1.17.)

11  **C.   Mechanics of Settlement**

12  The Settlement Payment Allocation means that portion of the Maximum Gross Settlement

13  Amount to be allocated and made available for payment to Class Members after subtracting the

14  Attorneys' Fees Payment, the Expenses Payment (including Claims Administration Costs exceeding

15  $20,000), the PAGA Penalty Payment, the Enhancement Payment to the Class Representatives, and

16  the Reserve Fund from the Maximum Gross Settlement Amount.  (Stipulation ¶ 1.17.)

17  Each Class Members' Individual Settlement Allocation will be calculated in accordance with

18  the formula as described in the Stipulation at paragraphs 3.1(a)-(d), understanding that this formula

19  does not imply that the Parties are excluding consideration of any claim made in the Action, but instead

20  confirms that the Individual Settlement Allocation is in settlement for the complete and full release of

21  all Released Claims against all Released Parties.

22  For the purpose of calculating applicable taxes for the Individual Settlement Allocations to

23  Settlement Class Members, one-third (1/3) of each Individual Settlement Allocation shall be allocated

24  as wages (which shall be reported on Internal Revenue Service Form W-2), and the remaining two-

25

26  [1]   "Opt-Outs" are the 83 individuals who following class certification, requested to be excluded from the Class.  The list of these individuals is attached as Exhibit E to the Declaration of Jenny Cudworth Re: Notice Procedures dated August 14, 2015.  The Cudworth Declaration is attached to the Settlement Agreement as Exhibit A.
27
28  [2]   Capitalized terms are defined in Section 1 of the Stipulation.

4.

thirds (2/3) shall be allocated as penalties, liquidated damages, interest and other non-wage recovery (which shall not be subject to withholdings or deductions and shall be reported as non-wage income on Internal Revenue Service Form 1099).  (Stipulation ¶ 4.9.)

In accordance with paragraph 1.17 of the Stipulation, Defendant's share of any payroll taxes owing on the Individual Settlement Allocations will be paid out of the Maximum Gross Settlement Allocation.  (Stipulation ¶ 1.17.)

Any checks issued to Settlement Class Members shall remain negotiable for a period of ninety (90) days from the date of mailing.  The funds associated with any checks which are not timely negotiated will be donated to Wounded Warriors Project's Warriors to Work program for the benefit of California veterans transitioning into the civilian workforce by providing reasonable accommodations and otherwise facilitating adherence to the California Labor Code by employers of such veterans. (Stipulation ¶ 4.9.)

No later than seven (7) days following the Effective Date, as defined in the Settlement[3], the Claims Administrator shall provide a report to Class Counsel and Defense Counsel stating the total amount of funds (not exceeding the Maximum Gross Settlement Amount and up to $20,000 of the Administrative Costs) required to satisfy all payment obligations pursuant to this Agreement. (Stipulation ¶ 4.4.)  This report shall state the amount of the Court-approved Attorney's Fees Payment and Expenses Payment, the amount of the Court-approved Enhancement Payments, the amount of the Court-approved Administrative Costs (including those to be paid by Defendant and those to be paid out of the amount allocated to the Expenses Payment), the amount of the Court-approved Reserve Amount, and the amount of the PAGA Settlement.  The report shall also state the individual amounts allocated to each Settlement Class Member.

---

[3]     The Effective Date shall be the date upon which all of the following have occurred in the Action without any material alteration of the terms of this Agreement: (a) entry of the Final Approval Order; and (b) the expiration of the appeal rights of the Parties and all Class Members.  In the event no notice of appeal, or request to extend the time to appeal, is filed, the date of expiration of the appeal rights of the Parties and Class Members shall be deemed to occur 35 days after entry of the Final Approval Order.  (Stipulation ¶ 1.15.)

1       Not later than seven (7) days thereafter, Defendant shall remit the amount needed to satisfy its

2       obligations under this Agreement to the Claims Administrator to be held in escrow for the purpose of

3       making payments as provided in this Agreement.  (Stipulation ¶ 4.5.)

4       The Claims Administrator shall make payment to the Class Members within fourteen (14) days

5       after receiving payment from Defendant.  (Stipulation ¶ 4.9.)

6       As per paragraph 1.12 of the Stipulation, the parties agreed to use Rust Consulting ("Rust") as

7       the claims administrator for the Settlement.  The administration duties shall include, without limitation,

8       mailing the Notices, calculating awards, receiving and processing requests for exclusion and

9       objections, performing necessary skip traces on Notices returned as undeliverable; mailing Class

10     Member settlement checks, issuing any required tax reporting forms; providing weekly status reports

11     to Counsel for the parties as set forth in the Stipulation and drafting declarations of compliance with

12     the terms of the Stipulation.  (Stipulation ¶ 4.2.)

13     The Parties allocate $10,000 of the Maximum Gross Settlement to a Reserve Amount to

14     allocate to any individuals who were employed as non-exempt hourly employees of GNC who worked

15     as Sales Associates and/or Assistant Managers in California from July 21, 2007 to November 12, 2014,

16     but who were erroneously omitted from the list of Class members generated pursuant to this

17     Agreement, and who can establish a valid claim as a member of the certified class.  The Claims

18     Administrator will make a final determination of whether any individual qualifies for payment from

19     the Reserve Amount, and if so for how much, after consultation with Class Counsel and Defense

20     Counsel.  Any funds not paid from the Reserve Amount ninety days after the Effective Date of this

21     Agreement shall be donated by Defendant to the Wounded Warriors Project's Warriors to Work

22     program, or another organization approved by Defendant and the Court.  (Stipulation ¶ 1.18.)

23     **D.**    **PAGA Allocation**

24     The Settlement allocates Forty Thousand Dollars ($40,000) to the settlement of Plaintiffs'

25     PAGA claim on behalf of all Class Members to the extent premised upon alleged Labor Code

26     violations that formed the basis of any claims that were certified by the Court in the Certification Order.

27     (Stipulation ¶ 1.19.)  Pursuant to the express requirements of Labor Code § 2699(i), the PAGA Penalty

28     Payment shall be allocated as follows: Thirty Thousand Dollars ($30,000) (75%) to the LWDA for the

6.

1   enforcement of labor laws and education of employers, and Ten Thousand ($10,000) (25%) to be

2   included in the Settlement Payment Allocation and distrivuted to the Settlement Class.  (Stipulation ¶

3   1.19.)

4        **E.    Service Enhancement Award and Attorneys' Fees and Costs**

5        Subject to Court approval, the Stipulation provides for the Plaintiffs to apply for a Service

6   Enhancement Award of $15,000 to Charles Brewer, $10,000 to Jessica Bruns, and $7,500 each to

7   Michael Mitchell, Michael Murphy, and Wayne Neal, and $2,500 to Andrew Merino, for a total of

8   $50,000 to the Class Representatives for their time, risk and effort as the representatives of the class.

9   (Stipulation ¶ 1.17 (c).)

10       Subject to Court approval, Class Counsel shall be awarded a sum not to exceed thirty percent

11  (30%) of the Maximum Gross Settlement Amount ($2,700,000) for reasonable attorneys' fees to

12  compensate and reimburse Class Counsel for the work already performed by Class Counsel in this

13  case and all of the work remaining to be performed by Class Counsel in documenting the Settlement,

14  securing Court approval of the Settlement, administering the Settlement, ensuring that the Settlement

15  is fairly administered and implemented, and obtaining final judgment in the action.  Class Counsel

16  will also be allowed to apply separately for reimbursement of their actual litigation costs, not to exceed

17  Three Hundred Thousand Dollars ($300,000).  (Stipulation ¶ 4.1 (b).)  GNC will not oppose a motion

18  for approval of attorneys' fees, litigation expenses and service enhancement awards consistent with

19  the Stipulation.

20       **F.    Release of Claims**

21       In exchange for the consideration provided by Defendant, Class Members who do not timely

22  exclude themselves from the class in accordance with the Agreement release any and all claims that

23  were asserted in the operative Complaint in the Action or that could have been asserted in the Action

24  based upon the facts alleged in the operative Complaint, through and including November 12, 2014,

25  except that with respect to claims pertaining to the final payment of wages, the release shall extend to

26  such claims even if the date of separation was after November 12, 2014, if such claim is derived from

27  the alleged failure to pay wages allegedly earned up until November 12, 2014.  (Stipulation § 5.1 (b).)

28  Each of the Named Plaintiffs stipulate to a broader release that includes all claims, whether known or

7.

1    unknown, against GNC.  Named Plaintiffs, in their individual capacity and with respect to their

2    individual claims only, and in exchange for their respective Enhancement Payment, agree to release

3    all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever.

4    (Stiplation 5.1 (d).)

5              **G.      Proposed Notice to the Class**

6              Within fourteen (14) days of the date the Court grants preliminary approval of the Settlement,

7    Defendant will provide the Claims Administrator with an Excel spreadsheet listing the names and last

8    known addresses of the Class.  (Stipulation ¶ 4.2(a).)  Within twenty-eight (28) days of the Preliminary

9    Approval Order, Rust will mail the Notices to all Class Members via First-Class U.S. mail after

10   checking for an updated address on the national change of address database.  If any Notice is returned

11   as undeliverable, the Claims Administrator shall promptly advise Class Counsel and attempt to locate

12   such Class Member through one skip trace and, if a new address is identified, shall promptly mail an

13   additional Notice to such person.  (Stipulation ¶ 4.2 (b).)

14             Each Notice will show the number of weeks the Class Member worked in the Class, the number

15   of wage statements the Class Member received on or after July 21, 2010, and whether the Class

16   Member is a current or former employee as of the date of Preliminary Approval.  The Notice shall also

17   identify the number of points allocated to the Class Member and the estimated amount of money that

18   said Class Member will receive pursuant to the settlement.  If a Class Member disputes the data listed

19   on his or her Notice, the Class Member may provide written documentation to the Settlement

20   Administrator establishing the weeks worked, wage statements received, and/or employment status

21   that the Class Member contends are applicable.  When a Class Member presents a dispute, the Claims

22   Administrator will advise Defendant of the dispute and Defendant will have an opportunity to present

23   written documentation to the Settlement Administrator.  The Claims Administrator shall resolve all

24   disputes and have final decision with respect to any disputes.  (Stipulation ¶ 4.2 (c).)

25             Any Class Member who does not wish to become a Settlement Class Member may request

26   exclusion from the class by submitting a signed request for exclusion to the Claims Administrator.  To

27   be effective, such request for exclusion must include the individual's name and an unequivocal

28   statement that the individual requests to be excluded from the class, and it must be received by the

1   Claims Administrator within forty-five (45) days following the date of the initial mailing of the Notice
2   Packet.  (Stipulation ¶ 4.2 (d).)

3          Any Class Members who wish to present objections to the proposed settlement at the Fairness
4   Hearing must do so first in writing.  To be considered, such statements must be sent to the Court in
5   accordance with the Court's Procedural Guidance for Class Action Settlements, and be postmarked by
6   a date certain, to be specified on the Notice, which shall be forty-five (45) days after the initial mailing
7   of the Claims Administrator of the Notice.  An objector who timely submits a written objection may
8   appear at the Fairness Hearing either in person or through counsel hired by the objector.  An objector
9   who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he or
10  she submits his or her written objections.  Any Class Member who requests exclusion from the class
11  may not submit objections to the settlement.  The Parties may file with the Court written responses to
12  any filed objections no later than fourteen (14) calendar days before the Fairness Hearing.  (Stipulation
13  ¶ 4.2 (e).)

14         **H.**     **Final Settlement Approval**

15         Not later than fourteen (14) calendar days before the Fairness Hearing, the Named Plaintiffs
16  will submit a Joint motion for Final Approval of the Settlement Agreement.  Prior to filing the motion,
17  Class Counsel shall permit Defense Counsel an opportunity to review the motion and propose
18  revisions.  The date of the Fairness Hearing will be set by the Court. (Stipulation ¶ 4.3 (a).)

19         **I.**     **CAFA Notice**

20         Defendant has represented that, within 10 days of the filing of this Motion for Preliminary
21  Approval of Class Action Settlement, Defendant will comply with the notice requirements of the Class
22  Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA").  (Emma Decl., ¶ 8)

23  **III.**    **NATURE OF THE CASE**

24         **A.**     **Factual Background**

25         On November 12, 2014 the Court issued an Order Granting in Part and Denying in Part
26  Plaintiffs' Motion to Certify California Class and Granting Defendant's Motion to Decertify FLSA
27  Collective Action (Dkt. 185), certifying class claims for violations of California law, including failure
28  to authorize and permit meal and rest periods (including failure to pay premium penalties for missed

9.

1   meal and rest periods), failure to provide accurate and itemized wage statements, failure to pay final

2   wages on time, failure to reimburse necessary business expenses, and alleged unfair business practices.

3   Plaintiffs additionally bring individual claims for the alleged failure to pay for all hours worked,

4   including statutory overtime for hours worked over 40 per week in violation of the FLSA, and for

5   hours worked over 8 in a day and/or 40 per week in violation of the California Labor Code.  (Emma

6   Decl., ¶ 9)

7                   **B.      Investigation and Discovery**

8          The Parties have conducted extensive discovery and have exchanged detailed information and

9   data concerning the claims, defenses, and alleged damages at issue in the Lawsuit.  The Parties

10  exchanged and reviewed tens of thousands of documents pursuant to written discovery requests,

11  including documents pertaining to the policies and practices complained of herein.  The Parties

12  propounded and responded to multiple rounds of other written discovery, including interrogatories and

13  requests for admission.  The Parties enlisted the Court's assistance in resolving discovery disputes

14  when necessary.  Plaintiffs each sat for deposition.  Class Counsel deposed many of GNC's

15  management-level employees.  Class Counsel represent that they interviewed hundreds of putative

16  class members, both before filing this action and during its pendency.  Attorneys for both sides deposed

17  Class Members and expert witnesses during discovery.  (Emma Decl., ¶ 10)

18         Class Counsel gathered data on the types of alleged violations and frequency of each type of

19  alleged violation experienced by Class Members.  For example, GNC produced a database that reflects

20  the time punch data[4] for all GNC employees who reported working at a retail store located in

21  California during the time period from July 21, 2007, through December 31, 2014.  The database was

22  voluminous and included millions of lines of data.  Among other things, the records show the name of

23  the employee whose time punch is reflected; the date on which the work took place; the time of the

24  punch record; the type of punch (this can be "In for Day" "Out for Day" "Out for Lunch" "In From

25

26

27  _____
    [4]      GNC's store employees and their managers have the authority to adjust punch times to ensure

28  that the punch times accurately reflect the times actually worked ("Change Data").  GNC also
    produced Change Data records with similar information.

1   Lunch" "Out for Break" or "In From Break"); the manner in which the time record was created; and

2   position means the job held by the employee whose punch record is shown.  (Emma Decl., ¶ 11)

3          The data used to support Plaintiffs' meal and rest period claims provides an illustration of the

4   type of detailed information obtained during discovery in support of Plaintiffs' claims.   Similar

5   detailed information was produced by GNC as to the other claims in this lawsuit, which Plaintiffs and

6   Dr. Kane analyzed to determine their position with respect to GNC's alleged maximum potential

7   liability.  For example, among other data, (1) GNC produced a spreadsheet identifying the final date

8   of employment recorded in GNC's system for each separated Class Member along with the last date

9   that GNC issued a payment to them and whether the employee's termination was voluntary or

10  involuntary; (2) GNC produced payment detail listing reports throughout the entire class period for all

11  Class Members showing how much they were paid each pay period and whether or not payment was

12  made via manual check or direct deposit; (3) GNC produced a sampling of the forms of wage

13  statements issued to Class Members; (4) GNC produced bank location data which Plaintiffs used to

14  calculate the distance they contend Class Members traveled to make bank deposits and to estimate the

15  alleged maximum amount of money GNC potentially owed for automobile expense reimbursement.

16  (Emma Decl., ¶ 12)

17         The discovery conducted in this case was extremely thorough.  The Parties investigated the

18  claims and analyzed evidence for nearly half a decade and were fully prepared to conduct a class action

19  trial after extensive pretrial proceedings.  The Parties and their counsel are sufficiently familiar with

20  the facts of this case and the applicable laws to make an informed judgment as to the fairness of the

21  Settlement.  The Parties are represented by competent counsel and have consulted with counsel prior

22  submitting this Stipulation.  (Emma Decl. ¶ 13)

23         **C.    <u>Settlement Negotiations</u>**

24         On April 13, 2015, the Parties engaged in arm's length negotiations before Mark Rudy, an

25  experienced and well-respected neutral in wage and hour class action litigation.  The case did not

26  resolve at mediation, but the Parties maintained communication with Mr. Rudy.  On February 5, 2016,

27  the day the Parties intended to select a jury, the Parties reached an agreement of the material terms of

28  a Settlement with Mr. Rudy's assistance and stated the terms on the record.  The parties then negotiated

11.

additional terms and drafted a formal Stipulation, which is now presented to this Court for preliminary approval.  Plaintiffs and Class Counsel believe that the settlement is fair, reasonable, and adequate and is in the best interest of the Class in light of all known facts and circumstances, including the defenses asserted by Defendant, the risk of delay, and potential appellate issues.  (Emma Decl. ¶ 14)

### D.   Risk and Uncertainty of Further Litigation

Although a settlement has been reached, Defendant continues to deny any liability or wrongdoing of any kind associated with the claims alleged in the Lawsuit and further denies that, for any purpose other than settling the Lawsuit, this action is appropriate for class treatment.  Defendant contends that it has complied at all times with all applicable California and federal wage and hour laws.  Further, Defendant contends that one or more of the claims would be decertified because Plaintiffs do not share sufficient common issues of fact or law with the proposed class, they are not an adequate representative of the proposed class, their claims are not typical of the proposed class, and class treatment would require the Court to conduct individualized inquiries that would predominate over common questions of law or fact.  Thus, even if Plaintiffs were to maintain certification through trial and secure a verdict in favor of the Class, an appeal from Defendant regarding the propriety of certification in light of the evidence at trial would surely follow.  (Emma Decl. ¶ 15)

1.   Failure to Provide Meal and Rest Breaks

With respect to meal and rest breaks, Plaintiffs allege that GNC failed to provide meal and rest breaks to its sales associates and assistant managers as required by California law.  GNC denies Plaintiffs' claims, and contends that it provided meal and rest breaks to its Sales Associates and Assistant Managers as required by California law.  GNC claims that its policies and practices provided meal breaks and authorized and permitted rest breaks as required by California law.  GNC argues that the fact that employees routinely took breaks evidences that breaks were provided, authorized and permitted.  GNC also argues that "break coverage" existed in its stores the vast majority of the time, meaning that there were multiple employees present to relieve one another so meal and rest breaks

1  could easily be taken.  These arguments may undercut Plaintiffs' ability to prevail at trial.[5]  (Emma

2  Decl. ¶ 16)

3       Dr. Kane calculated the instances where GNC's timekeeping records indicated an allegedly

4  noncompliant break and multiplied that by the average hourly rate based on GNC's payroll records.

5  Based thereon, if Plaintiffs were to unequivocally prevail in all aspects of their meal and rest claims

6  at trial without any credit being offered to GNC's arguments or defenses, Plaintiffs' contend the

7  maximum amount the Class could recover is $12,538,862.03.  GNC contends that there are fatal

8  infirmities with Dr. Kane's analysis, including methodological flaws and the misapplication of

9  California break period rules.  GNC contends that these infirmities lead to a grossly inflated maximum

10  potential exposure.  (Emma Decl. ¶ 17)

11                2.    Wage Statement Claims

12       With respect to wage statement penalties, the Court granted summary judgment in Plaintiffs'

13  favor, finding that GNC is liable for wage statements issued from July 21, 2010, to September 19,

14  2014.  During this time period, GNC generally issued wage statements on a biweekly basis (once every

15  two weeks).  Plaintiffs' expert calculated the maximum potential amount of wage statement penalties

16  owed to the Class at $8,326,800.00.  GNC has asserted several legal arguments pertaining to this claim.

17  These include, *inter alia*, (1) Plaintiffs' alleged failure to plead a "direct" wage statement claim for

18  GNC's failure to identify the inclusive dates of the pay period and (2) this Court's improper

19  "retroactive" application of the 2013 amendment to Labor Code § 226.  Because there is a split of

20  authority regarding the retroactive application of the 2013 amendment to Labor Code § 226, the

21  likelihood of appellate review is increased.  If GNC were to prevail on either or both of these arguments

22  on appeal, the applicable claims period would be significantly reduced and Plaintiffs contend that

23  GNC's maximum potential exposure for wage statement penalties would be anywhere from $705,100

24  to $4,609,350.  GNC also asserts factual arguments that, if found to be persuasive on appeal, could

25  reduce its liability to zero for this claim.  These factual arguments include, *inter alia*, (1) GNC's

26

27  ─────────────
   [5] Indeed, GNC successfully relied on these arguments in obtaining a defense verdict for meal and rest period claims
   asserted by a group of retail store employees in the case of *Abad et al. v. General Nutrition Centers, Inc*., United States
28  District Court for the Central District of California, Case No. SACV-09-190-JVS (RNBx).

1   alleged compliance with California's wage statement laws by providing online wage statements

2   showing the inclusive dates of the pay period and (2) Plaintiffs' alleged failure to account for leaves

3   of absence in calculating penalties.  (Emma Decl. ¶ 18)

4               3.   Final Pay Claims

5           Plaintiffs allege that GNC willfully failed to pay all wages owed to class members whose

6   employment with GNC terminated.  GNC maintains records of payments to its employees in a

7   document called a "Payment Detail Listing" report, sometimes referred to as a "PR260" report.

8   Plaintiffs argue that a Final Pay penalty is owed anytime GNC's records show a final payment that is

9   more than three days after the date of termination.  (Emma Decl. ¶ 19)

10          GNC contends that the date of the final payment that Plaintiffs are relying on does not represent

11  a final payment of wages or, in some cases, it represents a payment of wages in the form of a

12  commission that could not have been calculated within three days of the last date of employment.

13  Accordingly, GNC contends, in both cases there is no penalty owed.  GNC also argues that the date

14  of termination is not necessarily the last date of employment.  Furthermore, GNC argues that Plaintiffs

15  are unable to establish that the alleged failure to pay final wages in a timely manner was willful in any

16  given instance.  (Emma Decl. ¶ 20)

17          Dr. Kane analyzed the data produced by GNC and calculated its maximum possible exposure

18  to be approximately $950,000 for direct violations of California's final pay laws.  However, Dr. Kane's

19  calculations did not limit the voluntary termination category of workers to those individuals who were

20  paid by direct deposit as required by the Certification Order.  When this is done, GNC's maximum

21  potential exposure is reduced to under $500,000 for direct violations of California's final pay laws,

22  which includes involuntarily terminated employees and voluntarily terminated employees who were

23  paid by direct deposit.  To the extent that Plaintiffs allege "indirect" violations of California's final

24  pay laws (predicated on a failure to provide meal and rest periods), there is a split of authority within

25  this Court regarding whether or not "indirect" final pay violations can be predicated on missed breaks

26  as a matter of law.  Given this split of authority, this claim presents another area where the likelihood

27  of appellate review is increased.  Furthermore, to the extent that Plaintiffs' "indirect" final pay claim

28  is predicated on alleged break violations, the same risks and defenses discussed above regarding

14.

1   proving meal and rest period violations apply to a derivative claim based thereon.  Dr. Kane calculated
2   GNC's maximum potential exposure for alleged "indirect" final pay violations to be approximately
3   $4,002,043.43.  GNC again claims that this figure is grossly inflated because it is predicated on Dr.
4   Kane's allegedly flawed break period analysis.  (Emma Decl. ¶ 21)

5               4.        Reimbursement Claims

6        Plaintiffs' reimbursement claims are based on the fact that some Class Members were required
7   to transport deposits from GNC stores to designated banks.  Plaintiffs argue that GNC knows (or at
8   least has reason to know), that some Class Members were required to transport cash from GNC stores
9   to designated banks.  Plaintiffs argue that GNC cannot demonstrate that it actually reimbursed Class
10  Members for these expenses.  (Emma Decl. ¶ 22)

11       GNC argues that it is not liable for unpaid reimbursements and, furthermore, that Plaintiffs
12  cannot prove the quantity of reimbursements allegedly owed.  First, GNC argues that it has a lawful
13  travel reimbursement policy for California employees.  Second, GNC points out that Plaintiffs do not
14  have evidence regarding which employees drove to the bank to make the deposit.  GNC further argues
15  that the evidence shows Class Members did not always complete bank deposits because non-Class
16  Members, such as a managers, were sometimes responsible for bank deposits.  GNC also notes that
17  some employees walked, or rode with others (including non-GNC employees).  (Emma Decl. ¶ 23)

18       Dr. Kane analyzed data provided by GNC regarding the address of the bank designated for
19  particular locations.   Using that data, Dr. Kane calculated the alleged maximum possible
20  reimbursements owed at $840,694.19, which assumes (1) a Class Member always completed a bank
21  deposit when closing a store (ignoring any instances when a manager may have done so or when the
22  deposit was not done at closing) and (2) Class Members are entitled to reimbursement for a "round-
23  trip" (despite the fact that Class Members are not required to return to the store after making the
24  deposit).  GNC disputes these assumptions.  (Emma Decl. ¶ 24)

25               5.        Derivative Claims

26       The Class claims for failure to pay final wages on time, unfair business practices, and PAGA
27  violations are largely predicated on and derive from the underlying violations described above.
28  Moreover, the Court has virtually unlimited discretion to reduce the amount of penalties under PAGA.

15.

This adds significant uncertainty to PAGA penalties.  Thus, the same litigation risks described above apply here.  (Emma Decl. ¶ 25)

### 6.    Off-the-Clock Claims

The off-the-clock and unpaid overtime claims asserted by Plaintiffs are individual claims. Given the Class size of approximately 8,000 people, the individual off-the-clock claims of a handful of Plaintiffs do not add significant value and may be ignored for purposes of analyzing the Class Settlement.  (Emma Decl. ¶ 26)

### 7.    Summary of Potential Value vs. Settlement Value

Plaintiffs estimate that if the class were to prevail in all causes of action at trial, with all factual and legal disputes being resolved in Plaintiffs' favor, the maximum potential recovery for the class would be $25,708,399.65.  Plaintiffs acknowledge that a recovery of this magnitude is unlikely given the risks identified herein.  As discussed above, GNC contends that it has no liability in this case and that the Court should decertify the class action.  Class Counsel represents that the proposed settlement of $9,000,000.00 is an exemplary result and is certainly a fair, reasonable and adequate settlement. (Emma Decl. ¶ 27)

## IV.    THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL

Preliminary approval is the first of three steps that comprise the approval procedure for the settlement of class actions. *See e.g. Louie v. Kaiser Found. Health Plan, Inc.*, 2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008); Fed. R. Civ. P. 23(e)(1)(A); 2 H. Newberg & A. Conte, Newberg on Class Actions (3d ed. 1992) at §11.41, p.11-87.  The second step is the dissemination of notice of the settlement to all class members.  The third step is a final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented and class members may be heard regarding the settlement. *See* Manual for Complex Litigation, Second §30.44 (1993).

### A.    The Court's Role In Preliminary Approval Of A Class Action Settlement

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement is "within the range of possible approval."  Manual for

16.

1   Complex Litigation, Second §30.44 at 229; *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982);

2   *Louie*, *supra*, at *7.  The ultimate fairness determination occurs after class members receive notice of

3   the settlement, and have an opportunity to voice their views or to exclude themselves.  *See*, e.g., 3B J.

4   Moore, Moore's Federal Practice §§23.80 - 23.85 (2003).

5        There is an initial presumption of fairness when a proposed settlement, which was negotiated

6   at arm's length by Class Counsel, is presented for court approval. Newberg, 3d Ed., §11.41, p.11-88.

7   Courts generally recognize that the opinion of experienced counsel supporting the settlement is entitled

8   to considerable weight. *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988).

9        **B.     All Factors Support Preliminary Approval**

10       Courts consider several factors, none of which are independently determinative, in evaluating

11  a settlement for purposes of preliminary approval.  If the proposed settlement appears to be the product

12  of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly

13  grant preferential treatment to class representatives or segments of the class, and falls within the range

14  of possible approval, the court should direct that notice be given to the class members of a formal

15  fairness hearing, where evidence may be presented in support of and in opposition to the settlement.

16  *See* Manual of Complex Litigation, Second §30.44, at 229.  Here, the Settlement meets all of these

17  criteria, as detailed below.

18            1.     The Settlement is the Product of Informed, Non-collusive Negotiations

19       This Settlement is the result of serious, informed, non-collusive and hard-fought negotiations

20  before Mark Rudy -- an experienced and well-respected neutral.  As discussed above, the Parties

21  engaged in extensive formal written discovery and pre-trial motion practice prior to reaching the

22  Settlement.  Plaintiffs obtained conditional certification of federal claims.  Defendant then decertified

23  these claims while Plaintiffs obtained certification of California claims.  The Parties brought discovery

24  disputes to the attention of the Court for resolution.  After a full day of negotiations with Mr. Rudy in

25  April 2015, the Parties were still unable to reach a resolution.  (Emma Decl. ¶ 28)

26       In the months following mediation, the Parties continued to investigate the claims and defenses.

27  The Parties filed cross-motions for summary judgment.  Defendant filed a motion to decertify the

28  action and a Daubert motion to disqualify Plaintiffs' expert.  The Parties had prepared for trial and

17.

attended several pretrial conferences.  The material settlement terms were not reached until the morning when jury selection was scheduled, February 5, 2016.  The final settlement terms were then negotiated and set forth in the Stipulation, finalized on April 5, 2016.  The Stipulation went through several drafts and was carefully drafted to protect the interests of the Parties and absent class members.  (Emma Decl. ¶ 29)

Here, the Parties were represented by experienced and capable counsel who zealously advocated their respective positions over the course of nearly 5 years.  Accordingly, "[t]here is likewise every reason to conclude that settlement negotiations were vigorously conducted at arms' length and without any suggestion of undue influence." *In re Wash. Public Power Supply System Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989).

> 2. The Settlement Has No "Obvious Deficiencies" and Falls Well Within the Range for Approval

The proposed Settlement herein has no "obvious deficiencies" and is well within the range of possible approval.  All Class Members will receive an opportunity to participate in the Settlement and receive payment according to the same formula.  (Stipulation § 3.)  In *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007) the federal district court ruled that the settlement, which represented approximately 25 to 35% of the loss to the class, was fair, reasonable, and adequate. *Id.* at 28.  Similarly, this settlement is fair, adequate, and reasonable and, thus, is entitled to preliminary approval.  Where both sides face significant uncertainty, the attendant risks favor settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Here, a number of defenses asserted by Defendant present serious threats to maintaining certification and ultimate success of the classwide claims.  After a thorough investigation and arm's length negotiations between experienced and informed counsel, the parties recognized the potential risks and agreed on the settlement of Nine Million U.S. Dollars ($9,000,000) (the "Maximum Gross Settlement Amount").  Given the amount of the settlement as compared to the potential value of claims, the settlement is fair and reasonable.

3.      The Settlement Does Not Improperly Grant Preferential Treatment To Class Representatives or Segments Of The Class

The relief provided in the Settlement will benefit all Class Members equally.  The Settlement does not improperly grant preferential treatment to Plaintiffs or segments of the Class in any way. Payments to the Settlement Class are all determined according to the same methodology -- each Settlement Class Member will receive a Individual Settlement Allocation that is based upon the particular individual's allocation of points.  (Stipulation ¶ 3.1.)

Plaintiffs will apply to the Court for a modest enhancement award in consideration for their service and for the risks undertaken on behalf of the class.  (Stipulation ¶ 1.17 (c).)  Plaintiffs contend that they performed their duties admirably by working with Class Counsel, including providing information on Defendant's alleged employment practices, reviewing documents with Class Counsel, sitting for deposition, participating in mediation, preparing for trial, and referring Class Counsel to other material witnesses.  (Emma Decl. ¶ 30)  The requested Enhancement Payments of $15,000 to Charles Brewer, $10,000 to Jessica Bruns, and $7,500 each to Michael Mitchell, Michael Murphy, and Wayne Neal, and $2,500 to Andrew Merino are well within the accepted range of awards in a settlement for purposes of preliminary approval.  *See e.g. Glass v. UBS Fin. Servs.*, 2007 WL 221862, *16-17 (N.D.Cal. Jan. 27 2007) (awarding $25,000 service award in overtime class action and a pool of $100,000.00 in enhancements); *Louie v. Kaiser Foundation Health Plan, Inc.*, 2008 WL 4473183, *7 (S.D.Cal. Oct. 06, 2008) (awarding $25,000 service award to each of six plaintiffs in overtime class action).  As explained in *Glass*, service awards are routinely awarded to class representatives to compensate the employees for the time and effort expended on the case, for the risk of litigation, for the fear of suing an employer and facing retaliation, and to serve as an incentive to vindicate the statutory rights of all employees.  2007 WL 221862 at *16-17.

4.      The Stage Of The Proceedings Are Sufficiently Advanced To Permit Preliminary Approval Of The Settlement

The stage of the proceedings at which this Settlement was reached also militates in favor of preliminary approval and, ultimately, final approval of the Settlement.  The Settlement was not reached until the day a jury would have been selected.  As descdribed above, this case has been actively

19.

1  litigated for nearly 5 years now.  Class Counsel was in an excellent position to evaluate the fairness of

2  this settlement.  Class Counsel believes that the proposed Settlement is fair, reasonable, adequate and

3  in the best interest of the Class in light of all known facts and circumstances, including the risk of

4  delay, defenses asserted by Defendant, potential appellate issues, and myriad other risks of continued

5  litigation.  Defendant and Defendant's counsel also agree that the Settlement is fair and in the best

6  interest of the Parties.  (Emma Decl. ¶ 31)

7  **V.    THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE**

8  The Court has broad discretion in approving a practical notice program.  The parties have

9  agreed upon procedures by which the Class Members will be provided with written notice of the

10  Settlement similar to that approved and utilized in hundreds of class action settlements.

11  This notice program, as detailed above, was designed to meaningfully reach the largest possible

12  number of potential Class Members and advises them of all pertinent information concerning the

13  settlement.  The mailing and distribution of the Notice satisfies the requirements of due process, and

14  is the best notice practicable under the circumstances and constitutes due and sufficient notice to all

15  persons entitled thereto.  The proposed Notice is accurate and informative.  The Notice satisfies the

16  content requirements for notice following the exemplar class notice in the Manual for Complex

17  Litigation, Second §41.43.  The Notice also fulfills the requirement that Class notices be neutral.

18  Newberg, at §8.39.

19  **VI.   THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES**

20  The claims were officially certified, since the Court largely denied GNC's recent Motion for

21  Decertification.  Accordingly, this Court has already determined that the Class meets all of the

22  requirements for certification under F.R.C.P., Rule 23(b)(3). [6]  Therefore, this Court need not

23  *conditionally* certify a Class for settlement purposes.

24

25

26  [6] To the extent the Court's prior orders limited the temporal scope of any particular subclass to a period narrower than the Class Period (the time period from July 21, 2007 to November 12, 2014), the settlement agreement and this motion would extend the temporal scope of the certified class to the entire Class Period as set forth in the agreement.  For example, in its

27  Summary Judgment Order, the Court limited the temporal scope of the Final Pay Claim subclass to the period between April 5, 2010 and April 5, 2013.  For settlement purposes, however, the release of the Final Pay Claim includes Class

28  Members whose employment ended between April 6, 2013 and November 12, 2014.

20.

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    Plaintiffs contend the claims are properly certified because all four prerequisites of F.R.C.P.,

2    Rule 23(a) -- numerosity, commonality, typicality, and adequacy of representation -- have been

3    satisfied.

4        **A.    <u>Numerosity</u>**

5        Here, the Class is composed of about 8,000 individuals, which is sufficiently numerous.

6    Additionally, the Class Members are located throughout California.  Thus, numerosity is satisfied

7    because it would be impracticable to join the Class Members as plaintiffs in a single lawsuit.  (Emma

8    Decl. ¶ 32)

9        **B.    <u>Commonality</u>**

10       Rule 23(a) requires that there be a common question of law or fact.  There is no requirement

11   that the members of the class be identically situated, only that there exists one or more common factual

12   or legal questions.  This requirement is met if common questions of liability are present, even if there

13   may be individual variations.  *See Munoz v. Guimarra Vineyards Corporation*, Case No. 09-0703,

14   2013 U.S. Dist. LEXIS 77839 at *31 (E.D. Cal. June 3, 2013).

15       Here, Plaintiffs assert that common questions of law and fact are present.  The virtually

16   identical alleged experiences of Class Members stem from the common policies implemented by GNC.

17   At all relevant times, GNC maintained a GNC Store Employee Handbook and a Retail Operations

18   Manual at every store in California.  GNC also implemented a Basic Store Training Program.  While

19   the handbook, the Retail Operations Manual, and training program were updated and revised from

20   time-to-time, they remained substantially, if not exactly, the same throughout the entire relevant period.

21   For purposes of approving this Settlement only, Defendant does not oppose Plaintiffs' assertion that

22   commonality exists.  (Emma Decl. ¶ 33)

23       **C.    <u>Typicality</u>**

24       The typicality requirement of Rule 23(a) requires that the members of the class have the same

25   or similar claims as the named plaintiff.  In *Hanlon v. Chrysler Co.*, 150 F.3d 1011 (9th Cir. 1998),

26   the Ninth Circuit held that "[u]nder the rule's permissive standards, representative claims are 'typical'

27   if they are reasonably coextensive with those of absent class members; they need not be substantially

28   identical." 50 F.3d at 1020.

21.

Plaintiffs' contend there can be little doubt that the typicality requirement is fully satisfied. The Plaintiffs, like every other member of the Class, worked as Sales Associates and/or Assistant Managers. Thus, Plaintiffs' alleged the claims of the Plaintiff and the Class arise from the same course of conduct by Defendant, involve the same policies, practices, positions and type of work, and are based on the same legal theories. For settlement purposes only, the Parties have stipulated that the typicality requirement is met. (Emma Decl. ¶ 34)

### D. **Adequacy**

The Plaintiffs, as Class Representatives, provided adequate representation of the interests of the class in that: (a) their attorneys are competent, experienced in class litigation and generally able to conduct the proposed litigation; and (b) the Class Representative do not have interests antagonistic to those of the class. *White v. Local*, 688 F.2d 85 (9th Cir. 1982). Rule 23 asks whether the Class Representative will vigorously prosecute on behalf of the class and have a basic understanding of the claims; this requirement has been met here. First, Plaintiffs are well aware of their duties as the representative of the class and have actively participated in the prosecution of this case to date. They helped Class Counsel investigate the claims before and after filing the case. Plaintiffs put Class Counsel in touch with putative class members to investigate class claims. For the benefit of the Class, Plaintiffs also, *inter alia*, (i) assisted Class Counsel in responding to written discovery, (ii) sat for depositions and (iii) participated in a full-day ADR session. (Emma Decl. ¶ 35)

Second, Plaintiffs retained competent counsel, experienced in employment class actions. Class Counsel has extensive experience in wage and hour class actions. (Emma Decl. ¶ 36) Third, there is no antagonism between the interests of the Plaintiff and those of the Class. Both the Plaintiff and the Class Members seek monetary relief under the same set of facts and legal theories. Under such circumstances, and for purposes of this Settlement only, the Parties stipulate that there are no conflicts of interest, and adequacy of representation is satisfied. *See White v. Local*, 688 F.2d at 85. (Emma Decl. ¶ 37)

### E. **The Additional Requirements of Rule 23(b)(3)**

For purposes of settlement only, the Parties further stipulate that the requirements of Rule 23(b)(3) have also been satisfied, demonstrating why certification should be maintained. Under Rule

22.

23(b)(3), a class action may be maintained if two conditions are met.  First, common questions must predominate over individual issues.  Second, the class action must be superior to other methods for the fair and efficient adjudication of the controversy.

                    1.      Predominance

Rule 23(b)(3) provides that a class may be maintained if "the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members."  A claim will meet the predominance requirement in cases where generalized evidence of the Defendants' conduct will prove or disprove an element of the claim on a simultaneous class-wide basis.  The "fundamental question" is whether the claim asserted is seeking a remedy to a "common legal grievance." *Lockwood Motors*, 162 F.R.D. at 580; *Buchholtz v. Swift & Co.*, 62 F.R.D. 581, 598 (D.Minn. 1973).  Further, the mere fact that there are certain issues that may need to be determined on an individual basis does not preclude a predominance finding.  *See* Newberg & Comte, Newberg on Class Actions §4.25 (3d ed. 1992).

Courts often find that common issues predominate where an employer treats the putative class members uniformly, even where the party opposing class certification presents evidence of individualized variations.  *See, e.g., Balasanyan v. Nordstrom*, 2013 U.S. Dist. LEXIS 113630 (S.D.Cal. Aug. 12, 2013); *see also Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524, 1538 (2008) (wage and hour claims "routinely proceed as class actions").

Here, Plaintiffs assert, and the Court previously agreed, that the adjudication of liability would focus on the common issues (discussed above) surrounding Defendant's alleged unlawful failure to pay all owed wages including overtime wages, alleged failure to provide meal and rest periods, alleged failure to provide accurate wage statements, alleged failure to reimburse business expenses, alleged failure to timely pay wages, and related claims.  Accordingly, Plaintiffs argued, and the Court agreed, that common issues of law and fact predominate.

                    2.      Superiority

The Court previously determined that, in this case, "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." F.R.C.P., Rule 23 (b)(3).

23.

1    Here, Plaintiffs allege that a class action is the superior mechanism for adjudication of the

2  relatively small claims for the individual Class Members as pled by the Plaintiff.  If each class member

3  brings a separate action, each claim would be similar in nature and individual claims will tax individual

4  resources of the members as well as judicial resources.  The Class Members have no particular interest

5  in individually controlling the prosecution of separate actions and any class member who wants to

6  pursue a claim for a greater amount can request exclusion from the Settlement.  In light of these factors,

7  a class action is superior to individual resolution of the wage and hour claims.  While Defendant

8  disputes that the superiority requirement may be satisfied for purposes of a litigation class, Defendant

9  does not oppose such a finding for purposes of this settlement only.  (Emma Decl. ¶ 38)

10  **VII.    <u>CONCLUSION</u>**

11    Counsel for the parties have committed substantial amounts of time, energy, and resources

12  litigating and ultimately settling this case. In the judgment of Plaintiffs and Class Counsel, the

13  proposed settlement is a fair, adequate and a reasonable compromise of the issues in dispute in light

14  of the strengths and weaknesses of each party's case.  After weighing the certain and immediate

15  benefits of these settlements against the uncertainty of trial, and appeal, Plaintiffs and Class Counsel

16  believe the proposed settlement is fair, reasonable and adequate, and warrants this Court's preliminary

17  approval.

18  ///

19  ///

20  ///

21  ///

22    Accordingly, the Parties respectfully request that the Court preliminarily approve the proposed

23  settlement, enter the proposed Preliminary Approval Order submitted herewith, and set a date for the

24  final approval hearing.

25

26

27

28

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

2

3      Dated: April 8, 2016                    /s/ Sophia Behnia
                                               SOPHIA BEHNIA
                                               LITTLER MENDELSON, P.C.
4                                              Attorneys for Defendant
                                               GENERAL NUTRITION CORP.
5

6

7      Dated: April 8, 2016                    /s/ Leonard Emma
                                               LEONARD EMMA
8                                              HOFFMAN EMPLOYMENT LAWYERS
                                               Attorneys for Plaintiff
9                                              CHARLES BREWER

10

11

12                                   **Attestation**

13
              Pursuant to Northern District L.R. 5-1(i)(3) regarding signatures, I hereby attest that
14
       concurrence in the filing of this document has been obtained from each of the other signatories. I
15
       declare under penalty of perjury under the laws of the United States of America that the foregoing is
16
       true and correct.
17

18
                                               /s/ Leonard Emma
19                                             LEONARD EMMA
                                               HOFFMAN EMPLOYMENT LAWYERS
20                                             Attorneys for Plaintiff
                                               CHARLES BREWER
21

22

23

24

25

26

27

28

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT