1  HOFFMAN EMPLOYMENT LAWYERS
   Michael Hoffman, SBN 154481
2  mhoffman@employment-lawyers.com
   Leonard Emma, SBN 224483
3  lemma@employment-lawyers.com
   Stephen Noel Ilg, SBN 275599
4  silg@employment-lawyers.com
   580 California Street, Suite 1600
5  San Francisco, CA 94104
   Tel   (415) 362-1111
6  Fax  (415) 362-1112

7  Attorneys for Plaintiffs and the Class
   CHARLES BREWER *et al.*

8

9              **UNITED STATES DISTRICT COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11

12  CHARLES BREWER, individually and       CASE NO.: 11-CV-03587-YGR
    on behalf of all others similarly situated,
13                                          **PLAINTIFFS' NOTICE OF MOTION
                                            AND MOTION FOR ATTORNEYS' FEES,
14              Plaintiff,                   COSTS, AND CLASS REPRESENTATIVE
                                            ENHANCEMENTS; MEMORANDUM OF
15   vs.                                    POINTS AND AUTHORITIES**

16                                          Date:  August 23, 2016
    GENERAL NUTRITION CORPORATION,          Time: 2:00 p.m.
17  and DOES 1 to 10, inclusive,            Judge: Hon. Yvonne Gonzalez Rogers
                                            Courtroom: 1 – 4th Floor
18              Defendant.
                                            Complaint filed: July 21, 2011
19

20

21

22

23

24

25

26

27

28

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

-i-

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

## NOTICE OF MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENTS

**TO THE COURT, ALL INTERESTED PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**YOU ARE HEREBY NOTIFIED THAT** on August 23, at 2:00 p.m., in Courtroom 1, located on the 4th floor at 1301 Clay Street, Oakland, CA 94612, Plaintiffs Charles Brewer, *et al.*, individually, and on behalf of all others similarly situated, will and hereby do move for an order granting attorneys' fees in the amount of $2,700,000, for reimbursement of reasonable litigation costs in the amount of $173,066.35, and for class representative enhancements in the aggregate amount of $50,000.

This motion is based on this Notice, the Memorandum of Points and Authorities submitted herewith, the Declarations of Counsel submitted herewith, the Class Action Settlement Agreement preliminarily approved by the Court, the Court's files and records in this matter, and any matters submitted by Plaintiffs hereafter.

DATED: June 24, 2016                    HOFFMAN EMPLOYMENT LAWYERS

/s/ Leonard Emma
_____
Leonard Emma, Esq.
Attorneys for Plaintiffs and the Class
CHARLES BREWER *et al.*

-ii-

*Brewer v. GNC / Case No. 11-CV-03587-YGR*
Notice of Motion and Motion for Attorneys' Fees, Costs and Class Representative Enhancements

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   CASE HISTORY ................................................................................................. 2

      A.  The Pleadings ........................................................................................... 2

      B.  Investigation, Discovery and Litigation ................................................... 2

      C.  Settlement ................................................................................................. 4

III.  DISCUSSION ..................................................................................................... 4

      A.    Available Methods for Determining Attorneys' Fees ............................ 4

      B.    Plaintiffs' Fee Request is Reasonable Using the Lodestar Method ....... 5

           1.   Hours Expended by Class Counsel are Reasonable ...................... 6

           2.   Class Counsel's Hourly Rates are Reasonable ........................... 10

           3.   A Positive Lodestar Multiplier is Appropriate ........................... 10

      C.  Plaintiffs' Fee Request is Reasonable Using the Percentage Method ........... 14

      D.  Other Factors Support Plaintiffs' Fee Request ...................................... 16

      E.  Plaintiffs' Litigation Costs are Reasonable ........................................... 17

      F.  Class Representatives' Enhancements are Reasonable ........................... 17

IV.   CONCLUSION .................................................................................................. 20

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

-iii-

*Brewer v. GNC / Case No. 11-CV-03587-YGR*
Notice of Motion and Motion for Attorneys' Fees, Costs and Class Representative Enhancements

# TABLE OF AUTHORITIES

**Cases**

*Acheson v. Express LLC*, No. 109CV135335 (Santa Clara Super. Ct.).......................... 14

*Albrecht v. Rite Aid Corp.*, No. 729219 (San Diego Super. Ct.) ............................ 5, 14

*Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 257 (1995) ...................... 17

*Berry v. Urban Outfitters*, N.D. Cal. Case No. 13-cv-0268-JS ............................. 12

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ...................................... 6, 14, 15

*Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.),* 19 F.3d
   1291 (9th Cir. 1994)................................................................... 10

*Chin v. Countrywide Home Loans, Inc.*, No.: 39-2010-00252741-CU-OE-STK (San Joaquin
   Super. Ct.) .......................................................................... 14

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)...................... 16

*Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988)...................... 6

*Ethridge v. Universal Health Servs.*, No. BC391958 (L.A. Super. Ct.) ....................... 14

Fed. R. Civ. P. 23 ......................................................................... 4

*Foos v. Ann, Inc.*, 2013 U.S. Dist. LEXIS 136918 (S.D. Cal. Sept. 23, 2013)................ 10

*Gomez and LaGaisse v. 20 20 Communications*, No. RIC 528973 (Riverside Super. Ct.).......... 14

*Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026, at **4,
   20 (S.D.N.Y. Oct. 28, 2011) ......................................................... 18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 ........................................... 6

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ..................... 15

*In Re Activision Sec. Litig.*, 723 F.Supp. 1373 (N.D. Cal. 1989) ........................... 14

*In re Bluetooth*, 654 F.3d at 942; *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269
   (D.C. Cir. 1993) ..................................................................... 15

*In re Critical Path, Inc. Secs. Litig. v. Critical Path, Inc.*, 2002 U.S. Dist. LEXIS 26399 (N.D.
   Cal. June 18, 2002) .................................................................. 10

*In re Equity Funding Corp. of America*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977).................. 11

*Brewer v. GNC / Case No. 11-CV-03587-YGR*
Notice of Motion and Motion for Attorneys' Fees, Costs and Class Representative Enhancements

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

*In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010) ............................................ 4

*In Re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) .............................................. 14

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295
  F.R.D. 438, 472 (C.D. Cal. 2014) ......................................................................... 18, 19

*Kenemixay v. Nordstroms, Inc.*, No. BC318850 (L.A. Super. Ct.) ............................................ 5, 14

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) ............................................... 6

*Leal v. Wyndham Worldwide Corp.*, No. 37-2009-00084708 (San Diego Super. Ct.) .................... 5

*Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 48 (2000) ............................................. 5, 14

*Leyva v. Medline Indus.*, 716 F.3d 510, 515 (9th Cir. 2013) ............................................... 17

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ......................... 5

*Matter of Continental Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) .................... 17

*Mills v. Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970) ....................................................... 15

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ........................... 15

*Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ...................................................... 4

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ...................................... 17

*Schaffer v. Litton Loan Servicing, LP*, No. 05-07673-MMM, 2012 U.S. Dist. LEXIS 189830, *61
  (C.D. Cal. Nov. 13, 2012) .................................................................................... 19

*Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) ............................................................... 5, 17

*Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003) ..................................................... 6

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) ................................... 16

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) ............. 16, 18, 19

*Vincent v. Hughes Air West*, 557 F.2d 759, 769 (9th Cir. 1977) ...................................... 14, 17

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ...................................... 5, 14

*Weber v. Einstein Noah Restaurant Group, Inc.*, No. 37-2008-00077680 (San Diego Super. Ct.)
  ............................................................................................................. 5, 14

**Statutes**

Business & Professions Code section 17200 ................................................................ 5

*Brewer v. GNC / Case No. 11-CV-03587-YGR*
Notice of Motion and Motion for Attorneys' Fees, Costs and Class Representative Enhancements

**Treatises**

*Newberg on Class Actions* (4th ed. 2002)........................................................... 11, 15, 17

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-vi-

*Brewer v. GNC / Case No. 11-CV-03587-YGR*
Notice of Motion and Motion for Attorneys' Fees, Costs and Class Representative Enhancements

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs CHARLES BREWER *et al.* ("Plaintiffs") and Defendant GENERAL NUTRITION CORPORATION ("GNC" and/or "Defendant") moved the Court for preliminary approval of a proposed class settlement of this matter on April 8, 2016.  [Dkt. 391 ("Motion for Preliminary Approval")]  On April 27, 2016, the Court entered an order preliminarily approving the settlement.  The Court certified a class consisting of all non-exempt hourly employees of GNC who worked as Sales Associates and/or Assistant Managers in California from July 21, 2007 to November 12, 2014 (the "Class").  [Dkt. 394 ("Order Granting Preliminary Approval")]

In granting Plaintiffs' Motion for Preliminary Approval, the Court appointed Hoffman Employment Lawyers as counsel for the Class ("Class Counsel").  Plaintiffs now move this Court for an order granting attorneys' fees, costs, and class representative enhancements pursuant to the Class Action Settlement Agreement ("Settlement Agreement") that was preliminarily approved by this Court.  Plaintiffs hereby request approval of attorneys' fees in the amount of $2,700,000.00, reimbursement of litigation costs in the amount $173,066.35, and class representative enhancements in the aggregate amount of $50,000.

Plaintiffs' request for attorneys' fees is reasonable and should be approved under both the lodestar and percentage-of-recovery methods.  Class Counsel incurred necessary and reasonable costs during the course of this litigation.  Named Plaintiffs Charles Brewer, Jessica Bruns, Michael Mitchell, Michael Murphy, Wayne Neal, and Andrew Merino (the "Class Representatives") took a risk in stepping forward to protect the interests of the Class while providing invaluable assistance to Class Counsel throughout the litigation of this matter.  Without the efforts of Class Counsel and the Class Representatives, over 8,000 employees of GNC would likely remain uncompensated.  Instead, Class Counsel and the Class Representatives secured a non-reversionary settlement of $9,000,000.  Accordingly, Plaintiffs respectfully request that the Court grant the instant application for attorneys' fees, costs, and class representative enhancements.

/ / /

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

## II.   CASE HISTORY

### A.   The Pleadings

On July 21, 2011, Plaintiff Charles Brewer, on behalf of himself and the Class, filed this case against GNC alleging claims for violations of wage and hour laws.  (Dkt. No. 1)  Five additional class representatives were added during the course of this litigation.  Plaintiffs amended their complaint several times as discovery and investigation unfolded.  In the operative pleading, Plaintiffs allege, on behalf of themselves and the Class, that they are owed damages, penalties, interest, attorneys' fees and costs due to GNC's: (1) failure to provide accurate itemized wage statements, (2) failure to reimburse for business expenses (3) failure to provide meal and rest breaks, and (4) failure to pay all wages owed in a timely manner at termination. The Class Representatives also assert individual claims for failure to pay for all hours worked. (Emma Decl. ¶ 3)

### B.   Investigation, Discovery and Litigation

The Parties have spent approximately five years investigating and litigating the claims, defenses, and alleged damages at issue in the lawsuit.  Investigation and discovery preceded the filing of the case in July 2011 and continued through February 2016 -- approximately two weeks before trial -- when Defendant took the final deposition in this case.  (Emma Decl. ¶ 4)

The Parties propounded and responded to multiple rounds of written discovery requests, including requests for admission, interrogatories, and requests for production of documents. Plaintiffs obtained leave to propound additional discovery requests.  The Parties exchanged and reviewed over one hundred thousand pages of documents.  Each Class Representative sat for deposition.  Class Counsel attended dozens of key GNC personnel and Class Members.  The Parties' expert witnesses were deposed.  Class Counsel interviewed hundreds of Class Members and other fact witnesses.  (Emma Decl. ¶ 5)

Plaintiffs obtained timekeeping records for the entire Class during the entire Class Period. Plaintiffs obtained a spreadsheet that included, for each Class Member, the final date of employment (if applicable) and the date of GNC's final payment of wages.  Plaintiffs also obtained a spreadsheet containing the locations of banks where Class Members must deposit

-2-

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

1  funds.  This information allowed Plaintiffs to obtain accurate estimates of damages for meal

2  period, rest period, reimbursement, wage statement, and final pay violations.  (Emma Decl. ¶ 6)

3      GNC did not hand over information without a fight.  Plaintiffs had to repeatedly meet and

4  confer with GNC regarding deficient responses to discovery.  When GNC refused to supplement

5  its responses, Plaintiffs initiated discovery disputes and obtained orders from the Court.

6  Furthermore, after discovery responses had been obtained, GNC argued that its prior discovery

7  responses weren't what they purported to be.  Plaintiffs litigated this, too, on more than one

8  occasion.  (Emma Decl. ¶ 7)

9      Plaintiffs retained Jeffrey S. Kane, Ph.D., a seasoned statistician and organizational

10  psychologist.  Dr. Kane expended considerable time creating and running software programs to

11  analyze millions of lines of data from GNC's timekeeping system, among other things.  Dr.

12  Kane's analyses of GNC's records provided Plaintiffs with precise estimates of violation rates

13  and damages.  Dr. Kane also conducted a survey of the Class and analyzed the results.  Plaintiffs

14  withstood GNC's Daubert challenge to Dr. Kane.  (Emma Decl. ¶ 8)

15      After the close of discovery, the Parties filed cross-motions for partial summary

16  judgment.  These cross-motions addressed a variety of complex and technical legal issues.

17  Plaintiffs' efforts manifested in an order granting the Class partial summary judgment against

18  GNC for wage statement violations.  GNC again filed a motion for reconsideration, which

19  Plaintiffs opposed.  The case progressed through the pretrial conference phase and ultimately to

20  jury selection.  During the pretrial conference phase of the case, Plaintiffs litigated a plethora of

21  motions in limine and motions to quash.  (Emma Decl. ¶ 9)

22      Plaintiffs litigated the propriety of class certification throughout the case.  In the

23  beginning, GNC used certification as a basis to object to providing Plaintiffs with basic

24  discovery.  As discovery progressed, Plaintiffs obtained information and filed multiple motions

25  for class certification.  Plaintiffs were required to oppose multiple motions for decertification

26  filed by GNC.  When the Court ruled in Plaintiffs' favor on certification motions, GNC filed

27  motions for reconsideration.  GNC raised the specter of decertification within every possible

28  context including, *inter alia*, case management conferences, motions for summary judgment,

-3-

*Brewer v. GNC / Case No. 11-CV-03587-YGR*
Notice of Motion and Motion for Attorneys' Fees, Costs and Class Representative Enhancements

discovery responses, and pretrial conferences.  GNC's final motion for decertification was set for hearing on the eve of trial.   Indeed, Plaintiffs were required to litigate the propriety of class certification nonstop for nearly five years.  (Emma Decl. ¶ 10)

### C.   Settlement

On April 13, 2015, after the close of fact discovery, the Parties engaged in arm's length negotiations during a mediation session facilitated by Mark Rudy -- an extremely experienced and well-respected neutral in wage and hour matters.  The mediation session did not result in settlement.  The Parties continued to litigate for 10 more months through expert discovery, dispositive motions, and numerous pretrial hearings.  The parties continued to negotiate through the mediator during this time.  It was not until February 5, 2016 -- the day the Parties intended to select a jury -- that the case settled.  The Parties then negotiated additional terms and drafted the Settlement Agreement that was preliminary approved by the Court.  On May 25, 2016, the Court-approved Notice to Class Members was mailed by the claims administrator as set forth in the Court's Order Granting Preliminary Approval.  As of June 17, 2016, zero Class Members have objected to the settlement and zero Class Members have opted out of the settlement.  (Emma Decl. ¶ 11)

### III.   DISCUSSION

### A.   Available Methods for Determining Attorneys' Fees

At the conclusion of a successful class action, class counsel may apply to the Court for an award of reasonable attorneys' fees.  *See* Fed. R. Civ. P. 23(h).  Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method.  *See In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)).  Each of these methods may be used to cross-check the other.  Under both the lodestar and percentage-of-recovery methods, Plaintiffs' request for $2,700,000 in attorneys' fees is reasonable and should be approved.

In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees.  *Mangold v. Calif. Public Utilities*

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

-4-

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

*Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees"). The state law governing the underlying claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Because Plaintiffs brought their claims under the California Labor Code and California Business & Professions Code section 17200, California law governs.

Under California law, the common fund method for awarding attorneys' fees is appropriate where, as here, attorneys have been instrumental in creating a settlement fund that benefits all class members.[1] Although California has no benchmark, California courts routinely award attorneys' fees equaling one-third of the common fund's total potential value. *See, e.g., Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("[S]tudies show that . . . fee awards in class actions average around one-third of the recovery."); Eisenberg & Miller, Attorney Fees in Class Action Settlements: An Empirical Study, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation nationwide have come to a similar conclusion that a one-third fee is consistent with market rates).

Under California law, therefore, an award of attorneys' fees equaling one-third of the non-reversionary settlement fund is presumptively reasonable. *See also, Albrecht v. Rite Aid Corp.*, No. 729219 (San Diego Super. Ct.) (35% award); *Weber v. Einstein Noah Restaurant Group, Inc.*, No. 37-2008-00077680 (San Diego Super. Ct.) (40% award); *Kenemixay v. Nordstroms, Inc.*, No. BC318850 (L.A. Super. Ct.) (50% award); *Leal v. Wyndham Worldwide Corp.*, No. 37-2009-00084708 (San Diego Super. Ct.) (38% award).

**B.**    **Plaintiffs' Fee Request is Reasonable Using the Lodestar Method**

The lodestar figure is calculated by multiplying the number of hours the prevailing party

---

[1]    *See Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) (noting that federal and state courts have long recognized that when attorneys create a common fund that benefits a class, the attorneys have an equitable right to be compensated from that fund); *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 48 (2000) ("Courts agree that, because the percentage-of-the-benefit approach is 'results oriented rather than process-oriented,' it better approximates the workings of the marketplace' than the lodestar approach." [citation omitted]).

-5-

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

1  reasonably expended on the litigation by a reasonable hourly rate for the region and for the

2  experience of the lawyer.  *See Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003).  Though

3  the lodestar figure is "presumptively reasonable," *Cunningham v. Cnty. of Los Angeles*, 879 F.2d

4  481, 488 (9th Cir. 1988), the court may adjust it upward or downward by an appropriate positive

5  or negative multiplier reflecting a host of "reasonableness" factors, "including the quality of

6  representation, the benefit obtained for the class, the complexity and novelty of the issues

7  presented, and the risk of nonpayment," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

8  1029 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

9      Thus far, (i) Leonard Emma has expended 1,757.4 hours at his usual hourly rate of $500,

10  (ii) Michael Hoffman has expended 1,001.1 hours at his usual hourly rate of $550, (iii) Stephen

11  Ilg has expended 2,234.7 hours at his usual hourly rate of $425, and (iv) Chad Pradmore has

12  expended 1,308.1 hours at his usual hourly rate of $400.[2]  As set forth below, the hours expended

13  and rates charged by Class Counsel are reasonable.  The lodestar figure in this case is

14  $2,942,154.50.  A positive multiplier could be applied in light of the quality of representation,

15  the benefit obtained for the class, the risk of nonpayment, and other factors, as set forth below.

16  However, Plaintiffs' request for attorneys' fees is less than the lodestar figure.  (Emma Decl. ¶

17  12)

18          **1.      Hours Expended by Class Counsel are Reasonable**

19      Class Counsel has thus far expended approximately 7,179.6 attorney hours litigating this

20  case on behalf of Plaintiffs and the Class.[3]  Class Counsel anticipates expending another 75-100

21  hours through final approval and beyond.  Class Counsel worked efficiently and effectively and

22  should be rewarded for the excellent result obtained.  Class Counsel's time generally breaks

23  down into the categories listed below.  (Emma Decl. ¶ 13)

24  / / /

25  _____

26  [2] Prior to becoming licensed in California, Mr. Pradmore expended 419.6 hours on this matter at
his usual hourly rate of $95.

27  [3] A detailed summary of work performed by Class Counsel, including the various attorneys and
their hours and hourly rates, are documented in Exhibit 1 to the Declarations of Leonard Emma,

28  Michael Hoffman, Stephen Ilg, and Chad Pradmore, submitted in support of this motion.

-6-

*Brewer v. GNC / Case No. 11-CV-03587-YGR*
Notice of Motion and Motion for Attorneys' Fees, Costs and Class Representative Enhancements

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

a.    <u>Fact Investigation and Discovery</u>

Prior to filing this action and until settlement was reached, Class Counsel investigated the merits of this action.  Class Counsel met with and interviewed each of the Class Representatives on several occasions to discuss their work experiences with GNC and evaluate their suitability as Class Representatives.  The Class Representatives put Class Counsel in touch with Class Members and other witnesses.  Class Counsel initiated an ongoing and comprehensive outreach campaign that included, *inter alia*, (i) sending correspondence to thousands of Class Members, (ii) calling hundreds of Class Members, and (iii) setting up dedicated email addresses to centralize Class Members communications.  Class Counsel obtained declarations from many Class Members and ultimately selected the best trial witnesses from a large pool of qualified candidates.  Class Counsel also had Dr. Kane conduct a survey of the Class regarding their experiences at GNC.  (Emma Decl. ¶ 14)

Class Counsel took depositions of many of GNC's management level employees, including multiple 30(b)(6) depositions on a variety of topics.  Class Counsel deposed and defended the depositions of many Class Members and all six Class Representatives.  Depositions took place throughout California and throughout the country.  Class Counsel propounded multiple sets of written discovery including, *inter alia*, five sets of document requests, five sets of interrogatories, and two sets of admission requests.  Class Counsel reviewed hundreds of thousands of documents produced by GNC.  Class Counsel conducted research into GNC's business structure and solvency.  (Emma Decl. ¶ 15)

b.    <u>Expert Analysis and Discovery</u>

The magnitude of information obtained by Plaintiffs in discovery was so great that specialized expertise was required to analyze it.  After interviewing several candidates, Class Counsel retained Jeffrey S. Kane, Ph.D., a seasoned statistician and organizational psychologist. At the instruction of Class Counsel, Dr. Kane conducted a series of analyses of GNC's corporate records and distilled them into a series of reports.  Class Counsel relied on Dr. Kane's reports at multiple stages of the case to corroborate the stories of Class Members and provide a precise estimates of violation rates and damages.  GNC designated a rebuttal expert witness.  The Parties

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

took depositions of both experts and Dr. Kane withstood GNC's Daubert challenge.  (Emma Decl. ¶ 16)

### c.     Dispositive Motion Practice

After the close of discovery, the Parties filed cross-motions for partial summary judgment.  These cross-motions addressed a variety of complex and technical legal issues.  Class Counsel's efforts resulted in an order granting the Class partial summary judgment against GNC for wage statement violations.  (Emma Decl. ¶ 17)

### d.     Trial Preparations

The case progressed through the pretrial conference phase and ultimately to jury selection.  During the pretrial conference phase, Class Counsel litigated a plethora of motions in limine and motions to quash.  Class Counsel met and conferred with GNC's counsel for several months in preparation for trial, generating and revising exhibit lists, witness lists, jury instructions, special verdict forms, stipulations for trial, discovery designations, and similar filings.  Class Counsel issued trial subpoenas and prepared witnesses for trial.  The case did not settle until jury selection.  (Emma Decl. ¶ 18)

### e.     Class Certification

Throughout the case, Class Counsel litigated the propriety of class certification.  Class Counsel filed multiple motions for class certification, submitting substantial quantities of evidence with each filing.  Class Counsel opposed multiple motions for decertification filed by GNC.  Class Counsel constantly defended the propriety of class certification in other contexts as well including, *inter alia*, at case management conferences, within motions for summary judgment, and at pretrial conferences.  GNC's final motion for decertification was set for hearing on the eve of trial.  Indeed, Class Counsel litigated the propriety of class certification nonstop for nearly five years.  (Emma Decl. ¶ 19)

### f.     Mediation and Settlement

On April 13, 2015, after the close of fact discovery, Class Counsel engaged in arm's length negotiations with GNC during a mediation session facilitated by Mark Rudy, an extremely experienced and well-respected neutral in wage and hour matters.  Class Counsel prepared and

-8-

*Brewer v. GNC / Case No. 11-CV-03587-YGR*
Notice of Motion and Motion for Attorneys' Fees, Costs and Class Representative Enhancements

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

submitted a comprehensive mediation brief in advance of mediation.  The mediation session did not result in settlement.  Class Counsel continued to litigate for 10 more months through expert discovery, dispositive motions, and numerous pretrial hearings.  During this time, Class Counsel maintained contact with the mediator and continued to negotiate on behalf of the Class.  It was not until February 5, 2016 -- the day the Parties intended to select a jury -- that the case settled and material terms were read into the record.  Over the next two months, Class Counsel negotiated the long-form Settlement Agreement and Class Notice.  Negotiations during this period remained at arm's-length and Class Counsel continued to advocate for terms most favorable to Class Members.  (Emma Decl. ¶ 20)

g.   Settlement Approval and Class Notice

Once the Settlement Agreement was signed by the Parties, Class Counsel prepared the Motion for Preliminary Approval and attended the Preliminary Approval hearing.  Since receiving the Court's Order Granting Preliminary Approval, Class Counsel has been monitoring administration of the Class Notice and will continue to do so.  Class Counsel has responded to numerous inquiries from Class Members.  As of June 17, 2016, zero Class Members have objected and zero Class Members have opted out of the settlement.  (Emma Decl. ¶ 21)

h.   Projected Future Case Work

Class Counsel will continue to monitor the claims administration process and oversee implementation of the Settlement Agreement. Class Counsel has prepared and filed the instant Motion for Attorneys' Fees, Costs, and Class Representative Enhancements.  Class Counsel will prepare and file a Motion for Final Approval of Class Action Settlement.  Class Counsel will attend the Final Approval Hearing on August 23, 2016.  Class Counsel will continue to respond to Class Member inquiries, monitor implementation of the terms of the Settlement Agreement, and address post-approval issues that may arise.  Future case work is projected to continue well into autumn of 2016.  While it is impossible to know the amount of future case work that will be required, Class Counsel estimates approximately 75-100 more attorney hours will be required. (Emma Decl. ¶ 22)

-9-

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

### 2.    Class Counsel's Hourly Rates are Reasonable

Michael Hoffman has been practicing for nearly 25 years with many years of experience litigating wage and hour class actions in California.  Mr. Hoffman's hourly rate is $550.  Leonard Emma has been practicing for over 13 years and has focused his practice on class action wage and hour disputes during the last 10 years.  Mr. Emma's hourly rate is $500.  Stephen Ilg has been practicing for over 5 years and has focused on wage and hour disputes during this time.  Mr. Ilg's hourly rate is $425.  Chad Pradmore has been practicing for nearly 4 years.  Mr. Pradmore's hourly rate is $400.  Class Counsel's credentials were previously set forth in detail in the Declaration of Leonard Emma submitted in connection with the Motion for Preliminary Approval.  [Dkt. 391-1]]  Based on the Court's familiarity with hourly rates for attorneys in the San Francisco Bay Area, the Court can find that the above rates are reasonable.  (Emma Decl. ¶ 23)

### 3.    A Positive Lodestar Multiplier is Appropriate

A positive multiplier could be applied to this case in light of the quality and effectiveness of representation, the benefit obtained for the class, the risk of nonpayment, and other factors.  However, this is unnecessary because Class Counsel's lodestar total exceeds Plaintiffs' stipulated request for attorneys' fees in the amount of $2,700,000 for reasonable attorneys' fees.  (Emma Decl. ¶ 24)

Courts within the Ninth District approve multipliers that are in the 1.0 to 2.0 range but often are even higher.  *See, e.g,, In re Critical Path, Inc. Secs. Litig. v. Critical Path, Inc.*, 2002 U.S. Dist. LEXIS 26399 (N.D. Cal. June 18, 2002) (applying a lodestar multiplier of 3.2 for the Berman firm and 1.1 for the Bernstein firm); *Foos v. Ann, Inc.*, 2013 U.S. Dist. LEXIS 136918 (S.D. Cal. Sept. 23, 2013) (awarding lodestar plus multiplier of 1.42 pursuant to settlement).  A positive multiplier helps account for the fact that counsel's payment of fees is delayed.

Positive multipliers may also be applied based on the quality of the work performed.  *See Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.),* 19 F.3d 1291 (9th Cir. 1994).  Further, "quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work."  *See, e.g., In re Equity Funding Corp. of America*, 438 F. Supp.

-10-

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

1303, 1337 (C.D. Cal. 1977).  In this case, Class Counsel has not requested a positive multiplier since the lodestar exceeds the requested fee award.  However, the Court has observed the quality of Class Counsel's work and has also observed the quality of GNC's counsel.  GNC retained two large national law firms to defend this case -- first McGuire Woods and then Littler Mendelson.  In fact, GNC's lead trial counsel previously obtained a defense verdict for GNC in the Central District in a group action alleging many of the same wage and hour claims as asserted herein.  (Emma Decl. ¶ 25)

In sum, (i) the significant amount of work required of Class Counsel to obtain the settlement resulted in a lodestar total greater than the requested fee and (ii) Class Counsel litigated against quality opposing attorneys.  These facts provide further support for the requested fee award.

### a.   Class Counsel Obtained an Excellent Result for the Class

Class Counsel litigated efficiently and effectively and obtained a non-reversionary settlement of $9,000,000.  Class Counsel submits that this is an excellent result for the 8,000 Class Members, particularly in light of numerous issues for which there is a split of authority.  On May 25, 2016, the Court-approved Notice to Class Members was mailed by the claims administrator as set forth in the Court's Order Granting Preliminary Approval.  As of June 17, 2016, zero Class Members have objected to the settlement and zero Class Members have opted out of the settlement.  (Emma Decl. ¶ 26)

> [W]hen the defendants agree to settle with the class for a certain sum and, in addition, to pay class counsel's attorneys' fees in a sum to be determined by the court up to a specified limit to which the defendants will not object, the court may conditionally approve that arrangement subject to any objections raised by class members at the settlement hearing.  Generally, an evidentiary hearing for fee determination is obviated in a common fund case if no class members object to the level of fees requested and class counsel furnishes sufficient underlying factual data to permit the court to make a reasonable fee award.

*Newberg on Class Actions* (4th ed. 2002) § 11:29.

Comparison to other cases in the Northern District demonstrates the reasonableness of the fees requested and highlights the fairness, adequacy, and reasonableness of the instant Settlement

-11-

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

Agreement.  For instance, on April 7, 2016, Judge White granted a Motion for Attorney Fees in *Berry v. Urban Outfitters*, N.D. Cal. Case No. 13-cv-0268-JS (Dkt. 114) pursuant to an impressive settlement in the amount of $5,000,000.00.  The Motion for Attorneys' Fees in that case provides the relevant facts.  (*See* Dkt. 106.)  Comparison to this impressive $5,000,000.00 settlement emphasizes the superlative quality of the results in this case because, with respect to the most important criteria for evaluating a settlement, this case resulted in a much greater recovery for Class Members.

In *Urban Outfitters*, the Motion for Fees was filed approximately two years and three months after filing.  The instant motion for fees is filed nearly five years after filing.  The *Urban Outfitters* settlement compensated more than 12,300 Class Members with a total of $5,000,000.00.  This Settlement compensates about 8,000 with $9,000,000.00.  The Urban Outfitters settlement released far more claims than the Class Members in this case -- it included every class claim at issue here, plus claims for failure to pay earned vacation pay, unpaid wages (i.e. off-the-clock), and unpaid overtime.

In *Urban Outfitters*, Judge White awarded one-third of the common fund in fees, or $1,666,667.00 out of the $5,000,000.00 award.  In this case, Class Counsel has only requested 30%.  Contrasting this case with the *Urban Outfitters* case provides strong support to award the requested amount of 30% of the common fund since the *Urban Outfitters* Settlement resulted in a much lower recovery for more class members who each released more claims.

        b.     Class Counsel Undertook Substantial Risk Litigating this Case

"A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept fee award cases."  Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 480 (1981).  The contingent risk confronted by Class Counsel in this case was substantial and supports the requested attorneys' fees and costs.  Class Counsel took this case on a pure contingency basis, without any guarantee of remuneration for the thousands of hours expended litigating the Class' claims, or for reimbursement of the $173,066.35 in out-of-pocket costs incurred during the pendency of this

-12-

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

action.  As discussed *supra*, GNC challenged the propriety of certification throughout the case.  Indeed, decertification orders often sound the "death knell" of wage and hour cases.  (Emma Decl. ¶ 27)

In *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001), the California Supreme Court instructed courts to upwardly adjust fee compensation to ensure that the fees account for contingency risk.  *Ketchum*, 24 Cal. 4th at 1133 ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept fee award cases.")  Similarly, in *In re Washington Pub. Power Supply*, the Ninth Circuit underscored the importance of rewarding attorneys who take cases on a contingency basis.  *In re Washington Pub. Power Supply*, 19 F.3d at 1299, 1300-01 ("in the common fund context, attorneys whose compensation depends on their winning the case, must make up in compensation in the cases they win for the lack of compensation in the cases they lose.").  Accordingly, attorneys accepting contingent fee cases should be compensated in amounts greater than those earned by attorneys who bill and receive payment by the hour, as this fact reflects the risks undertaken in a contingent practice.

c.    <u>Class Counsel was Precluded from Taking Other Cases</u>

The duration and intensity of this lawsuit required a commitment from Class Counsel that precluded Class Counsel from spending time on other cases -- a short-term loss of profits that justifies a fee enhancement in this case.  This case was litigated primarily through the consistent work of four attorneys from one firm.  This is not a case where various attorneys from multiple firms with excess capacity were rotated into the case.  This case required a sustained effort from each attorney, making them unavailable to pursue other opportunities for five years.  (Emma Decl. ¶ 28)

Class Counsel has worked for five years now without being paid for legal services.  Apart from the risk of non-recovery, which would leave Class Counsel saddled with a substantial loss, Class Counsel has also "loaned" legal services and money (by advancing costs) to the Class, which, like all loans, would have to be repaid with interest to be profitable.  (Emma Decl. ¶ 29)

-13-

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

## C.   Plaintiffs' Fee Request is Reasonable Using the Percentage Method

Federal courts have recognized that an appropriate method for determining the award for attorneys' fees is based on a percentage of the total value of the benefit to the class members by the settlement. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Vincent v. Hughes Air West, Inc.*, 557 F.2d 749, 769 (9th Cir. 1977); *Lealao v. Beneficial California, Inc.*, 82 Cal.App.4th 19, 28, 97 Cal.Rptr.2d 797 (2000) (recognizing the federal trend to award a percentage of the common fund as attorneys' fees rather than the lodestar method).

The Ninth Circuit has generally established 25% of a common fund as a "benchmark" award for attorney fees. *Vizcaino*, 290 F.3d at 1047. However, the Ninth Circuit has also stated that the benchmark is the "starting point for analysis" and that "it may be inappropriate in some cases." *Id.* at 1048. The "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Id.* The court's duty is to not presume benchmark percentage applies, but simply "whether in arriving at its percentage it considered all the circumstances of the case and reached a reasonable percentage." *Id.*

It is common for federal courts to award attorneys' fees in the range of 30 percent of the common fund, if not more. *In Re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33 percent award); *In Re Activision Sec. Litig.*, 723 F.Supp. 1373 (N.D. Cal. 1989) (noting that fee awards in common fund cases "almost always hover[ ] around 30 percent of the fund created by the settlement"). Under California law, awarding 33% or more is common. [4]

Although this motion is governed by California law, Plaintiffs' fee request is also reasonable under federal law. The Supreme Court has consistently recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client

---

[4]   *See also, Albrecht v. Rite Aid Corp.*, No. 729219 (San Diego Super. Ct.) (35% award); *Weber v. Einstein Noah Restaurant Group, Inc.*, No. 37-2008-00077680 (San Diego Super. Ct.) (40% award); *Kenemixay v. Nordstroms, Inc.*, No. BC318850 (L.A. Super. Ct.) (50% award); *Leal v. Wyndham Worldwide Corp.*, No. 37-2009-00084708 (San Diego Super. Ct.) (38% award); *Gomez and LaGaisse v. 20 20 Communications*, No. RIC 528973 (Riverside Super. Ct.) (33% award); *Acheson v. Express LLC*, No. 109CV135335 (Santa Clara Super. Ct.) (33% award); *Chin v. Countrywide Home Loans, Inc.*, No.: 39-2010-00252741-CU-OE-STK (San Joaquin Super. Ct.) (30% award); *Ethridge v. Universal Health Servs.*, No. BC391958 (L.A. Super. Ct.) (33% award).

-14-

is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970).  The purpose of this doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

The federal common fund doctrine applies when: (1) the class of beneficiaries is sufficiently identifiable; (2) the benefits can be accurately traced; and (3) the fee can be shifted with some exactitude to those benefitting.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).  These criteria are "easily met" where -- as here --"each [class member] has an undisputed and mathematically ascertainable claim to part of a lump-sum settlement recovered on his behalf.'" *Id*. (citing *Van Gemert*, 444 U.S. at 479).

Courts recognize that the percentage method offers important advantages over the lodestar method, particularly when an ascertainable fund exists:

> [I]n class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%.  This will encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions.

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).  Indeed, in *Bluetooth*, the court recognized that one important advantage of the common fund method is that fees are "easily quantified," making a fee determination simpler than the "often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942; *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) ("[A] percentage-of-the-fund approach is less demanding of judicial resources than the lodestar method.").

Here, Class Counsel requests attorneys' fees of $2,700,000, representing 30% of the common fund.  This meets the Ninth Circuit's benchmark for such an award.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).  In fact, 30% to 50% of the common fund is commonly awarded as attorneys' fees in cases where the fund is relatively small. *Newberg on Class Actions* § 14.6 (4th Ed. 2002); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp.

-15-

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

1  294, 297-98 (N.D. Cal. 1995) (observing that 30-50 percent was typically awarded in smaller

2  settlement funds of under $10 million while 13-20 percent was typically awarded in larger

3  settlement funds of $51-$75 million).  Plaintiffs' request for attorneys' fees is at the lowest end

4  of the spectrum for "relatively small" funds of under $10 million.  As discussed above and in the

5  Motion for Preliminary Approval, Class Counsel efficiently and effectively obtained excellent

6  results for the Class.

7       As discussed *supra*, Class Counsel diligently litigated this matter to pursue the rights of

8  the Class.  Class Counsel secured an overall excellent result for class members given all of the

9  attendant risks to continued litigation.  Without this case, over 8,000 employees would likely

10  have gone uncompensated.  The settlement was reached after five years of diligent litigation and

11  extensive arm's-length negotiation with the assistance of a well-respected neutral.

12  Consequently, the requested attorneys' fees of 30% of the common fund are reasonable and

13  should be awarded.  (Emma Decl. ¶ 30)

14       **D.    Other Factors Support Plaintiffs' Fee Request**

15       In addition to the results achieved and awards in comparable cases, courts in this Circuit

16  have also considered additional factors when evaluating the fairness of the award.  These factors

17  include: (1) the risks of further litigation; (2) the contingent nature of the fee; (3) the skill of the

18  attorneys; and (4) a lodestar cross-check. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575

19  (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  While no

20  single factor is determinative of reasonableness, the Court is sufficiently familiar with this case

21  to find that each of these factors supports Plaintiffs' request for attorneys' fees in the amount of

22  30% of the common fund.

23       Class Counsel have vindicated the rights of over 8,000 workers and have secured

24  $9,000,000 in relief for their claims, none of which will be retained by Defendants.  The relief

25  offered by the settlement is particularly valuable when viewed against the difficulties

26  encountered by Plaintiffs pursuing wage and hour cases.  Indeed, the Ninth Circuit has

27  recognized that complex litigation is often necessary to effectively enforce workplace protection

28  legislation:

-16-

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

The California Labor Code protects all workers regardless of their immigration status or financial resources. In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.

*Leyva v. Medline Indus*., 716 F.3d 510, 515 (9th Cir. 2013).

Given the well-received results on behalf of the Class, Plaintiffs' action will undoubtedly deter other similarly situated employers from taking advantage of their employees.

### E.   Plaintiffs' Litigation Costs are Reasonable

Class Counsel incurred costs of $173,066.35 in connection with the prosecution of this action.  Class Counsel is typically entitled to reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement.  *See Vincent v. Hughes Air West*, 557 F.2d 759, 769 (9th Cir. 1977).  In *Serrano III*, for example, the Supreme Court advised that reimbursement of costs in a common fund is "grounded in 'the historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property'."  *Serrano III*, 20 Cal. 3d at 35, citing *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 257 (1995).  Thus, Plaintiffs' request for reimbursement of litigation costs is reasonable and should be granted.  A detailed accounting of costs incurred by Class Counsel in the prosecution of this action are attached as Exhibit 2 to the concurrently filed Declaration of Michael Hoffman.  (Emma Decl. ¶ 31)

### F.   Class Representatives' Enhancements are Reasonable

"Incentive awards are fairly typical in class action cases . . . Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class . . ." *Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 *William B. Rubenstein et al., Newberg on Class Actions* § 11:38 (4th ed. 2008)).  These payments work both as an inducement to participate in the suit and as compensation for time spent in litigation activities.  *See In re Mego Fin. Corp. Sec. Litig*., 213 F.3d at 463 (describing the service award as an incentive to the class representatives); *Matter of Continental Illinois Securities Litig*., 962 F.2d 566, 571 (7th Cir. 1992) (stating that an enhancement award should be in such an amount

-17-

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

1   "as may be necessary to induce [the class representative] to participate in the suit").

2       So long as the incentive awards do not create a conflict of interest between the

3   representatives and class members, modest payments to named plaintiffs for their services as

4   class representatives are customary and generally approved.  *See Van Vranken v. Atlantic*

5   *Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995).  To determine whether the proposed

6   incentive award is fair and reasonable, many courts in the Ninth Circuit apply the "five-factor

7   test set forth in *Van Vranken.*"  *Grant v. Capital Mgmt. Servs., L.P.*, 2014 U.S. Dist. LEXIS

8   29836 *19 (S.D. Cal. Mar. 5, 2014).  Under the *Van Vranken* test, courts consider: (1) the risk to

9   the class representative in commencing suit, both financial and otherwise; (2) the notoriety and

10  personal difficulties encountered by the class representative; (3) the amount of time and effort

11  spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or

12  lack thereof) enjoyed by the class representative as a result of the litigation."  *Van Vranken*, 901

13  F. Supp. at 299 (citations omitted).  However, not all factors need to present.  Rather, the Court

14  may weigh the factors and, award fees that are "just and reasonable under the circumstances."

15  *See, e.g., In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*,

16  295 F.R.D. 438, 472 (C.D. Cal. 2014) (citing *Van Vranken*, 901 F. Supp. at 299).  Here, the

17  proposed incentive awards to the Class Representatives for their time, risk and effort are just and

18  reasonable:  $15,000 to Charles Brewer, $10,000 to Jessica Bruns, $2,500 to Andrew Merino,

19  and $7,500 each to Michael Mitchell, Michael Murphy, and Wayne Neal.  (Emma Decl. ¶ 32)

20      First, the incentive awards are justified in light of the reputational risk that the Class

21  Representatives have assumed by litigating claims against a former employer.  See *Guippone v.*

22  *BH S&B Holdings LLC*, No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026, at **4, 20 (S.D.N.Y.

23  Oct. 28, 2011)  ("[T]he fact that a plaintiff has filed a federal lawsuit is searchable on the internet

24  and may become known to prospective employers when evaluating the person").  Employers

25  commonly screen employee candidates to determine whether they have ever filed suit, and

26  employee candidates who might be branded "litigious" are less likely to be hired.  (Emma Decl.

27  ¶ 33)

28  / / /

-18-

*Brewer v. GNC / Case No. 11-CV-03587-YGR*
Notice of Motion and Motion for Attorneys' Fees, Costs and Class Representative Enhancements

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

1    Second, incentive awards should be awarded because the Class Representatives

2    "remained fully involved and expended considerable time and energy during the course of the

3    litigation." *Schaffer v. Litton Loan Servicing, LP*, No. 05-07673-MMM, 2012 U.S. Dist. LEXIS

4    189830, *61 (C.D. Cal. Nov. 13, 2012) (citation omitted). The Class Representatives expended

5    considerable time and effort assisting their attorneys with the prosecution of the Class' claims.

6    Their contributions should be rewarded. A summary of the Class Representatives' time and

7    efforts assisting with the prosecution of this action are detailed in their declarations, which are

8    concurrently filed herewith. (Emma Decl. ¶ 34)

9    Third, the incentive awards are appropriate because each Class Representative otherwise

10   "will not gain any benefit beyond that he [or she] would receive as an ordinary class member."

11   *In re Toys "R" Us FACTA Litig.*, 295 F.R.D. at 472; *Van Vranken*, 901 F. Supp. at 299 (holding

12   that a substantial award is appropriate where a class representative's claim made up "only a

13   fraction of the common fund."). Here, absent the incentive awards, the Class Representatives

14   will recover no more than other Class Members, despite the personal sacrifices in bringing this

15   action on behalf of the Class. (Emma Decl. ¶ 35)

16   Moreover, the Class Representatives have also agreed to generally release all claims they

17   may have against Defendants. These general releases are considerably broader than the separate,

18   narrower releases required of Class Members. See *Schaffer*, 2012 U.S. Dist. LEXIS 189830, at

19   *64 ("[C]lass representatives released their actual damages claims as part of the Settlement. This

20   ["personal benefit"] factor, therefore weighs in favor of approving the incentive awards.")

21   Indeed, the Class Representatives in the instant action each had individual claims for unpaid

22   hours of work that they released in connection with securing the instant settlement for the Class.

23   (Emma Decl. ¶ 36)

24   The amounts of the requested enhancement awards are also reasonable by reference to

25   the amounts that California state and federal courts have repeatedly found to be reasonable for

26   wage and hour class action settlements.[5] In sum, due to the effort, commitment, and personal

27   —————————
     [5]    *Chambers v. White Memorial Medical Center*, No. BC426335 (Los Angeles County

28   Superior Court June 11, 2012; Judge Highberger) (awarding $40,000 incentive awards and

-19-

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

1  sacrifice of the Class Representatives, all Class Members can now benefit from a $9,000,000

2  settlement.

3  　　　Accordingly, Plaintiffs respectfully request that the Court grant enhancements of 15,000

4  to Charles Brewer, $10,000 to Jessica Bruns, $2,500 to Andrew Merino, and $7,500 each to

5  Michael Mitchell, Michael Murphy, and Wayne Neal as compensation for their time, effort, and

6  personal sacrifice to the Class.

7  **IV.　　CONCLUSION**

8  　　　For the reasons set forth herein, Plaintiffs respectfully request that the Court grant the

9  instant motion for attorneys' fees in the amount of amount of $2,700,000, reimbursement of

10  costs in the amount of $173,066.35, and class representative enhancements in the aggregate sum

11  of $50,000.

12  　　　　　　　　　　　　　　　　　Respectfully submitted,

13  DATED: June 24, 2016　　　　　　HOFFMAN EMPLOYMENT LAWYERS

14

15  　　　　　　　　　　　　　　　　　/s/ Leonard Emma

16  　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　Leonard Emma, Esq.

17  　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs and the Class
　　　　　　　　　　　　　　　　　CHARLES BREWER *et al.*

18

19

20

21

22

23  　　　valuing the general releases at $30,000); *Pangan v. East L.A. Doctors Hospital, LP*, No.

24  BC431371 (Los Angeles County Superior Court May 1, 2012; Judge Wiley Jr.) (awarding
$20,000 incentive award); *Knight v. CBS Personnel Holdings, Inc.*, No. BC424383 (Los Angeles

25  County Superior Court Sept. 12, 2011; Judge Johnson) (awarding $20,000 incentive award);

26  *Kabamba v. Victoria's Secret Stores LLC*, No. BC368528 (Los Angeles County Superior Court
Aug. 19, 2011; Judge Highberger) (awarding $25,000 and $15,000 incentive awards); *Martin v.*

27  *Kaiser Foundation Hospitals*, No. BC395992 (Los Angeles County Superior Court Mar. 29,
2010; Judge Johnson) (awarding $90,000 incentive awards).

28

-20-