HOFFMAN EMPLOYMENT LAWYERS
MICHAEL HOFFMAN, SBN 154481
mhoffman@employment-lawyers.com
LEONARD EMMA, SBN 224483
lemma@employment-lawyers.com
STEPHEN NOEL ILG, SBN 275599
silg@employment-lawyers.com
580 California Street, Suite 1600
San Francisco, CA 94104
Tele:   415-362-1111
Fax:    415-362-1112

Attorneys for Plaintiff
CHARLES BREWER *et al.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Charles Brewer, Jessica Bruns, Michael Mitchell, Michael Murphy, Wayne Neal and Andrew Merino, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GENERAL NUTRITION CORPORATION, and DOES 1 to 10, inclusive,<br><br>Defendant. | Case No. 11-CV-03587-YGR<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Date:   August 23, 2016<br>Time:  2:00 p.m.<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Court: 1—4th Floor<br><br>Complaint filed:  July 21, 2011 |

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

**TO THE COURT, ALL INTERESTED PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**YOU ARE HEREBY NOTIFIED THAT** on August 23, 2016 at 2:00 p.m., in Courtroom 1, located on the 4th floor at 1301 Clay Street, Oakland, CA 94612, Plaintiffs Charles Brewer, *et al*., individually, and on behalf of all others similarly situated, will and hereby do move for an order (1) granting final approval to the settlement of claims as set forth in the Settlement Agreement ("Agreement" or "Settlement") between the parties in the above-captioned matter; (2) granting approval of payment to the claims administrator; and (3) dismissing the Civil Action with prejudice in accordance with the terms of the Agreement.

This motion is made on the grounds that the Settlement is fair, adequate, and reasonable given the relative strengths and weaknesses of the claims and defenses; the risks, expense, complexity and likely duration of further litigation; the amount offered in settlement; the experience and views of counsel; the lack of objections to the Settlement; and the public policy in favor of quieting litigation.  This motion is based upon the Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Leonard Emma and exhibits thereto, the Declaration of Abigail Schwartz, the complete files and records of this action, and any further briefing, documentary evidence, and arguments of counsel as may be presented to the Court at the hearing of this motion.

Respectfully Submitted,

Dated: July 19, 2016      HOFFMAN EMPLOYMENT LAWYERS

/s/ Leonard Emma

_____
Leonard Emma, Esq.
Attorneys for Plaintiffs and the Class
CHARLES BREWER *et al.*

-ii-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

<u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.   INTRODUCTION ......................................................................................................... 1

II.  CASE HISTORY ........................................................................................................... 2

    A.   Factual Background ......................................................................................... 2

    B.   Investigation, Discovery and Litigation .......................................................... 2

    C.   Negotiation of the Settlement .......................................................................... 4

III. DESCRIPTION OF THE SETTLEMENT ..................................................................... 5

    A.   The Class .......................................................................................................... 5

    B.   Consideration ................................................................................................... 5

    C.   Mechanics of Settlement ................................................................................. 6

    D.   PAGA Allocation ............................................................................................. 8

    E.   Service Enhancement Award and Attorneys' Fees and Costs .......................... 9

    F.   Release of Claims ............................................................................................. 9

    G.   CAFA Notice ................................................................................................. 10

    H.   Results of the Court-Approved Notice Program .............................................. 10

IV.  LEGAL ARGUMENT ................................................................................................. 12

    A.   Standard of Review ....................................................................................... 12

    B.   All Relevant Factors Weigh in Favor of Final Approval ................................ 13

        1.   The Strength of the Case ..................................................................... 13

        2.   The Size of the Claims and Amount Offered to Settle Them ................... 18

        3.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation ..................................................................................................... 19

        4.   The Stage of the Proceedings ............................................................. 20

        5.   Experienced Class Counsel Adequately Represented the Settlement Class ..................................................................................................... 20

        6.   The Reaction of the Class to the Proposed Settlement ............................ 21

V.   THE PARTIES FULLY IMPLEMENTED THE COURT-ORDERED NOTICE PROGRAM AND THE SETTLEMENT ADMINISTRATOR'S FEES SHOULD BE AWARDED ................................................................................................................. 22

VI.  CONCLUSION ............................................................................................................ 22

*Brewer v. General Nutrition Corporation / Case No. 11-CV-03587-YGR*
Plaintiffs' Notice of Motion and Motion for Final Approval of Class Action Settlement

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

1

<u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Balasanyan v. Nordstrom*, 2013 U.S. Dist. LEXIS 113630 (S.D.Cal. Aug. 12, 2013) ................ 22

4

*Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012) .......................... 9

5

*Buchholtz v. Swift & Co.*, 62 F.R.D. 581, 598 (D.Minn. 1973) .................................... 21

6

*Coleman v. Jenny Craig, Inc.*, 2013 WL 6500457, *8-12 (S.D. Cal. Nov. 27, 2013).................. 9

7

*EEOC v. Kovacevich "5" Farms*, 2007 U.S. Dist. LEXIS 32330 at *57 (E.D.Cal. April 18, 2007)

8

................................................................................................... 18

9

*Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) ...................................... 13

10

*Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524, 1538 (2008) ....................... 22

11

*Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007)......... 15, 16

12

*Guimarra Vineyards Corporation*, Case No. 09-0703, 2013 U.S. Dist. LEXIS 77839 .............. 19

13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ........................... 15, 19

14

*In re Wash. Public Power Supply System Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989). 14

15

*In Re: AutoZone, Inc., Wage and Hour Employment Practices Litigation*, Case No. 3:10-md-

16

02159-CRB, 2012 U.S. Dist. LEXIS 181597, *16-*26 (N.D. Cal. Dec. 21, 2012) ................. 9

17

*Jordan v. County of Los Angeles*, 669 F.2d 1311, 1320 n.10 (9th Cir. 1982) ............................ 18

18

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ...................................... 13

19

*Lockwood Motors*, 162 F.R.D. at 580 ................................................................ 21

20

*Louie v. Kaiser Found. Health Plan, Inc.*, 2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008).. 12, 16

21

*McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 673–

22

76 (W.D. Wash. 2010) ........................................................................ 18, 21

23

*Ordonez v. Radio Shack*, 2013 WL 210223, *7 (C.D. Cal. Jan. 17, 2013)................................ 9

24

*Roth v. CHA Hollywood Med. Ctr., L.P.*, 2013 WL 5775129, *6-7 (C.D. Cal. Oct. 25, 2013) ..... 9

25

*Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000) ...................................... 18

26

*White v. Local*, 942, 688 F.2d 85 (9th Cir. 1982) ...................................... 20, 21, 22

27

-ii-

28

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

**Statutes**

29 U.S.C. § 201 ................................................................................................................ 7

Business and Professions Code § 17200 ........................................................................... 7

Civil Code § 1542. ............................................................................................................ 6

Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ..................................................... 6

Federal Rules of Civil Procedure, Rule 23 ............................................ 12, 17, 21, 22

Labor Code § 1174 ............................................................................................................ 7

Labor Code § 2699(i) .................................................................................................... 5, 7

Labor Code § 201 .............................................................................................................. 7

Labor Code § 226.3 ........................................................................................................... 7

Labor Code § 226.7 ........................................................................................................... 7

**Other Authorities**

3B J. Moore, Moore's Federal Practice §§23.80 - 23.85 (2003) ..................................... 13

Manual for Complex Litigation, Second §30.44 (1993) ............................................ 13, 24

**Regulations**

IWC Wage Order 9-2001 ............................................................................................ 7, 19

*Brewer v. General Nutrition Corporation / Case No. 11-CV-03587-YGR*
Plaintiffs' Notice of Motion and Motion for Final Approval of Class Action Settlement

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Plaintiffs CHARLES BREWER *et al.* ("Plaintiffs") and Defendant GENERAL NUTRITION CORPORATION ("GNC" and/or "Defendant") moved the Court for preliminary approval of a proposed class settlement of this matter on April 8, 2016.  (Dkt. 391 ("Motion for Preliminary Approval"))  On April 27, 2016, the Court entered an order preliminarily approving the settlement.  The Court certified a class consisting of all non-exempt hourly employees of GNC who worked as Sales Associates and/or Assistant Managers in California from July 21, 2007 to November 12, 2014 (the "Class").  (Dkt. 394 ("Order Granting Preliminary Approval"))  In accordance with the terms of the Settlement Agreement and the Court's Order Granting Preliminary Approval, the claims administrator sent the Court-approved Notice of Class Action Settlement to Class Members.  Following expiration of the 45-day notice period, zero Class Members have objected to the Settlement.  Plaintiffs hereby move the Court for an order (1) granting final approval to the settlement of claims as set forth in the Settlement Agreement ("Settlement" and/or "Agreement') between the Parties; (2) granting approval of payment to the claims administrator; and (3) dismissing the action with prejudice in accordance with the terms of the Agreement.

This motion is made on the grounds that the Settlement is fair, adequate, and reasonable given the relative strengths and weaknesses of the claims and defenses; the risks, expense, complexity and likely duration of further litigation; the amount offered in settlement; the experience and views of counsel; the lack of objections to the Settlement; and the public policy in favor of quieting litigation.  This motion is based upon the Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Leonard Emma and exhibits thereto, the Declaration of Abigail Schwartz, the complete files and records of this action, and any further briefing, documentary evidence, and arguments of counsel as may be presented to the Court at the hearing of this motion.

-1-

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

## II.    CASE HISTORY

### A.    Factual Background

On July 21, 2011, Plaintiff Charles Brewer, on behalf of himself and the Class, filed this case against GNC alleging claims for violations of wage and hour laws.  (Dkt. 1)  Five additional class representatives were added during the course of this litigation.  Plaintiffs amended their complaint several times as discovery and investigation unfolded.  In the operative pleading, Plaintiffs allege, on behalf of themselves and the Class, that they are owed damages, penalties, interest, attorneys' fees and costs due to GNC's: (1) failure to provide compliant wage statements, (2) failure to reimburse for business expenses (3) failure to provide meal and rest breaks, and (4) failure to pay all wages owed in a timely manner at termination.  On November 12, 2014 the Court issued an Order Granting in Part and Denying in Part Plaintiffs' Motion to Certify California Class and Granting Defendant's Motion to Decertify FLSA Collective Action.  (Dkt. 185)  The Class includes all non-exempt hourly employees of GNC who worked as Sales Associates and/or Assistant Managers in California from July 21, 2007 to November 12, 2014 (excluding those Class Members who have opted-out of the litigation).  The Class Representatives also assert individual claims for failure to pay for all hours worked.  (Emma Decl. ¶ 2)

### B.    Investigation, Discovery and Litigation

The discovery conducted in this case was thorough.  The Parties have spent approximately five years investigating and litigating the claims, defenses, and alleged damages at issue in the lawsuit.  Investigation and discovery preceded the filing of the case in July 2011 and continued through February 2016 -- approximately two weeks before trial -- when Defendant took the final deposition in this case.  (Emma Decl. ¶ 3)

Class Counsel met with and interviewed each of the Class Representatives on many occasions to discuss their work experiences with GNC and evaluate their suitability as Class Representatives.  The Class Representatives put Class Counsel in touch with other potential

-2-

*Brewer v. GNC / Case No. 11-cv-3587-YGR*
Memorandum ISO Plaintiffs' Motion for Final Approval of Class Action Settlement

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

Class Members and witnesses.  Class Counsel initiated an ongoing and comprehensive outreach campaign that included, inter alia, (i) sending correspondence to thousands of Class Members, (ii) calling hundreds of Class Members, and (iii) setting up dedicated email addresses to centralize Class Members communications.  Class Counsel obtained declarations from many Class Members and ultimately selected the best trial witnesses from a large pool of qualified candidates.  (Emma Decl. ¶ 4)

The Parties propounded and responded to multiple rounds of written discovery requests, including requests for admission, interrogatories, and requests for production of documents.  Plaintiffs met and conferred with GNC regarding responses to discovery and initiated discovery disputes.  Plaintiffs obtained leave to propound additional discovery requests.  The Parties exchanged and reviewed over one hundred thousand pages of documents.  Each Class Representative sat for deposition.  Class Counsel deposed dozens of key GNC personnel and Class Members.  The Parties' expert witnesses were deposed.  Class Counsel interviewed hundreds of Class Members and other fact witnesses.  (Emma Decl. ¶ 5)

Plaintiffs obtained a database that reflects the time punch data for all GNC employees who worked at a retail store located in California during the time period from July 21, 2007, through December 31, 2014.  The database was voluminous and included millions of lines of data.  Among other things, the records show the name of the employee whose time punch is reflected; the date on which the work took place; the time of the punch record; the type of punch (this can be "In for Day" "Out for Day" "Out for Lunch" "In from Lunch" "Out for Break" or "In from Break").  Plaintiffs obtained a spreadsheet that included, for each Class Member, what GNC recorded as the final date of employment (if applicable) and the date of GNC's last payment to the Class Member.  Plaintiffs also obtained a spreadsheet containing the locations of banks where Class Members allege they must deposit funds.  (Emma Decl. ¶ 6)

The magnitude of data produced in discovery was so great that specialized expertise was required to analyze it.  Class Counsel retained expert witness Jeffrey S. Kane, Ph.D., a

-3-

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

1   statistician and organizational psychologist.  Dr. Kane performed a series of analyses of GNC's

2   records and distilled them into a series of reports, which provided estimates of alleged violation

3   rates and damages for meal period claims, rest period claims, reimbursement claims, wage

4   statement claims, and final pay claims.  Dr. Kane also conducted a survey of the Class and

5   analyzed the results.  GNC designated a rebuttal expert witness.  The Parties took depositions of

6   both experts.  Dr. Kane's analysis, in part, withstood GNC's *Daubert* challenge.  (Emma Decl. ¶

7   7)

8   After the close of discovery, the Parties filed cross-motions for partial summary

9   judgment.  These cross-motions addressed a variety of complex and technical legal issues.

10  Plaintiffs' obtained an order granting the Class partial summary judgment against GNC for wage

11  statement violations.  GNC filed a motion for reconsideration, which Plaintiffs opposed.  (Emma

12  Decl. ¶ 8)

13  The Parties litigated the propriety of class certification throughout the case.  When the

14  Court ruled in Plaintiffs' favor on certification motions, GNC filed a motion for reconsideration.

15  Moreover, the issue was still contested at the time of trial.  Indeed, GNC's final motion for

16  decertification was set for hearing on the eve of trial.  (Emma Decl. ¶ 9)

17  The case progressed through the pretrial conference phase and almost to jury selection.

18  During the pretrial conference phase, the Parties litigated a plethora of motions in limine and

19  motions to quash.  Class Counsel met and conferred with GNC's counsel for several months in

20  preparation for trial, generating and revising exhibit lists, witness lists, jury instructions, special

21  verdict forms, stipulations for trial, discovery designations, and similar filings.  (Emma Decl. ¶

22  10)

23  **C.     Negotiation of the Settlement**

24  On April 13, 2015, after the close of fact discovery, the Parties engaged in arm's length

25  negotiations during a mediation session facilitated by Mark Rudy -- an experienced and well-

26  respected neutral in wage and hour matters.  The mediation session did not result in settlement.

27

28

-4-

*Brewer v. GNC / Case No. 11-cv-3587-YGR*
Memorandum ISO Plaintiffs' Motion for Final Approval of Class Action Settlement

The Parties continued to litigate for 10 more months through expert discovery, dispositive motions, and pretrial hearings.  The Parties continued to negotiate through the mediator during this time.  It was not until February 5, 2016 -- the day the Parties intended to select a jury -- that the Parties reached an agreement of the material terms of a Settlement with Mr. Rudy's assistance and stated the term on the record.  The Parties then negotiated additional terms and drafted the Settlement Agreement that was preliminarily approved by the Court.  (Emma Decl. ¶ 11)

## III.   DESCRIPTION OF THE SETTLEMENT

The Parties have reached a full and final settlement of the above-captioned action, which is embodied in the proposed Class Action Settlement ("Stipulation," "Agreement" and/or "Settlement"), a copy of which is attached as Exhibit 1 to the Declaration of Leonard Emma filed in support of the Motion for Preliminary Approval.  A summary of the key terms appears below.

### A.   The Class

The Class is defined as all non-exempt hourly employees of GNC who worked as Sales Associates and/or Assistant Managers in California during the Class Period excluding those who opted out of the Class.[1]  The Class Period is the time period from July 21, 2007 to November 12, 2014.[2]  (Stipulation ¶ 1.17.)  There are 7,986 Class Members. Admin. Decl. ¶ 11.

### B.   Consideration

As consideration for this Settlement, GNC has agreed to pay a Maximum Gross Settlement Amount of $9,000,000 and also to pay up to $20,000 in Administration Costs.  This payment will settle all issues pending in the litigation, including Class Counsel's Attorneys' Fees,

---

[1]      "Opt-Outs" are the 83 individuals who, following class certification, requested to be excluded from the Class.  The list of these individuals is attached as Exhibit E to the Declaration of Jenny Cudworth Re: Notice Procedures dated August 14, 2015.  The Cudworth Declaration is attached to the Settlement Agreement as Exhibit A.

[2]      Capitalized terms are defined in Section 1 of the Stipulation.

*Brewer v. GNC / Case No. 11-cv-3587-YGR*
Memorandum ISO Plaintiffs' Motion for Final Approval of Class Action Settlement

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

Expenses (including Administration Costs to the extent they exceed $20,000), the PAGA Penalty Payment, all Individual Settlement Allocations to Class Members (include any employer and employee payroll taxes), the Enhancement Payments to the Class Representatives, and the Reserve Amount.  The Settlement is "all-in," with no reversion to Defendant.  (Stipulation ¶ 1.17.)

### C.   Mechanics of Settlement

The Settlement Payment Allocation means that portion of the Maximum Gross Settlement Amount to be allocated and made available for payment to Class Members after subtracting the Attorneys' Fees Payment, the Expenses Payment (including Claims Administration Costs exceeding $20,000), the PAGA Penalty Payment, the Enhancement Payment to the Class Representatives, and the Reserve Fund from the Maximum Gross Settlement Amount.  (Stipulation ¶ 1.17.)

Each Class Members' Individual Settlement Allocation will be calculated in accordance with the formula as described in the Stipulation at paragraphs 3.1(a)-(d),  understanding that the formula below does not imply that the Parties are excluding consideration of any claim made in the Action, but instead confirm that the Individual Settlement Allocation is in settlement for the complete and full release of all Released Claims against all Released Parties.

For the purpose of calculating applicable taxes for the Individual Settlement Allocations to Settlement Class Members, one-third (1/3) of each Individual Settlement Allocation shall be allocated as wages (which shall be reported on Internal Revenue Service Form W-2), and the remaining two-thirds (2/3) shall be allocated as penalties, liquidated damages, interest and other non-wage recovery (which shall not be subject to withholdings or deductions and shall be reported as non-wage income on Internal Revenue Service Form 1099).  (Stipulation ¶ 4.9.)

In accordance with paragraph 1.17 of the Stipulation, GNC's share of any payroll taxes owing on the Individual Settlement Allocations will be paid out of the Maximum Gross Settlement Allocation.  (Stipulation ¶ 1.17.)

Any checks issued to Settlement Class Members shall remain negotiable for a period of

-6-

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

ninety (90) days from the date of mailing.  The funds associated with any checks which are not timely negotiated will be donated to Wounded Warriors Project's Warriors to Work program for the benefit of California veterans transitioning into the civilian workforce by providing reasonable accommodations and otherwise facilitating adherence to the California Labor Code by employers of such veterans.  (Stipulation ¶ 4.9.)

No later than seven (7) days following the Effective Date, as defined in the Settlement[3], the Claims Administrator shall provide a report to Class Counsel and Defense Counsel stating the total amount of funds (not exceeding the Maximum Gross Settlement Amount and up to $20,000 of the Administrative Costs) required to satisfy all payment obligations pursuant to this Agreement.  (Stipulation ¶ 4.4.)  This report shall state the amount of the Court-approved Attorney's Fees Payment and Expenses Payment, the amount of the Court-approved Enhancement Payments, the amount of the Court-approved Administrative Costs (including those to be paid by Defendant and those to be paid out of the amount allocated to the Expenses Payment), the amount of the Court-approved Reserve Amount, and the amount of the PAGA Settlement.  The report shall also state the individual amounts allocated to each Settlement Class Member.

Not later than seven (7) days thereafter, Defendant shall remit the amount needed to satisfy its obligations under this Agreement to the Claims Administrator to be held in escrow for the purpose of making payments as provided in this Agreement.  (Stipulation ¶ 4.5.)

The Claims Administrator shall make payment to the Class Members within fourteen (14) days after receiving payment from Defendant.  (Stipulation ¶ 4.9.)

As per paragraph 1.12 of the Stipulation, the parties agreed to use Rust Consulting

---

[3]     The Effective Date shall be the date upon which all of the following have occurred in the Action without any material alteration of the terms of this Agreement: (a) entry of the Final Approval Order; and (b) the expiration of the appeal rights of the Parties and all Class Members. In the event no notice of appeal, or request to extend the time to appeal, is filed, the date of expiration of the appeal rights of the Parties and Class Members shall be deemed to occur 35 days after entry of the Final Approval Order.  (Stipulation ¶ 1.15.)

*Brewer v. GNC / Case No. 11-cv-3587-YGR*
Memorandum ISO Plaintiffs' Motion for Final Approval of Class Action Settlement

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

("Rust") as the claims administrator for the Settlement.  The administration duties shall include, without limitation, mailing the Notices, calculating awards, receiving and processing requests for exclusion and objections, performing necessary skip traces on Notices returned as undeliverable; mailing Class Member settlement checks, issuing any required tax reporting forms; providing weekly status reports to Counsel for the parties as set forth in the Stipulation and drafting declarations of compliance with the terms of the Stipulation.  (Stipulation ¶ 4.2.)

The Parties allocate $10,000 of the Maximum Gross Settlement to a Reserve Amount to allocate to any individuals who were employed as non-exempt hourly employees of GNC who worked as Sales Associates and/or Assistant Managers in California from July 21, 2007 to November 12, 2014, but who were erroneously omitted from the list of Class members generated pursuant to this Agreement, and who can establish a valid claim as a member of the certified class.  The Claims Administrator will make a final determination of whether any individual qualifies for payment from the Reserve Amount, and if so for how much, after consultation with Class Counsel and Defense Counsel.  Any funds not paid from the Reserve Amount ninety days after the Effective Date of this Agreement shall be donated by Defendant to the Wounded Warriors Project's Warriors to Work program, or another organization approved by Defendant and the Court.  (Stipulation ¶ 1.18.)

### D.    PAGA Allocation

The Settlement allocates Forty Thousand Dollars ($40,000) to the settlement of Plaintiffs' PAGA claim on behalf of all Class Members to the extent premised upon alleged Labor Code violations that formed the basis of any claims that were certified by the Court in the Certification Order.  (Stipulation ¶ 1.19.)  Pursuant to the express requirements of Labor Code § 2699(i), the PAGA Penalty Payment shall be allocated as follows:  Thirty Thousand Dollars ($30,000) (75%) to the LWDA for the enforcement of labor laws and education of employers, and Ten Thousand ($10,000) (25%) to be included in the Settlement Payment Allocation and distributed to the Settlement Class.  (Stipulation ¶ 1.19.)

-8-

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

### E.    Service Enhancement Award and Attorneys' Fees and Costs

Subject to Court approval, the Stipulation provides for the Plaintiffs to apply for a Service Enhancement Award of $15,000 to Charles Brewer, $10,000 to Jessica Bruns, and $7,500 each to Michael Mitchell, Michael Murphy, and Wayne Neal, and $2,500 to Andrew Merino, for a total of $50,000 to the Class Representatives for their time, risk and effort as the representatives of the class.  (Stipulation ¶ 1.17 (c).)

Subject to Court approval, Class Counsel shall be awarded a sum not to exceed thirty percent (30%) of the Maximum Gross Settlement Amount ($2,700,000) for reasonable attorneys' fees to compensate and reimburse Class Counsel for the work already performed by Class Counsel in this case and all of the work remaining to be performed by Class Counsel in documenting the Settlement, securing Court approval of the Settlement, administering the Settlement, ensuring that the Settlement is fairly administered and implemented, and obtaining final judgment in the action.  Class Counsel will also be allowed to apply separately for reimbursement of their actual litigation costs, not to exceed Three Hundred Thousand Dollars ($300,000).  (Stipulation ¶ 4.1 (b).)  Plaintiffs have addressed the request for fees, costs, and enhancement awards through their separate Motion.  (Dkt. 398)

### F.    Release of Claims

In exchange for the consideration provided by Defendant, Class Members who did not timely exclude themselves from the class release any and all claims that were asserted in the operative Complaint in the Action or that could have been asserted in the Action based upon the facts alleged in the operative Complaint, through and including November 12, 2014, except that with respect to claims pertaining to the final payment of wages, the release shall extend to such claims even if the date of separation was after November 12, 2014, if such claim is derived from the alleged failure to pay wages allegedly earned up until November 12, 2014. (Stipulation § 5.1 (b).)  Each of the Named Plaintiffs stipulate to a broader release that includes all claims, whether known or unknown, against GNC.  Named Plaintiffs, in their individual

-9-

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

capacity and with respect to their individual claims only, and in exchange for their respective Enhancement Payment, agree to release all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever.  (Stipulation 5.1 (d).)

**G.    CAFA Notice**

Defendant has represented that, within 10 days of the filing of the Motion for Preliminary Approval of Class Action Settlement, it served the following documents on the Attorneys General for all the states of which the Class Members reside, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA").  A copy of the CAFA Notice is attached as Exhibit 1 to the Emma Declaration.  (Emma Decl. ¶ 12)

**H.    Results of the Court-Approved Notice Program**

Per the Court's Order Granting Preliminary Approval and the terms of the Settlement, Rust Consulting ("Rust") has completed the majority of its duties and has estimated remaining costs; the total costs including past and future charges is $41,235.  *See* Declaration of Abigail Schwartz for Rust Consulting Inc. ("Admin. Decl.") at ¶ 16 (attached as Exhibit 2 to the concurrently filed Declaration of Leonard Emma).  The administration duties included (or will include), without limitation, mailing the Notice Packets, calculating awards, processing any potential requests for exclusion and objections, performing necessary skip traces on Notice Packets returned as undeliverable; mailing Class Member settlement checks, issuing any required tax reporting forms; providing weekly status reports to Counsel for the parties as set forth in the Stipulation and drafting declarations of compliance with the terms of the Stipulation.  (Stipulation ¶ 1.12.)

Per the Court's Order Granting Preliminary Approval and the terms of the Settlement, on or about May 4, 2016, Counsel for GNC provided Rust with a mailing list containing the Class Member's names, last known addresses, Hire Date, Effective Date, Termination Date and Job Title (the "Class List").  The Class List contained data for 8,063 potential Class Members. *See* Admin. Decl. ¶ 8.  The mailing addresses contained in the Class List were processed and

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. The NCOA contains requested changes of address filed with the U.S. Postal Service. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA would be utilized in connection with the mailing of the Notice. *Id.* at ¶ 9.

On May 25, 2016, the Court-approved Notice was mailed to 8,063 Class Members identified in the Class List. The Notice advised Class Members that they could object or request exclusion through July 9, 2016. Admin. Decl. ¶ 10.[4]

1,355 Notices mailed to Class Members were returned as undeliverable by the July 9, 2016, deadline. Of the 1,355 undeliverable Notices, Rust received updated addresses for four (4) Class Members and Notices were promptly re-mailed to the Class Members via First Class mail. Of the 1,355 Notices returned as undeliverable, Rust performed 1,351 address traces on Notices returned as undeliverable for the first time. The address trace utilizes the Class Member's name and previous address for locating a current address. Of the 1,351 traces performed, 850 more current addresses were obtained and Notices were promptly re-mailed to those Class Members via First Class mail. Of the 1,351 traces performed, Rust did not obtain updated addresses for 501 undeliverable Notices. Of the 850 Notices mailed to a more current address identified from trace, 81 Notices were returned to Rust as undeliverable a second time. To date, 582 Notices remain undeliverable. Admin. Decl. ¶ 12. Lastly, 31 Notices were returned by the Post Office with forwarding addresses attached. Rust promptly re-mailed Notices to those Class Members via First Class mail. Admin. Decl. ¶ 13.

---

[4]     On June 10, 2016, Rust mailed letters to 77 individuals who were mailed a Notice on May 25, 2016. This letter advised the 77 individuals that they were erroneously mailed a Notice because they had previously requested to be excluded from the Class. Rust prepared the draft letter and it was approved by the Parties prior to mailing. Thus, the Class includes 7,986 Class Members. Admin Decl. ¶ 11.

-11-

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

The objection/exclusion deadline was July 9, 2016.  To date, Rust has received zero (0) objections to the Settlement.  To date, Rust has received four (4) requests for exclusion. Admin. Decl. ¶¶ 15 and 14.

## IV.   LEGAL ARGUMENT

### A.   Standard of Review

Federal law and public policy strongly favor and encourage settlements, especially in class actions.  *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989), cert. denied, 498 U.S. 890 (1990) ("it hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation.  This is particularly true in class action suits").  When reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

To approve a proposed settlement of a class action under Fed. R. Civ. P. 23(e), the Court must find that the proposed settlement is "fair, adequate and reasonable," recognizing that "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).  Furthermore, analysis of the appropriateness of approval begins with a presumption of fairness.  Where "a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair."  *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 103525, *18 (S.D. Cal. Dec. 2, 2008).

The presumption of fairness applies here:  Plaintiffs obtained sufficient information permitting them to assess the strengths and value of the case before entering into settlement

-12-

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

negotiations.  The arm's-length negotiations at mediation, and in the year following mediation, were hard-fought and continued until the fully-executed Settlement Agreement was reached. The Settlement was negotiated by capable counsel, using an experienced mediator.  In light of these facts, the Settlement is presumptively fair, and, as explained below, all relevant factors support final approval.  (Emma Decl. ¶ 13)

### B.   All Relevant Factors Weigh in Favor of Final Approval

Although Rule 23 provides no precise formula for making this determination, the Ninth Circuit has identified several factors to be considered.  These factors include: (1) the strength of the case; (2) the size of the claims and amount offered to settle them; (3) the risk, expense, complexity and likely duration of further litigation; (4) the stage of the proceedings, i.e., whether the plaintiffs and their counsel have conducted sufficient discovery to make an informed decision on settlement; (5) whether the class has been fairly and adequately represented during settlement negotiations by experienced counsel; and (6) the reaction of the class to the proposed settlement. *Hanlon*, 150 F.3d at 1026 (noting that the relative importance of each of these factors will depend on the circumstances of the case).  Here, all factors weigh strongly in favor of final approval.

#### 1.   The Strength of the Case

##### a.   *Meal and Rest Break Claims*

With respect to meal and rest breaks, Plaintiffs allege that GNC failed to provide meal and rest breaks to its sales associates and assistant managers as required by California law. GNC denies Plaintiffs' claims, and contends that it provided meal and rest breaks to its Sales Associates and Assistant Managers as required by California law.  Defendant claims that its policies and practices provided meal breaks and authorized and permitted rest breaks as required by California law.  Defendant argues that the fact that employees routinely took breaks evidences that breaks were provided, authorized and permitted.  Defendant also argues that "break coverage" existed in its stores the vast majority of the time, meaning that there were

-13-

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

1    multiple employees present to relieve one another so meal and rest breaks could easily be

2    taken.  These arguments may undercut Plaintiffs' ability to prevail at trial.[5]  (Emma Decl. ¶ 14)

3          Despite GNC's defenses, Plaintiffs maintain that common questions regarding whether

4    Defendant failed and refused to authorize and/or permit Class Members to take meal and rest

5    periods and whether Defendant failed to pay premiums to Class Members who missed meal or

6    rest periods predominate, and as a result, certification of meal and rest period claims is proper.

7    Plaintiffs maintain that the Class would prevail at trial.  (Emma Decl. ¶ 15)

8          Dr. Kane calculated the instances where GNC's timekeeping records indicated an

9    allegedly noncompliant break and multiplied that by the average hourly rate using GNC's

10   payroll records.  Based thereon, if Plaintiffs were to unequivocally prevail in all aspects of their

11   meal and rest claims at trial (without any credit being offered to GNC's arguments or defenses),

12   Plaintiffs contend the maximum amount the Class could recover is $12,538,862.03.  GNC

13   contends that there are fatal infirmities with Dr. Kane's analysis, including methodological

14   flaws and the misapplication of California break period rules.  GNC contends that these

15   infirmities lead to a grossly inflated maximum potential exposure.  (Emma Decl. ¶ 16)

16                      b.    *Wage Statement Claims*

17         With respect to wage statement penalties, the Court granted summary judgment in

18   Plaintiffs' favor, finding that GNC is liable for wage statements issued from July 21, 2010, to

19   September 19, 2014.  During this time period, GNC generally issued wage statements on a

20   biweekly basis (once every two weeks).  Plaintiffs' expert calculated the maximum potential

21   amount of wage statement penalties owed to the Class at $8,326,800.00.  GNC has asserted

22   several legal arguments pertaining to this claim.  These include, *inter alia*, (1) Plaintiffs'

23   alleged failure to plead a "direct" wage statement claim for GNC's failure to identify the

24   _____

25   [5]      GNC successfully relied on these arguments in obtaining a defense verdict for meal and
     rest period claims asserted by a group of retail store employees in the case of *Abad et al. v.*

26   *General Nutrition Centers, Inc.*, United States District Court for the Central District of
     California, Case No. SACV-09-190-JVS (RNBx).

27                                        -14-

28

inclusive dates of the pay period and (2) this Court's improper "retroactive" application of the 2013 amendment to Labor Code § 226.  Because there is a split of authority regarding the retroactive application of the 2013 amendment to Labor Code § 226, the likelihood of appellate review is increased.  If GNC were to prevail on either or both of these arguments on appeal, the applicable claims period would be significantly reduced and Plaintiffs contend that GNC's maximum potential exposure for wage statement penalties would be anywhere from $705,100 to $4,609,350.  In addition to these legal arguments, GNC asserted factual arguments that, if found to be persuasive on appeal, could theoretically reduce its maximum potential liability to zero for this claim.  These factual arguments include, *inter alia*, (1) GNC's alleged compliance with California's wage statement laws by providing online wage statements showing the inclusive dates of the pay period and (2) Plaintiffs' alleged failure to account for leaves of absence in calculating penalties.  (Emma Decl. ¶ 17)

c.    *Final Pay Claims*

Plaintiffs allege that GNC willfully failed to pay all wages owed to class members whose employment with GNC terminated.  GNC maintains records of payments to its employees in a document called a "Payment Detail Listing" report, sometimes referred to as a "PR260" report.  Plaintiffs argue that a Final Pay penalty is owed anytime GNC's records show a final payment that is more than three days after the date of termination.  (Emma Decl. ¶ 18)

GNC contends that the date of the final payment that Plaintiffs are relying on does not represent a final payment of wages or, in some cases, it represents a payment of wages in the form of a commission that could not have been calculated within three days of the last date of employment.  Accordingly, GNC contends, in both cases there is no penalty owed.  GNC also argues that the date of termination is not necessarily the last date of employment.  Furthermore, GNC argues that Plaintiffs are unable to establish that the alleged failure to pay final wages in a timely manner was willful in any given instance.  (Emma Decl. ¶ 19)

-15-

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

Dr. Kane analyzed the data produced by GNC and calculated its maximum possible exposure to be approximately $950,000 for direct violations of California's final pay laws. However, Dr. Kane's calculations did not limit the voluntary termination category of workers to those individuals who were paid by direct deposit as required by the Certification Order. When this is done, GNC's maximum potential exposure is reduced to under $500,000 for direct violations of California's final pay laws, which includes involuntarily terminated employees and voluntarily terminated employees who were paid by direct deposit. To the extent that Plaintiffs allege "indirect" violations of California's final pay laws (predicated on a failure to provide meal and rest periods), there is a split of authority within this Court regarding whether or not "indirect" final pay violations can be predicated on missed breaks as a matter of law. Given this split of authority, this claim presents another area where the likelihood of appellate review is increased. Furthermore, to the extent that Plaintiffs' "indirect" final pay claim is predicated on alleged break violations, the same risks and defenses discussed above regarding proving meal and rest period violations apply to a derivative claim based thereon. Dr. Kane calculated GNC's maximum potential exposure for alleged "indirect" final pay violations to be approximately $4,002,043.43. GNC again claims that this figure is grossly inflated because it is predicated on Dr. Kane's allegedly flawed break period analysis. (Emma Decl. ¶ 20)

### d.     *Reimbursement Claims*

Plaintiffs' reimbursement claims are based on the fact that some Class Members were required to transport deposits from GNC stores to designated banks. Plaintiffs argue that GNC knows (or at least has reason to know), that some Class Members were required to transport cash from GNC stores to designated banks. Plaintiffs argue that GNC cannot demonstrate that it actually reimbursed Class Members for these expenses. (Emma Decl. ¶ 21)

GNC argues that it is not liable for unpaid reimbursements and, furthermore, that Plaintiffs cannot prove the quantity of reimbursements allegedly owed. First, GNC argues that it has a lawful travel reimbursement policy for California employees. Second, GNC points out

-16-

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

that Plaintiffs do not have evidence regarding which employees drove to the bank to make the deposit.  GNC further argues that the evidence shows Class Members did not always complete bank deposits because non-Class Members, such as managers, were sometimes responsible for bank deposits.  GNC also notes that some employees walked, or rode with others (including non-GNC employees).  (Emma Decl. ¶ 22)

Dr. Kane analyzed data provided by GNC listing the address of the depository bank designated for each retail store location in California.  Using that data, Dr. Kane calculated the alleged maximum possible reimbursements owed at $840,694.19, which assumes (1) a Class Member always completed a bank deposit when closing a store (ignoring any instances when a manager may have done so or when the deposit was not done at closing) and (2) Class Members are entitled to reimbursement for a "round-trip" (despite the fact that Class Members are not required to return to the store after making the deposit).  GNC disputes these assumptions.  (Emma Decl. ¶ 23)

### e.  *Derivative Claims*

The Class claims for failure to pay final wages on time, unfair business practices, and PAGA violations are largely predicated on and derive from the underlying violations described above.  Moreover, the Court has virtually unlimited discretion to reduce the amount of penalties under PAGA.  This adds significant uncertainty to PAGA penalties.  Thus, the same litigation risks described above apply here.  (Emma Decl. ¶ 24)

### f.  *Off-the-Clock Claims*

The off-the-clock and unpaid overtime claims asserted by Plaintiffs are individual claims.  Given the Class size of approximately 8,000 people, the individual off-the-clock claims of a handful of Plaintiffs do not add significant value and may be ignored for purposes of analyzing the Class Settlement.  (Emma Decl. ¶ 25)

-17-

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

2.      The Size of the Claims and Amount Offered to Settle Them

Plaintiffs estimate that if the class were to prevail in all causes of action at trial, with all factual and legal disputes being resolved in Plaintiffs' favor, the maximum potential recovery for the class would be $25,708,399.65.  Plaintiffs acknowledge that a recovery of this magnitude is unlikely given the risks identified herein.  As discussed above, GNC contends that it has no liability in this case and that the Court should decertify the class action.  Class Counsel represents that the proposed settlement of $9,000,000.00 is an exemplary result and is certainly a fair, reasonable and adequate settlement.[6]  (Emma Decl. ¶ 26)

In exchange for a tailored release, the Settlement Agreement provides that Defendant must pay the Settlement Class $9,000,000.00.  Plaintiffs and Class Counsel believe that this recovery sufficiently and fairly compensates the Settlement Class Members, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes…. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation…."  *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).  Accordingly, the Settlement is not to be judged against a speculative measure of what might have been achieved.  *See, e.g., Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Furthermore, the Court should consider that the Settlement secures for payment to the Class now, rather than a speculative payment many years down the road, if ever.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  Since there is no reversion, the entire Settlement Payment Allocation will be distributed pro rata among Class Members. Considering the present value of the Settlement and the extremely positive reaction of the Class

---

[6] Class Counsel's opinion regarding the fairness, reasonableness, and adequacy of the Settlement is corroborated by the fact that zero (0) Class Members have filed objections to the Settlement.

*Brewer v. GNC / Case No. 11-cv-3587-YGR*
Memorandum ISO Plaintiffs' Motion for Final Approval of Class Action Settlement

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

(zero objections and only four requests for exclusion), the Settlement presented here for approval is indeed fair, adequate, and reasonable.

3.      The Risk, Expense, Complexity, and Likely Duration of Further Litigation

GNC continues to deny any liability or wrongdoing of any kind associated with the claims alleged in this action and further denies that, for any purpose other than settling the Lawsuit, this action is appropriate for class treatment.  GNC contends that it has complied at all times with all applicable California and federal wage and hour laws.  Further, GNC contends that one or more of the claims would be decertified because Plaintiffs do not share sufficient common issues of fact or law with the proposed class, they are not an adequate representative of the proposed class, their claims are not typical of the proposed class, and class treatment would require the Court to conduct individualized inquiries that would predominate over common questions of law or fact.  Thus, even if Plaintiffs were to maintain certification through trial and secure a verdict in favor of the Class, an appeal from Defendant regarding the propriety of certification in light of the evidence at trial would surely follow.  Indeed, GNC had already teed up several rulings for appellate review and, as discussed above, the likelihood of appellate review in this matter is increased due to splits of authority.  (Emma Decl. ¶ 27)

Further litigation would not serve the interests of the Class because it would require Class Members to risk receiving nothing at all or a small fraction of what they are receiving pursuant to the Settlement.  Further litigation may require each Class Member to offer individualized evidence, and perhaps more importantly, the delay, uncertainty, and litigation costs associated with such efforts would be significant and be without any assurance of recovery.  *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995), cert. denied, 516 U.S. 824 (1995) ("[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation").  Although Class Counsel believes that Plaintiffs' claims are meritorious, Class Counsel is experienced and understands the attendant risks of prolonged litigation and the ever-shifting

*Brewer v. GNC / Case No. 11-cv-3587-YGR*
Memorandum ISO Plaintiffs' Motion for Final Approval of Class Action Settlement

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

1    landscape of wage and hour class actions.[7]  The Settlement affords the Class prompt and

2    substantial relief while avoiding legal and factual hurdles that could prevent the class from

3    obtaining any recovery at all.  (Emma Decl. ¶ 28)

4              4.       The Stage of the Proceedings

5              This case did not settle until just before jury selection, after nearly five years of

6    continuous investigation, discovery and litigation.  The case was about to be tried.  Very few

7    class actions proceed this far.  As described above in Section II.B. "Investigation, Discovery

8    and Litigation," the investigation, discovery and litigation conducted in this matter permitted

9    Plaintiffs to thoroughly assess the merits of their claims and the potential damages.  The

10   comprehensive investigation, discovery and litigation conducted by Plaintiffs, coupled with the

11   advanced stage of proceedings at the time of settlement, militate strongly in favor of final

12   approval.  (Emma Decl. ¶ 29)

13             5.       Experienced Class Counsel Adequately Represented the Settlement Class

14             Class Members have been well represented by experienced Class Counsel throughout

15   the settlement negotiations and the entirety of this litigation.  As set forth in the Motion for

16   Preliminary Approval, Class Counsel is qualified and experienced in handling cases such as

17   this.  (Dkt. 391-1 at ¶ 36)  Class Counsel ensured that investigation, discovery and litigation

18   were mature prior to recommending settlement.  For approximately one year after a full-day

19   mediation session, Class Counsel maximized recovery by litigating the case while

20   simultaneously negotiating on behalf of the Class.  After the key terms of the Settlement were

21   agreed to, Class Counsel continued to advocate for interpretations most favorable to the Class.

22   Indeed, settlement negotiations were hard-fought and arm's-length from start to finish.  (Emma

23   Decl. ¶ 30)

---

[7] Class Counsel's credentials and experience were submitted in connection with the Motion for
Preliminary Approval.  (Dkt. 391-1 at ¶ 36)

-20-

HOFFMAN EMPLOYMENT LAWYERS
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

1   "'Great weight' is accorded to the recommendation of counsel, who are most closely

2   acquainted with the facts of the underlying litigation.  This is because 'parties represented by

3   competent counsel are better positioned than courts to produce a settlement that fairly reflects

4   each parties' expected outcome in the litigation' [and] [t]hus, 'the trial judge, absent fraud,

5   collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'"

6   *Nat'l Rural Telcomms Coop. v.  DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)

7   (citations omitted).

8             6.      The Reaction of the Class to the Proposed Settlement

9             The Class has responded extremely favorably to the Settlement, further supporting final

10  approval.  The Ninth Circuit and other federal courts have made clear that the number or

11  percentage of Class Members who object to or opt out of the settlement is a factor of great

12  significance.  *See Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976);

13  *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)

14  ("[i]t is well settled that the reaction of the class to the settlement is perhaps the most significant

15  factor to be weighed in considering its adequacy") (internal quotation marks and citation

16  omitted).  "The reaction of class members to the proposed settlement, or perhaps more accurately

17  the absence of a negative reaction, strongly supports settlement."  *Chun-Hoon v. McKee Foods*

18  *Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (emphasis added).

19            Indeed, the fact that not a single Class Member has objected to the Settlement is a

20  "persuasive" showing that the settlement is adequate.  *See Boyd v. Bechtel Corp.*, 485 F. Supp.

21  610, 624 (N.D. Cal. 1979) (objections from 16% of the class constituted a "persuasive" showing

22  that settlement was adequate); *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir.

23  2009) ("The court had discretion to find a favorable reaction to the settlement among class

24  members given that, of 376,301 putative class members to whom notice of the settlement had

25  been sent, 52,000 submitted claims forms and only fifty-four submitted objections."); *Churchill*

26

27

28

-21-

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

1
2

*Village, L.L.C. v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004) (noting favorably "that only 45 of the approximately 90,000 notified class members objected to the settlement.").

3
4
5
6
7

Moreover, only four (4) Class Members submitted written exclusions.  Admin Decl. ¶ 14. Thus, the lack of objectors and opt-outs and the favorable reaction of the Class support that the Settlement Agreement is fair, adequate, and reasonable.  Based on all of the factors listed above, including the overwhelmingly positive response of the Class Members, this Settlement merits final approval.

8
9

## V.  THE PARTIES FULLY IMPLEMENTED THE COURT-ORDERED NOTICE PROGRAM AND THE SETTLEMENT ADMINISTRATOR'S FEES SHOULD BE AWARDED

10
11
12
13
14
15
16

As detailed above, the Settlement Administrator carried out the Court-approved notice program, and its fees and expenses should now be reimbursed.  Applicable statutory and case law vests the Court with broad discretion in fashioning an appropriate notice program.  *See* Fed. R. Civ. P. 23(e)(1).  "The class notice must be (1) reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections and (2) must satisfy the content requirements of Rule 23(c)(2)(B*).*" *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

17

## VI.  CONCLUSION

18
19
20
21

Counsel for the Parties have committed substantial amounts of time, energy, and resources investigating, litigating and ultimately settling this case.  In the judgment of Plaintiffs and Class Counsel, the proposed settlement is a fair, adequate and reasonable.  The favorable reaction of the Class supports this finding.

22
23

Accordingly, Plaintiffs respectfully requests that the Court approve the Settlement and enter the proposed Final Approval Order.

24

Respectfully Submitted,

25
26

DATED: July 19, 2016                    HOFFMAN EMPLOYMENT LAWYERS

27
28

-22-

**HOFFMAN EMPLOYMENT LAWYERS**
580 California Street, Ste. 1600
San Francisco, CA 94104
(415) 362-1111

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Leonard Emma

_____
Leonard Emma, Esq.
Attorneys for Plaintiffs and the Class
CHARLES BREWER *et al.*

-23-

*Brewer v. GNC / Case No. 11-cv-3587-YGR*
Memorandum ISO Plaintiffs' Motion for Final Approval of Class Action Settlement